O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANTA BARBARA PATIENTS' COLLECTIVE HEALTH COOPERATIVE, | Case No. CV 10-06534 DDP (RCx) |
| Plaintiff, | **ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |
| v. | |
| CITY OF SANTA BARBARA et al., | [Motion filed on 9/29/2010] |
| Defendants. | |

Presently before the court is Plaintiff Santa Barbara Patients' Collective Health Cooperative's motion for a preliminary injunction. Plaintiff seeks to enjoin the City of Santa Barbara ("City") from enforcing against Plaintiff the Medical Marijuana Dispensary Ordinance, Ordinance No. 5526, adopted June 29, 2010 ("Revised Ordinance"). Plaintiff contends that Revised Ordinance unconstitutionally renders Plaintiff's marijuana dispensary unlawful and requires that it be closed.

After reviewing the parties' papers and hearing oral argument, the court grants Plaintiff's motion for preliminary injunction and adopts the following order.

**I.   BACKGROUND**

On April 25, 2008, City adopted the Medical Cannabis Dispensary Ordinance ("Original Ordinance") regulating the establishment and location of medical marijuana dispensaries. (Plaintiff's Motion for Prelim. Inj. 3:25-4:2.) The Original Ordinance specified that in order to operate a dispensary, an individual must first apply for and obtain a "Dispensary Use Permit issued by the City Staff Hearing Officer." (Plaintiff's Request for Judicial Notice ("RJN") Exhibit 2, ¶28.80.030.) The Original Ordinance prohibited operating a dispensary within 500 feet of a school or park. (RJN Exhibit 2, ¶28.80.060 (C)(1))

In April 2009, pursuant to the Original Ordinance, Plaintiff applied for a Dispensary Use Permit pertaining to a building located at 500 N. Milpas Street (the "Facility"). (Lee Dec. ¶5) The Facility is approximately 530 feet from a school. (Id. ¶15) On May 1, 2009, Plaintiff entered into a private lease for the Facility for an initial term of four years with an option to renew for an additional four years.[1] (Id. ¶6) On May 14, 2009, City notified Plaintiff in writing that its permit application was complete. (Id., Exhibit C) One month later, on June 17, 2009, a City Staff Hearing Officer issued the permit authorizing Plaintiff to operate a medical marijuana dispensary.[2] (Id., Exhibit D) Plaintiff then applied for and received a building permit to

---

[1] The initial term of the lease expires on May 31, 2013. If the option is exercised, the extended term will expire on May 31, 2017.

[2] The permit was subject to twelve conditions, including installation of fourteen cameras and an alarm system, and hiring of licensed security personnel.

2

remodel the Facility. (Id. ¶ 11) Plaintiff alleges that it expended approximately $511,108 to complete the improvements to the Facility, pointing to "substantial modifications to the internal layout of the Facility to accommodate the security measures, modifications to the front and rear storefronts, internal hallway and parking lot, and installation of closed circuit monitoring cameras as required pursuant to the Dispensary Permit." (Pl.'s Motion for Prelim. Inj. 5:7-14) City alleges that Plaintiff spent approximately $48,870.28, based on contractor estimates and the architectural plans submitted with the Building Permit Application. (City's Opp'n to Prelim. Inj. 8:9-9:18) After renovating the Facility, Plaintiff began operating as a medical marijuana dispensary on January 5, 2010. (Lee Dec. at ¶13)

On June 29, 2010, City adopted Ordinance No. 5526 ("Revised Ordinance") which amended the Original Ordinance. (Id. at ¶14) The Revised Ordinance declares that with respect to north Milpas Street, only the "00-400 blocks" are permissible locations for a medical marijuana dispensary. (City's RJN, Exhibit A) Under the Revised Ordinance, therefore, Plaintiff's location at 500 N. Milpas Street is outside the permissible area. Dispensaries lawfully operating under permits issued pursuant to the Original Ordinance must cease operations 180 days after the effective date of the Revised Ordinance. (Id. at ¶17) On July 21, 2010, City sent Plaintiff a letter stating that Plaintiff's dispensary must close by January 29, 2011. (Id.)

**II.   LEGAL STANDARD - PRELIMINARY INJUNCTION**

A preliminary injunction is an "extraordinary remedy." Winter v. Natural Res. Def. Council, Inc., 129 S. Ct. 365, 376 (2008). "A

plaintiff seeking a preliminary injunction must establish [(1)] that he is likely to succeed on the merits, [(2)] that he is likely to suffer irreparable harm in the absence of preliminary relief, [(3)] that the balance of equities tips in his favor, and [(4)] that an injunction is in the public interest." Id. at 374. An injunction "cannot issue merely because it is possible that there will be an irreparable injury to the plaintiff; it must be likely that there will be." Am. Trucking Ass'n, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009).

**III. DISCUSSION**

Plaintiff's primary argument is that it has a vested right in the permit it was granted under the Original Ordinance and the City has taken that right from Plaintiff without due process. As an initial matter, the court notes that its vested rights analysis is independent of the fact that the business at issue here is a medical cannabis dispensary. The same analysis would apply to any business that had applied for and been granted a valid municipal permit and incurred costs in reasonable reliance on that permit.

In considering Plaintiff's motion for a preliminary injunction, the court looks at the four Winter factors in turn:

**A.   Likelihood of Success on the Merits**

Plaintiff argues that it acquired — through its permit — a vested right to operate its dispensary under the terms of the Original Ordinance. Plaintiff argues that it is, therefore, entitled to due process before the permit may be revoked and that the Revised Ordinance effectively revokes Plaintiff's permit without due process.

4

First, the court considers whether Plaintiff has established with sufficient likelihood a vested right in the permit. The court concludes that it has. As the California Supreme Court has explained:

> The doctrine of vested rights . . . states that a property owner who, [1] in good faith reliance on a government permit, [2] has performed substantial work and incurred substantial liabilities <u>has a vested right</u> to . . . use the premises as the permit allows.

<u>Communities for a Better Env't v. South Coast Air Quality Dist.</u>, 226 P.3d 985, 994 (Cal. 2010) (brackets and emphasis added). In other words, "[w]here a permit has been properly obtained and in reliance thereon the permitee has incurred material expense, he acquires a vested property right . . . . <u>O'Hagen v. Bd. of Zoning Adjusment</u>, 19 Cal. App. 3d. 151, 158 (1971). This right is "vested" and it does not go away with the enactment of a new ordinance. See <u>Edmonds v. County of Los Angeles</u>, 255 P.2d 772, 777 (Cal. 1953) ("The rights of users of property as those rights existed at the time of the adoption of a zoning ordinance are well recognized and have always been protected.")

Here, it is undisputed that Plaintiff obtained a valid Dispensary Use Permit to build a dispensary at 500 N. Milpas Street. It is further undisputed that Plaintiff incurred substantial costs in good faith reliance of that permit.[3] Accordingly, Plaintiff has acquired a vested right to operate the dispensary that cannot be infringed by the Revised Ordinance

---

[3] The parties dispute the amount spent by Plaintiff in reliance of the permit. Even taking City's figure, Plaintiff expended a sufficient amount to constitute reliance on the permit for purposes of this vested rights analysis.

5

without due process of law. See Communities for a Better Env't, 226 P.3d at 994 ("[a] subsequent zoning ordinance cannot deprive a person of a vested right without due process"). The question, then, is whether Plaintiff was afforded due process.

In considering whether Plaintiff was afforded due process, the court notes that as a general principle "[o]nce a use permit has been properly issued the power of a municipality to revoked it is limited." O'Hagen, 19 Cal. App. 3d. at 158. Accordingly, governmental entities do not tend to apply newly enacted zoning ordinances to close businesses lawfully operating at the time those ordinances became effective. Bauer v. City of San Diego, 75 Cal. App. 4th 1281, 1292 (1999). This is because municipalities wish "to avoid questions as to the constitutionality of [the new ordinance's] application to those [existing] uses." Hansen Brothers Enterprises, Inc. v. Board of Supervisors, 907 P.2d 1324, 1335 (Cal. App. 1996). Here, however, we are faced with just such a question.

Contrary to City's assertion, the existence of a vested right does not preclude City from amending its zoning ordinances. "It is well settled in California that public entities may impair vested rights where necessary to protect the health and safety of the public." Davidson v. County of San Diego, 49 Cal.App.4th 639, 648 (1996). City's arguments fail to appreciate, however, that while the government may infringe upon vested rights under certain circumstances, such rights may only be impaired "with due process of law." Id. at 649; see also Tahoe Reg'l Planning Agency v. King, 233 Cal.App.3d 1265, 1395 ("The principle that 'zoning legislation may validly provide for the eventual termination of nonconforming

property uses without compensation if it provides a reasonable amortization period commensurate with the investment involved' is well-established.")

Along such lines, California courts have recognized the "hardship and doubtful constitutionality of compelling the immediate discontinuance of nonconforming uses." San Diego County v. McClurken, 234 P.2d 972, 975 (Cal. 1951). For this reason, zoning ordinances "customarily exempt existing land uses (or amortize them over time) to avoid questions as to the constitutionality of their application to those uses." Calvert v. County of Yuba, 145 Cal.App.4th 613, 625 (2006). "A zoning ordinance which requires the discontinuance forthwith of a nonconforming use existing when the ordinance was adopted is a deprivation of property without due process of law unless the use is a public nuisance." McCaslin v. City of Monterey Park, 163 Cal. App. 2d 339 (1958).

Here, City does not argue that Plaintiff's business is a nuisance. The Revised Ordinance does, however, contain an exemption for nonconforming uses. Section two of the Revised Ordinance states that:

> dispensaries which have opened . . . prior to the effective date of this Ordinance and which are [] located at a location no longer permitted for dispensaries pursuant to this Ordinance . . . may, despite non-conforming location . . . remain as a legal non-conforming use for a period not exceeding one hundred eighty (180) days after the effective date of this Ordinance . . . .

(Dckt. # 21, Ex. 1). "Nothing in the Constitution forbids municipalities from requiring non-conforming uses to close, change their business, or relocate within a reasonable time period."

7

World Wide Video of Washington, Inc. V. City of Spokane, 368 F.3d 1186, 1199 (9th Cir. 2004). The question, then, is whether the amortization period here is sufficient to satisfy due process. As a general matter, an amortization "is insufficient only if it puts a business in an impossible position due to a shortage of relocation sites." Id. Here, the ordinance itself creates such "a shortage of relocation sites." In fact, the Revised Ordinance limits the number of dispensaries in the City of Santa Barbara to a total of three. This total includes those dispensaries which are open and operating in a legal, non-conforming manner at the time of the adoption of the ordinance. In its July 21, 2010, letter, the City stated that "three pending applications that satisfy the ne locational requirements have already been deemed complete," and that Plaintiff "must close on January 29, 2011." (Lee Decl., Ex. J.) The court concludes that Plaintiff has made a strong showing that the amortization period provided by the Revised Ordinance has put Plaintiff in "an impossible position," forcing Plaintiff to close its business and lose its permit without due process.

City also argues that California Health and Safety Code Section 11362.768 renders this case moot. The court disagrees. Section 11362.768 was enacted on September 30, 2010. (Defendant's Request for Judicial Notice, Ex. B.) Section 11362.768 mandates that all medical marijuana dispensaries be located at least 600 feet from a school. Id. Section 11362.768 does not, however, preempt prior-enacted local ordinances regulating medical marijuana dispensaries.

As an initial matter, the court notes that Section 11362.768 is not yet in effect, and will not take effect until January 1,

2011.  Even if Section 11362.768 were currently effective, it does not appear that the statute would alter the analysis here.  By its own terms, Section 11362.768 does not preempt the Revised Ordinance or the Original Ordinance.  As discussed above, even under the Revised Ordinance, City may not immediately and without due process deprive Plaintiff of vested rights.  Accordingly, Section 11362.768 has no effect on the likelihood that Plaintiff will succeed on the merits.

        **B.**    **Other Factors**

In its opposition papers, City does not dispute that Plaintiff has established the remaining three <u>Winter</u> elements, namely that it will suffer irreparable harm should the preliminary injunction not issue, that the balance of equities tips in its favor, and that a preliminary injunction is in the public interest.  Under the local rules, failure to oppose a motion is deemed consent to granting the motion.  C.D. Cal. L.R. 7-9 (requiring opposition briefs to include "a brief but complete memorandum which shall contain a statement of <u>all the reasons</u> in opposition" to the motion); <u>Id.</u> 7-12 ("The failure to file any required paper, or the failure to file it within the deadline, may be deemed consent to the granting or denial of the motion.")

In any event, the court finds that Plaintiff has satisfied the remaining elements.  Plaintiff is faced with either a violation of its constitutional rights or the loss of its business.  The Ninth Circuit has held that such stark circumstances constitute irreparable harm.  <u>See</u>, <u>e.g.</u>, <u>Am. Trucking Ass'n</u>, 559 F.3d at 1059.  City has not articulated any harm that would result from the granting of a preliminary

9

injunction. The balance of equities therefore tips in favor of Plaintiff. Lastly, a preliminary injunction would serve the public's interest in the continued operation of a local business and, as other courts have held, "it is always in the public interest to prevent the violation of a party's constitutional rights." G & V Lounge, Inc. v. Michigan Liquor Control Comm'n, 23 F.3d 1071, 1079 (6th Cir. 1994). Plaintiff has therefore satisfied the remaining elements necessary to justify the issuance of a preliminary injunction.

## IV. CONCLUSION

For the foregoing reasons, the court hereby GRANTS Plaintiff's application for a preliminary injunction. Defendants shall not enforce the Revised Ordinance against Plaintiffs without due process of law.[4]

IT IS SO ORDERED.

Dated: November 24, 2010

DEAN D. PREGERSON
United States District Judge

---

[4] The court does not address City's contention that Plaintiff is currently operating a criminal drug enterprise in violation of state law. (City's Opp'n to Prelim. Inj. 24:7-8) The question whether City's Revised Ordinance applies to Plaintiff has no bearing on whether Plaintiff is complying with state law regarding the distribution of medical marijuana. Though City is enjoined from enforcing the Revised Ordinance against Plaintiff without due process of law, this order does not purport to impair City's ability to enforce state law in accordance with the California Attorney General's Guidelines for the Security and Non-diversion of Marijuana Grown for Medical Use.