1 | Dana J. Rosenberg, State Bar No. 255398
2 | **Attorney at Law**
  | **307 East Carrillo Street**
3 | **Santa Barbara, CA  93014**
4 | **Tel:  (805) 745-1717**
  | **Fax:  (805) 690-7506**
5 | RosenbergLegal@verizon.net

6 | Janet K. McGinnis, State Bar No. 108953
  | **Attorney at Law**
7 | **924 Anacapa Street, Ste. 1-M**
8 | **Santa Barbara, CA 93101**
  | **Tel:  (805) 963-1865**
9 | **Fax:  (805) 568-1641**
10 | Janet@McGinnisLawOffice.com

11

12 | Attorneys for  PLAINTIFFS



FILED
CLERK, U.S. DISTRICT COURT

AUG 1 5 2011

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

13

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

16 | SANTA BARBARA PATIENTS' COLLECTIVE HEALTH COOPERATIVE, a California cooperative corporation,

CASE NO.   CV 10-06534 DDP (RCx)

FIRST AMENDED COMPLAINT AND PETITION FOR WRIT OF MANDATE

Plaintiff,

vs.

CITY OF SANTA BARBARA, a California municipal corporation, and DOES 1-20, inclusive,

Defendants.

1) Violation of Fundamental Vested Rights [42 U.S.C. § 1983]
2) Violation of Due Process [42 U.S.C. § 1983; 14th Amend.]
3) Violation of Constitutional Right to Equal Protection Under the Law [42 U.S.C. § 1983; 14th Amend.]
4) Violation of Prohibition against Taking without Just Compensation [42 U.S.C. § 1983; 5th Amend.]
5) Violation of Constitutional Right to Freedom of Association [42 U.S.C. § 1983; 1st Amend.]



RECEIVED
BUT
NOT FILED

AUG 1 5 2011

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY



ORIGINAL

1

6) Violation of Constitutional Prohibition on Ex Post Facto Laws
[42 U.S.C. § 1983]

7) Mandate to Set Aside the Amended Ordinance as an Illegal and Void Purported Exercise of the Police Power

8) Mandate to Set Aside the Amended Ordinance as Illegal and Void

Comes now SANTA BARBARA PATIENTS' COLLECTIVE HEALTH COOPERATIVE ("SBPCHC") to petition for a Writ of Mandate, and to complain of violations of constitutional and statutory rights by defendants warranting declaratory, injunctive, and damages relief. SBPCHC hereby alleges for all causes of action as follows:

## INTRODUCTORY STATEMENT

1.      Plaintiff SBPCHC is a cooperative corporation lawfully operating a medial marijuana collective and dispensary in the City of Santa Barbara. Plaintiff obtained a Medical Marijuana Dispensary Permit ("Use Permit") for its operations from Defendant CITY OF SANTA BARBARA ("City") in 2008, shortly after City enacted Ordinance 5449, City's first medical marijuana ordinance (Exhibit A, the "Original Ordinance"). The Original Ordinance was codified in Chapter 28.80 of the Santa Barbara Municipal Code, "Medical Cannabis Dispensaries."

2.      Plaintiff SBPCHC seeks judicial relief from enactment by City of unlawful revisions to Chapter 28.80 of the Santa Barbara Municipal Code. The first of these unlawful revisions to the original 2008 Ordinance, under which Plaintiff was permitted, were adopted on June 29, 2010 by enactment of Ordinance No. 5526 (Exhibit B, the "Revised Ordinance" or "Rev. Ord."). Further unlawful revisions were enacted on May 17, 2011 by City's adoption of "An Ordinance of the Council of the City of Santa Barbara Amending The Municipal Code To Establish Revised Regulations For Those Storefront Medical Marijuana Dispensaries Permitted Under City Ordinance No. 5449 as Adopted on March 25, 2008." (Exhibit C, the "Amendment.) City has not yet codified the Amendment by adding its

2

1  language to Chapter 28.80 of the Municipal Code, but the Amendment creates, per its

2  wording, an entirely new ordinance, referred to herein as the "Amended Ordinance."

3     3.     Plaintiff brought the instant action in response to the Revised Ordinance of

4  June 29, 2010.   In November of 2010 this Court issued a preliminary injunction in Plaintiff's

5  favor, prohibiting enforcement of the Revised Ordinance against Plaintiffs without due

6  process of law.   On May 17, 2011, City adopted the Amended Ordinance specifically in

7  response to this litigation, as recommended by the City Attorney's Council Agenda Report at

8  page 3, ¶1.  (Exhibit D, "5/17/11 Agenda Report.")

9     4.     The Amended Ordinance effects two explicit changes.  First, it requires that

10  Plaintiff's day-to-day operations be "consistent with dispensary operational requirements of

11  Chapter 28.80, as such requirements were enacted by City Ordinance No. 5526 [the Revised

12  Ordinance]" – this  despite the preliminary injunction's mandate that the Revised Ordinance

13  may not be enforced against Plaintiff.

14     5.     Second, the Amended Ordinance purports to revoke Plaintiff's Use Permit

15  "four (4) years after the effective date of City Ordinance No. 5526," that is, by June 29, 2014

16  – a period of amortization that is no more constitutionally sufficient than the Revised

17  Ordinance's original provision for six months' amortization.

18     6.     A less explicit third purpose of the Amended Ordinance is to revoke Plaintiff's

19  Use Permit at the earliest date possible, deem Plaintiff a public or private nuisance, or invoke

20  criminal prosecution against Plaintiff, any of which may or will result where City staff make

21  the determination that Plaintiff is operating "in a manner which violates the operational

22  requirements or operational plan required by [the Amended Ordinance]," or "in a manner

23  which conflicts with state law;" Rev. Ord. § 28.80.120 A., or where City staff make a finding

24  that Plaintiff is "operating in a manner which constitutes a public nuisance."[1] Rev. Ord. §

25

26  [1]  Labeling a dispensary a "public nuisance" is tantamount to accusing its managing members of criminal
    activity.  Health & Safety Code § 11570 provides that "Every building or place used for the purpose of
27  unlawfully selling, serving, storing, keeping, manufacturing, or giving away any controlled substance ...
    is a nuisance which shall be enjoined, abated, and prevented, and for which damages may be recovered,
28  whether it is a public or private nuisance."  Although section 11570 does not contain criminal penalties,
    it is widely recognized as quasi-criminal in nature. (*Qualified Patients Assn. v. City of Anaheim* (2010)

1  28.80.120 B.

2      7.    As more fully detailed below, the opportunities for City staff to make such a

3  finding are myriad given the environment created by Amended Ordinance: some of its

4  provisions are impossible to comply with; some are so ill defined as to be impossible to

5  properly interpret; compliance with some provisions would require Plaintiff to violate the

6  privacy rights of its own collective members and damage their health and well being; many

7  provisions are unconstitutional or otherwise unlawful or void *ab initio*; and some are

8  contradictory or inimical to the state laws under which Plaintiff derives its authority to

9  operate a medical marijuana dispensary.

10      8.    Further, given that Plaintiff relied on and complied fully and completely with

11  the operational plan requirements of the Original Ordinance in order to secure issuance of its

12  Use Permit, it is fundamentally unfair, and also effects a taking without just compensation, to

13  now require Plaintiff to comply with the limited duration far more burdensome and

14  expensive operational plan requirements of the Amended Ordinance, as required by the

15  Amended Ordinance.

16      9.    The City's actions in adopting the Revised Ordinance and then the Amended

17  Ordinance violate state and federal constitutional limitations and interfere with fundamental

18  vested rights; violate constitutional protections guaranteeing due process of law, equal

19  protection under the law, and the right to freedom of association; constitute a taking of a

20  fundamental vested and property rights without just compensation; violate state and federal

21  prohibitions on ex post facto laws; and, by virtue of the Amended Ordinance, violate the

22  existing preliminary injunction issued by this Court.

23      10.    With its First Amended Complaint, Plaintiff seeks a judicial declaration that

24  the Amended Ordinance is invalid as applied to Plaintiff because it unconstitutionally

25  deprives Plaintiff of a fundamental vested property right protected by the California and

26  United States Constitutions, including by failing to provide constitutionally adequate

27

28
_____

187 Cal.App.4th 734, 755; 3 Witkin, Cal. Procedure (5th ed. 2008) Actions, § 70, p. 144.

1   protection for Plaintiff's pre-existing fundamental vested rights, by attempting to impose an

2   unconstitutionally abbreviated amortization period for Plaintiff's permitted, pre-existing non-

3   conforming use, and by explicitly requiring Plaintiff's compliance with provisions of the

4   Revised Ordinance, despite the existence of a preliminary injunction that enjoins the City

5   from enforcing the provisions of the Revised Ordinance against Plaintiff.   Plaintiff seeks a

6   judicial declaration that the Amended Ordinance is invalid on its face by virtue of imposing

7   operating conditions that violate various constitutional and privacy rights of Plaintiff and its

8   members, and invalid as applied to Plaintiff by virtue of its failure to exempt Plaintiff's

9   permitted use as a legal nonconforming use fundamental vested property right. Plaintiff seeks

10  injunctive relief prohibiting City from taking any action under the Amended Ordinance that

11  applies to Plaintiff, money damages to compensate Plaintiff for the violation of its civil rights

12  under 42 U.S.C. §§ 1983, and its reasonable attorneys' fees and costs under 42 U.S.C. §§

13  1988.

14                                          **PARTIES**

15        11.      Plaintiff SBPCHC is a statutory cooperative corporation (Corp. Code, § 12200

16  et seq.), organized and in good standing under the laws of the State of California.  Plaintiff

17  lawfully operates a medical marijuana collective known as "Green Well," located at 500

18  North Milpas Street in City.  The California Attorney General specifically recommends the

19  cooperative corporation as a "business form" appropriate for medical marijuana dispensaries.

20  "Guidelines For The Security And Non-Diversion Of Marijuana Grown For Medical Use,"

21  § IV, Office of the Attorney General, California Dept. of Justice (August 2008), hereafter,

22  the "AG Guidelines." [2]  Green Well's operating principles include a commitment to social

23  responsibility as well as to their member's health and well-being; Plaintiff has demonstrated

24  its dedication to acting responsibly within the community, contributing to the community,

25  and being good neighbor by organizing collective members to participate in regular

26

27  [2]  In accordance with the Legislature's directive in the Medical Marijuana Program Act (see *Health &
28  Saf.Code,* § 11362.81 (d)), the Attorney General has issued guidelines recognizing that "a properly
    organized and operated collective or cooperative that dispenses medical marijuana through a storefront
    may be lawful under California law ..." provided it complies with the Attorney General's guidelines.

1 neighborhood clean up events, and by contributing to organizations that serve its members,

2 including Santa Barbara Neighborhood Clinics, which provides conventional medical

3 services to low income patients.

4     12.    Defendant CITY OF SANTA BARBARA is a municipal corporation,

5 organized and existing as a charter city under the Constitution of the state of California,

6 located in Santa Barbara County.

7     13.    The true names or capacities, whether individual, corporate, associate, or

8     14.    otherwise of the defendants named herein as "Doe" are unknown to Plaintiff,

9 who therefore sues those defendants by fictitious names. Plaintiff will request leave to amend

10 this Complaint to show the true names or capacities of these defendants once they have been

11 ascertained.

12                             **JURISDICTION**

13     15.    Plaintiff's petition and complaint contains seeks relief under both state and

14 federal law, with damages sought under 42 U.S.C. §§ 1983, 1985 and 1988. The District

15 Court has supplemental jurisdiction over the state mandamus claims and over Defendants

16 pursuant to section 1367 of title 28 of the United States Code. Moreover, City removed this

17 litigation to district court after it was initially filed in state court.

18     16.    No government claim filing prerequisite or other administrative remedy need

19 be exhausted to establish jurisdiction in this matter. A state may not impose substantive

20 limitations on a Civil Rights Act action, thus a federal civil rights claim need not be

21 presented to a public entity before filing suit. *Florio v. City of Ontario*, 130 Cal.App.4th

22 1462, 1468 (2005); *California Correctional Peace Officers Ass'n v. Virga* (2010) 181

23 Cal.App.4th 30, 38 (2010). As to the mandamus action under state law, a party need not

24 comply with the Government Claims Act when bringing an action for injunctive or

25 declaratory relief. *See, Lozada v. City and County of San Francisco*, 145 Cal.App.4th 1139,

26 1163–1164 (2006). Neither is there any requirement that Plaintiff seek a variance or a

27 special exemption from the terms of the ordinances at issue here; under California law and

28 local ordinance, changes of use cannot lawfully be implemented through the variance

1   procedure. Gov't. Code, § 65906; Santa Barbara Municipal Code § 28.92.090.   Further, an

2   exception to the exhaustion requirement is recognized where pursuit of administrative

3   remedies would be futile. *Palazzolo v. Rhode Island*, 533 U.S. 606 (2001); *Hoene v. County*

4   *of San Benito*, 870 F.2d 529 (9th Cir. 1989).   Specifically, exhaustion is not required where

5   the petitioner can positively state that the administrative agency has declared what its ruling

6   will be in the particular case. *Doe v. Albany Unified School Dist.*,  190 Cal.App.4th 668, 686

7   (2010). That is precisely the case here, including where the currently operative Amended

8   Ordinance was enacted specifically *in response to* City's litigation with this Plaintiff, as

9   explained by the City Attorney on page 2 of Exhibit D, 5/17/11 CAR recommending

10  adoption of the Amended Ordinance. The Amended Ordinance was adopted in direct

11  contemplation of Plaintiff's use and for the express purpose of eliminating that use.

12      17.    With its First Amended Complaint, which adds challenges to the Amended

13  Ordinance to the complaint's challenges and complaints directed to the Revised Ordinance,

14  Plaintiff fulfills the jurisdictional requirement of  filing before expiration of the 90-day

15  limitations period for challenges to local zoning and planning decisions and legislation.

16  Code Civ. Proc., § 1094.6.

17                              **FACTUAL ALLEGATIONS**

18      18.    In March of 2008, City adopted Ordinance No. 5449, its first medical

19  marijuana ordinance, which was codified by Santa Barbara Municipal Code Chapter 28.80,

20  the City's comprehensive zoning scheme for the permitting of storefront medical marijuana

21  dispensaries (the "Original Ordinance").

22      19.    Plaintiff applied to City for a "Dispensary Use Permit" under the Original

23  Ordinance in April of 2009.

24      20.    Pursuant to the requirements of the Original Ordinance, when an applicant for

25  a Dispensary Use Permit is not the owner of the property in which the dispensary will be

26  located, a completed application requires "a lease signed by the owner or duly authorized

27  agent of the owner allowing them [the applicant] the right to occupy the property for the

28  intended use." Original Ordinance No. 5449, section 28.80.080 B, "Eligibility for Filing."

1    Accordingly, on May 1, 2009, Plaintiff entered into a lease for a 1,100-square-foot tenant

2    space in a building located at 500 N. Milpas Street in City (the "Facility"). The lease has an

3    initial term of four years, with an option to renew for an additional four years, exercisable by

4    Plaintiff. Thus, Plaintiff has the right under its lease to operate in the Facility at least until the

5    end of the first quarter of 2017, and full expectation that it should be able to continue in that

6    location indefinitely thereafter by means of further lease extensions.

7           21.    On May 14, 2009, City notified Plaintiff in writing that its application was

8    complete. The completed application complied in all respects with the requirements of the

9    Original Ordinance.

10          22.    On June 17, 2009, a City Staff Hearing Officer issued a Medical Cannabis

11   Dispensary Permit to Plaintiff by Resolution No. 051-09 ("Use Permit"). The Use Permit

12   authorized Plaintiff to operate a medical marijuana dispensary in the Facility on the terms

13   and conditions therein stated. Those conditions did not include a reservation of right on the

14   part of City to revoke the Use Permit or impose further restrictions, obligations, expenses,

15   fees, or conditions on the uses the Use Permit allowed. These conditions included no time or

16   durational limit on the Use Permit.

17          23.    The Hearing Officer's decision to issue the Use Permit was appealed to the

18   Planning Commission pursuant to Original Ordinance section 28.80.100. The Planning

19   Commission denied the appeal and upheld the Hearing Officer's decision on August 20,

20   2009.

21          24.    In determining to issue the Use Permit, the Hearing Officer found that

22   Plaintiff's application complied with all of the requirements of the Medical Cannabis

23   Dispensaries Ordinance, including the limitations on permitted locations of a dispensary

24   pursuant to Municipal Code section 22.80.060. Among other limitations, section 22.80.060

25   of the Original Ordinance prohibits operation of a dispensary within 500 feet of a school or

26   park. The Facility is located approximately 532 feet from the nearest school and further from

27   the nearest park.

28   /// ///

8

1    25.    The Dispensary Use Permit application contained several other conditions of

2    approval, including requirements for specific tenant improvements and modifications to the

3    existing floor plan at the Facility.

4    26.    On October 6, 2009, City issued a building permit (the "Building Permit") for

5    construction and installation of the improvements required to be constructed pursuant to the

6    Dispensary Use Permit. Plaintiff immediately undertook the improvements to the Facility,

7    relying upon and in accordance with the Use Permit and the Building Permit. Plaintiff

8    expended approximately $400,000 to plan, construct the significant modifications to the

9    internal layout of the Facility, and purchase the hardware and equipment required to

10   accommodate the mandatory security measures; all modifications to the front and rear

11   storefronts, internal hallway, and parking lot to make the  space accessible in compliance

12   with the Americans with Disabilities Act; and additional modifications for other purposes.

13   Plaintiff performed and completed all of the necessary work in compliance with all

14   applicable laws and to comply with the terms of the Use Permit and the Building Permit.

15   When completed, the work was inspected and approved by City's Building Department.

16   27.    With the complex and expensive requisite improvements to the Facility

17   completed, Plaintiff began operating as allowed under its Use Permit on January 5, 2010.

18   Based on current levels of operation, it is reasonable to project that the Facility would cover

19   its startup costs out of operating revenue for the remaining term of the lease as extended by

20   the four-year option.

21   28.    Since it has opened, Plaintiff has operated its dispensary pursuant to the terms

22   of the Use Permit and in compliance with all applicable state and local laws.  The

23   improvements to the Facility and all operations have and continue to comply with all

24   applicable legal requirements of City's Medical Marijuana Dispensaries Ordinance, the

25   Building Permit, and the Use Permit issued by City for the express purpose of allowing

26   Plaintiff's collective to operate a medical marijuana dispensary, and including for allowing

27   all activities that were the subject of those Permits to proceed. The Use Permit itself was

28   granted pursuant to procedures that complied with all applicable laws.  There has been no

9

1  citation, fine, notice, or warning of any sort issued to Plaintiff or Plaintiff's dispensary by

2  City or by any other government entity indicating any type of noncompliance with any law

3  or regulation.

4       29.    In apparent response to growing public concern over issues pertaining to

5  certain Santa Barbara medical marijuana dispensaries other than that operated by Plaintiff,

6  City initiated a series of studies of possible restrictions to be imposed on the number and

7  operation of such facilities within City. As a culmination of this exercise, City Council

8  adopted Ordinance No. 5526 (the "Revised Ordinance") on June 29, 2010, a full six months

9  after Plaintiff had commenced lawful operation in the Facility, and with actual knowledge of

10  that operation.

11       30.    On July 21, 2010, City issued a letter informing Plaintiff that the Revised

12  Ordinance required Plaintiff to close dispensary operations at 500 N. Milpas by January 29,

13  2011, and purported to revoke the Dispensary Permit effective as of that date.

14       31.    The Revised Ordinance's "Limitations on the Permitted Location of a

15  Dispensary," adopted verbatim by the Amended Ordinance enacted on May 17, 2011, allow

16  dispensaries to operate on particular block fronts in five locations, none of which includes the

17  location of Plaintiff's dispensary.  The allowable Milpas Street area is now comprised of

18  blocks 00-400, with the 500 block eliminated, ostensibly to effect compliance with the 2010

19  enactment of Health & Safety Code § 11362.768, effective January 1, 2011, which provides

20  that no dispensary or collective may be located within a 600-foot radius of a school.

21       32.    While Health & Safety Code § 11362.768 explicitly provides at subd. (f) that a

22  city or county may adopt ordinances "that further restrict the location or establishment" of a

23  dispensary, it also provides at subd. (g) that nothing in the statute shall "preempt local

24  ordinances, adopted prior to January 1, 2011, that regulate the location or establishment" of a

25  dispensary.  In other words, nothing inherent in the statute's locational restriction prevents

26  City from recognizing Plaintiff as a legal non-conforming use without any duration

27  limitation.

28  /// ///

10

33.     The Amended Ordinance allows for no more than three permitted or allowed Collective Dispensaries to legally operate within the City at any one time; one dispensary per allowable location. There is no provision by the City in the Revised or Amended Ordinance, or otherwise, to protect the constitutionally vested rights of permitted dispensary operators effectively pushed out by the Ordinances' locational revisions, such as by allowing them to remain as legal non-conforming uses and providing priority for permitting at a different allowable location.

34.     Instead, the Revised and Amended Ordinances are designed to prevent Plaintiff from ever obtaining another Use Permit at an allowable location City. City accomplishes this de facto prohibition by limiting the number of dispensaries allowed to operate in City to only three, and by strategically choosing as "Allowed Locations" areas in which the owners of commercial properties have made it known that they will not rent to dispensary operators. Accordingly, although the Ordinance lists five "Allowed Locations" for medical marijuana dispensaries, the majority of such locations are not, in fact, viable locations for a dispensary because they provide no rental opportunities. The City is well aware of the lack of alternative sites, having discussed this situation at more than one City Council Meeting or Ordinance Committee Meeting prior to passing the Revised Ordinance that assigns these "Allowed Locations."

35.     The Revised and Amended Ordinances contain restrictions restrictions that are both unlawful in themselves or unconstitutional on their face, and which are unlawful or unconstitutional as applied to Plaintiff. The following examples are not intended to comprise a comprehensive list of all such objectionable provisions, but only to demonstrate Plaintiff's entitlement to the relief requested. Plaintiff reserves the right to assert other objectionable provisions at trial. Plaintiff focuses on the provisions of the Amended Ordinance, which City intends to supersede the Revised Ordinance; however, Plaintiff incorporates and intends all its challenges and objections to the Amended Ordinance to also apply to the Revised Ordinance, which was the target of the complaint herein.

/// ///

11

36. **The Revised and Amended Ordinances allows unlimited, warrantless access to privileged and confidential collective records in violation of state and federal law.** Section 28.80.090 of the Amended Ordinance entitled "City Access to and Inspection of Required Storefront Collective Dispensary Records" authorizes any employee of City's police or Community Development Department to enter the collective at any time, without a warrant, subpoena, or other court process, to inspect and obtain Plaintiff's dispensary documents, in violation of state and federal privacy laws, and without a constitutionally adequate substitute for a search warrant, which is required in order for warrantless inspections of closely regulated businesses to be considered reasonable under the Fourth Amendment. *Gordon v. City of Moreno Valley*, 687 F.Supp.2d 930 (CD Cal. 2009).

37. The purpose for such inspection is stated by the Revised and Amended Ordinances as being "to ensure compliance and enforcement of the provisions of this Chapter, except that the inspection and copying of the private medical records of a Collective member shall be made available to the Police Department only pursuant to a properly executed search warrant or inspection warrant by a court of competent jurisdiction, or a court order for the inspection of such records. This purported exception for inspection of private medical records is meaningless given that no notice to the collective or its members is required before entry by City employees, and there is no viable way to secure such records prior to what would amount to a "raid" on Plaintiff's dispensary without notice.

38. No warrant would justify City's stated purpose of "ensur[ing] compliance and enforcement" of the Ordinance: even the state itself may not delve into the records of medical marijuana patients without good cause simply to assure itself, as the City purports to do here, that there is nothing amiss. *Bearman v. Superior Court*, 117 Cal.App.4th 463, 468-469 (2004). [When Medical Board concerned with potential violation by doctor of medical marijuana laws "seeks judicial enforcement of a subpoena for a physician's medical records, it cannot delve into an area of reasonably expected privacy simply because it wants assurance the law is not violated."]

/// ///

12

39.     The right of privacy guaranteed by Article I of the California Constitution and other state and federal privacy laws does not cover medical records only; any documentation containing the names, birthdates, addresses, phone numbers, and other personal identifying information of the members of Plaintiff's collective is also privileged and protected.  Also objectionable and unreasonable is the fact that the Revised and Amended Ordinances provides no limitations or confidentiality provisions regarding how such information may be obtained or handled or maintained, or for what purposes it may be used or disseminated.

40.     **The Revised and Amended Ordinances place unlawful restrictions on cultivating, distributing, obtaining, and using medical marijuana which conflict with the controlling state law set out in the Compassionate Use Act ("CUA") and the Medical Marijuana Program Act ("MMP").** The various restrictions which the Revised and Amended Ordinances places on collective members' ability to cultivate, distribute, obtain, and use medical marijuana conflict with the controlling state law set out in the Medical Marijuana Program Act ("MMP") and thus are pre-empted and void.  Charter cities may adopt and enforce ordinances that conflict with general state laws only if the subject matter of such ordinances is a "municipal affair" and not a "statewide concern." Cal. Const., art. XI, § 5; *American Financial Services Assn. v. City of Oakland*, 34 Cal.4th 1239, 1251 (2005); *Johnson v. Bradley*, 4 Cal.4th 389, 399 (1992).   The CUA and the statewide registry and identification card program implemented by the MMP are subjects of statewide concern. 88 Ops. Cal. Atty. Gen. 113 [2005 WL 1502081, 3 (Cal.A.G.)].

41.     The Amended Ordinance requires at Sections 28.80.080 G.3 and J.1, respectively, that "Cultivation of medical marijuana by the Collective members and the Management Members shall occur exclusively within the boundaries of the counties of Santa Barbara, Ventura, or San Luis Obispo County" and that the collective maintain records signed under penalty of perjury which "shall identify the location or locations within the counties of Santa Barbara, Ventura, or San Luis Obispo at which the Collective's medical marijuana is being cultivated . . . and the total number of marijuana plants cultivated or stored at each cultivation location." Any violation of these provisions exposes Plaintiff and

13

1    its members to criminal prosecution under public nuisance statutes or otherwise, pursuant to

2    the Ordinance's mandate that any violation of the Ordinance provisions can be found to

3    constitute a public nuisance.

4         42.   But nothing in the CUA or MMP requires that a collective or its members

5    limit the locations within the state in which medicine is grown, or that it reveal the locations

6    or amounts grown at each location.  Such restrictions are arbitrary, contrary to the CUA's

7    stated purpose of ensuring that "seriously ill Californians have the right to *obtain* and use

8    marijuana for medical purposes," and that "patients and their primary caregivers who *obtain*

9    and use marijuana for medical purposes . . . are not subject to criminal prosecution or

10   sanction" [emphasis added].  Such provisions are contrary to the MMP's purpose of

11   facilitating greater access to marijuana for those patients in need of the drug.  *City of Garden*

12   *Grove v. Superior Court*, 157 Cal.App.4th 355, 373 (2007).  Health & Safety Code section

13   11362.775 provides that that medical marijuana patients and primary caregivers may

14   "associate *within the State of California* in order collectively or cooperatively to cultivate

15   marijuana for medical purposes." [Emphasis added.]  The statute does not limit such persons

16   to cultivation in certain areas relative to where the collective to which they belong is located.

17   Such limitation by City on collective members' right to grow and obtain their medicine is

18   inimical to the purposes and intent of the CUA and MMP, and void.

19        43.   There is no need or reason for City to know how much medical marijuana is

20   cultivated at any location, and City is not legally entitled to such knowledge, given there is

21   no set limitation on the quantity of medical marijuana which a "qualified patient" or

22   "primary caregiver" may possess or cultivate, as held in *People v. Kelly*, 47 Cal.4th 1008,

23   1024 (2010), in which the Court of Appeal ruled that Health and Safety Code § 11362.77

24   limiting the quantity of medical marijuana a "qualified patient" or "primary caregiver" may

25   possess or cultivate unconstitutionally amended the voter-enacted Compassionate Use Act by

26   restricting the CUA's guarantee that a qualified patient may possess and cultivate any

27   amount of marijuana reasonably necessary for his or her current medical condition.  The City

28   may not make the determination of how much is "reasonably necessary" for the members of

1   Plaintiff's collective; such determination is private medical information to which City may

2   not have access.

3       44.     Members of Plaintiff's collective cannot be lawfully forced to reveal the

4   locations at which their medicine is cultivated. The names of Plaintiff's cultivators constitute

5   a privileged trade secret from which Plaintiff and its members derive actual and potential

6   economic value and essential security by virtue of those locations not being known to others.

7   Grower's names and locations constitute confidential information essential to the continued

8   operation of the collective, and are afforded protection against unnecessary disclosure under

9   Evidence Code § 1060.

10      45.     The Amended Ordinance's requirement that Plaintiff maintain a written list of

11  Plaintiff's grower's, locations, and amounts cultivated creates a security risk that would not

12  otherwise exist. Such a list is valuable to a criminal, and puts both Plaintiff and its growers at

13  risk. Growers typically cultivate at their residences and do not possess the high level of

14  security implemented at the Facility. Furthermore, if theft, robbery or other criminal activity

15  occurs at a grower's site as result of such a list, any member of the cooperative with access to

16  the list becomes a suspect.

17      46.     Further, Plaintiff is entitled under Evidence Code section 940 to refuse to

18  disclose any matter that may tend to incriminate it, and Plaintiff has ample reason to do so

19  here. In the matter at bar, City has documented well its position that storefront medical

20  marijuana dispensaries are detrimental and illegal and should not be operating in Santa

21  Barbara. City has adopted an Ordinance specifically designed to shut down Plaintiff's

22  dispensary operation. We have a City attorney who has extensively documented his opinion

23  that Plaintiff is operating illegally and not as a "proper" collective; who disagrees with the

24  state's highest law enforcement authority, the Attorney General, that a statutory cooperative

25  corporation is a lawful model for dispensaries and whose interpretation of what a cooperative

26  corporation entails differs fundamentally and radically from the plain language of the

27  California Corporations Code; and whose interpretation of the plain language of the state's

28  medical marijuana laws differs fundamentally and radically from the plain language of those

1  statutes.  City's primary reason for insisting on disclosure of this privileged information is to

2  ferret out alleged noncompliance with state or local laws to allow City to revoke Plaintiff's

3  Use Permit.

4      47.    The Revised and Amended Ordinances unlawfully interferes with the ability

5  of collective members to administer or ingest their medical marijuana, and unlawfully

6  prohibits Plaintiff from providing assistance to its members, as sanctioned by the MMP,  in

7  administering medical marijuana.  Section 28.80.080 F.2 states that "No Collective

8  Dispensary shall sell or display for sale any drug paraphernalia or any implement that may be

9  used to administer medical marijuana," thereby prohibiting the collective from providing its

10  members with any means by which to administer medical marijuana, despite the fact that

11  certain items such as vaporizers and edibles are necessary for medical marijuana patients

12  who cannot tolerate smoke.  In fact,  provision of means to administer medical marijuana is

13  specifically protected under Health & Safety Code § 11362.765, which exempts from

14  criminal liability "Any individual who provides assistance to a qualified patient or a person

15  with an identification card, or his or her designated primary caregiver, in administering

16  medical marijuana to the qualified patient or person or acquiring the skills necessary to

17  cultivate or administer marijuana for medical purposes to the qualified patient or person."

18  The Amended Ordinance's restriction on sales or provision of means to administer marijuana

19  obstructs the intent of the CUA and MMP to facilitate the ability of medical marijuana

20  patients to safely obtain *and use* the medicine they need.  No such prohibitions are or may

21  be lawfully imposed on other regulated businesses such as drug stores and pharmacies which

22  are dispensing legal medications, and imposing such limitations on medical marijuana

23  dispensaries is arbitrary and dangerous for patients, lacking rational basis, and violative of

24  constitutional guarantees of equal protection and exercise of first amendment rights.

25      48.    Section 28.80.080 F.1 gives a staff hearing officer unlimited discretion to

26  allow or prohibit the sale of "related marijuana use items."  Such provision also contravenes

27  and obstructs the state's medical marijuana laws. The Amended Ordinance grants to a City

28  staff person with no legal or medical training or licensing, who has no permission,

16

1   confidential relationship, or any other way to know what the needs of particular collective
2   members might be, and without imposition of guidelines or standards, an unlimited
3   discretion to decide which items the collective shall be permitted to sell.  Such person is not
4   qualified to determine whether an object constitutes illegal "drug paraphernalia" as opposed
5   to an acceptable means of administering medicinal marijuana, as such a determination
6   requires medical knowledge and knowledge of whether there was scienter on the part of the
7   item's manufacturer or distributer. *People v. Nelson*, 171 Cal.App.3d Supp. 1 (1985).  In any
8   event, no person should restrict Plaintiff's lawful right to provide its collective members with
9   a safe and convenient way to ingest their medical marijuana.

10      49.     Section 28.80.080 G.5 mandates that membership in the collective "be limited
11   to one Collective per qualified patient or primary caregiver."  Plaintiff has no way to insure
12   that its members do not also join another – or several other – collectives. Such requirement
13   may severely limit a medical marijuana patient's ability to obtain his or her medicine, and is
14   therefore inimical to the stated purposes of the CUA and the MMP.

15      50.     Section 28.80.080 G.5 also provides that "the Collective shall . . . consist only
16   of individuals residing with [sic] Santa Barbara County, as the term 'principal residence' is
17   defined in the federal Internal Revenue Code."  As with the limitation prohibiting collective
18   members from joining other collectives, Plaintiff has no possible to way to verify the legal
19   residences of its members, or know when such residences might change.  Further, neither the
20   CUA nor the MMP require that caregivers and qualified patients reside in the same county.
21   To the contrary, Health & Safety Code § 11362.7, which defines "primary caregiver,"
22   specifies that a caregiver is required to reside in the same county as the person to whom a
23   caregiver provides medical marijuana only where the caregiver "has been designated as a
24   primary caregiver by more than one qualified patient or person with an identification card."
25   Hlth. & Saf., § 11362.7(d)(2).  Otherwise, a caregiver may be  "designated as a primary
26   caregiver by a qualified patient or person with an identification card who resides *in a city or*
27   *county other than that of the primary caregiver* [emphasis added.]"  Hlth. & Saf., §
28   11362.7(d)(3).  The requirement that all collective members reside in Santa Barbara County

17

1   also is inimical to the stated purposes of the CUA and the MMP in that it purports to limit a

2   medical marijuana patient's ability to obtain his or her medicine by limiting his or her

3   caregivers.

4        51.    **The Revised and Amended Ordinances impose obligations with which it**

5   **is impossible to comply.**  Section 28.80.070 C.2 requires that an expressly designated

6   member of the collective "shall be responsible for monitoring the Property . . . for any

7   nuisance activity . . . which may occur on the block within which the Storefront Collective

8   Dispensary is operating."  Plaintiff cannot, and cannot be reasonably required, to police the

9   *entire block* on which its dispensary is located, which is in a densely populated commercial

10  area also occupied by fast food restaurants, bars, liquor stores, automotive repair shops, and

11  other such businesses whose nature encourages loitering and other activity which, under the

12  Amended Ordinance, constitutes a nuisance.  It is a violation of Plaintiff's due process rights

13  to foist such responsibility upon it, making Plaintiff responsible for controlling nuisance

14  activity and criminal activity unrelated to its operations, and thereby putting its members in

15  danger by obligating them to police crime on the entire block.  Plaintiff already complies

16  with its Use Permit conditions requiring it to provide various security staff and security

17  measures at Green Well.

18  **FIRST CAUSE OF ACTION**

19  **Violation of Fundamental Vested Rights**

20  **[42 U.S.C. § 1983, 5th Amend., 14th Amend.]**

21       52.    Plaintiff incorporates and repleads the allegations of paragraphs 1 through 51

22  above.

23       53.    City's enactment of the Revised and Amended Ordinances violates Plaintiff's

24  fundamental vested rights protected by the Constitution of the United States under the Fifth

25  and Fourteenth Amendments and constitutes a taking of property without compensation, as it

26  purports to shut down retroactively a lawful use expressly permitted by City, without an

27  adequate amortization period or compensation.

28  /// ///

18

1    54.    Where, as here, a property owner has performed substantial work and incurred

2  substantial liabilities in good faith reliance upon a valid permit issued by the government, the

3  owner acquires a vested right to continue the lawfully established use. *Avco Community*

4  *Developers, Inc. v. South Coast Regional Com.*, 17 Cal.3d 785, 791 (1976); *City of Ukiah v.*

5  *County of Mendocino*, 196 Cal.App.3d 47, 56 (1987).  The right to continue operation of an

6  established business and legal nonconforming use in which the owner has made a substantial

7  investment is a "sufficiently personal, vested and important to preclude its extinction by a

8  nonjudicial body" and qualifies for treatment as a "fundamental vested right." *Goat Hill*

9  *Tavern v. City of Costa Mesa*, 6 Cal.App.4th 1519, 1527, 1529 (1992).

10    55.    Plaintiff has expended approximately $400,000 in good faith reliance on the

11  Dispensary Use Permit to purchase, install and construct improvements required as

12  conditions of approval, including structural improvements to accommodate security

13  requirements, and improvements to comply with the Americans with Disabilities Act.

14  Plaintiff has further incurred substantial liabilities by entering into a four-year lease of its

15  business location.

16    56.    City was aware that Plaintiff undertook these liabilities and expenditures in

17  reliance on the Use Permit, as City issued a Building Permit for the tenant improvements

18  Plaintiff constructed and installed. Many of the improvements were made and installed to

19  comply with City's express requirements under the Original Ordinance. Moreover, the

20  detailed nature of the information required in the application for the Dispensary Permit fully

21  informed City of the extent of Plaintiff's proposed activities in reliance on the Dispensary

22  Permit.

23    57.    City made no attempt to justify its interference with Plaintiff's vested right

24  based on a compelling public necessity or to prevent a nuisance. Green Well has been

25  operating lawfully since its opening and has not been the subject of any disciplinary actions

26  or official complaints.

27    58.    The Amended Ordinance provides an amortization period of four years from

28  the date of enactment of the Revised Ordinance (i.e., less than three years from today), within

19

1  which Plaintiff would be allowed to continue to operate before the Amended Ordinance

2  requires it to shut down – subject to Plaintiff's ability to comply with the highly restrictive

3  operational provisions of the Revised and Amended Ordinances.

4        59.    The gross inadequacy of the four-year amortization period is demonstrated by,

5  among other things, (i) the scope and scale of the investment Plaintiff made in reliance on

6  City's issuance of its permits; (ii) the fact that the Revised Ordinance was adopted less than

7  six months after Green Well began operating and the Amended Ordinance less than 18

8  months after operations began; (iii) the fact that during the time it has been operating Plaintiff

9  has received no notice, warning or citation from any authority alleging that it has committed

·10  or allowed a nuisance in operation of the Facility; and (iv) the fact that Plaintiff has not been

11  otherwise charged with a violation of any law, ordinance, rule or regulation. Anything short

12  of deeming Plaintiff a fully legal nonconforming use without limitation on the length of time

13  it can lawfully operate is a deprivation of constitutional right without compensation and void.

14        60.    Unless set aside, the Revised and Amended Ordinances effect damage to

15  Plaintiff by depriving it of the benefit of its out-of-pocket expenses as well as the value of its

16  business for the remaining term of the Lease and the option period. Unless set aside, the

17  Revised and Amended Ordinances damage the health, welfare, and financial well-being of

18  each of Plaintiff's collective members by depriving them of a safe, private, convenient and

19  affordable way to obtain medicinal marijuana.

20        61.    City's actions have violated the civil rights of Plaintiff secured to it via the 5th

21  and 14th Amendments to the U.S. Constitution, and are a source of injury, loss, and harm to

22  the Plaintiff. Plaintiff is entitled to a judgment for such violations in an amount that it will

23  prove at trial.

24  /// ///

25  /// ///

26  /// ///

27  /// ///

28  /// ///

## SECOND CAUSE OF ACTION

### Violation of Due Process of Law
### [42 U.S.C. § 1983; 14th Amend.]

62.    Plaintiff incorporates and repleads the allegations of paragraphs 1 through 61 above.

63.    The due process clause of the 14th Amendment to the United States Constitution provides that "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law."

64.    City enacted the Revised and Amended Ordinances "without any significant change in circumstances and without considering appropriate planning criteria, to rezone the property for the sole purpose of defeating the development, the subsequent rezoning ordinance would undoubtedly be held invalid as arbitrary and discriminatory." *Arnel Development Co. v. City of Costa Mesa*, 126 Cal.App.3d 330, 337 (1981). The fact that City issued the Use Permit and Building Permit at the same time City was seriously considering possible ordinance provisions that would render the activity conducted pursuant to the Use Permit illegal, all the while knowing that Plaintiff would rely on the permits to incur significant expenses and undertake operations in contemplation of a long and useful life for the business, is an arbitrary and capricious act. City acted with malice in committing these acts, or with such deliberate indifference or callous and reckless disregard of the constitutional rights of Plaintiff.

65.    City acted arbitrarily by intentionally drafting its Revised and Amended Ordinances to exclude Green Well from the locations where a dispensary may operate. City can offer no reasonable justification for attempting to revoke Plaintiff's vested right to continue as a legal nonconforming use. The requirement that dispensary operations be located 600 feet away from any school does not operate to protect health and safety any more or less than the 500-foot restriction under the original Ordinance, nor does City have any substantial evidence to support the idea that the health, safety and welfare of school children

21

1   would not be threatened by a 600-foot radius as opposed to a 500-foot radius. A deliberate

2   intent to shut down Green Well in violation of Plaintiff's rights provides the only reasonable

3   explanation for the change. City had no evidence that any underage persons have attempted

4   to access Green Well in a manner that might justify an additional 100-foot school buffer. No

5   complaints have been made alleging that Green Well has served minors. Plaintiff took strict

6   precautions to preclude anyone under the age of 20 from becoming a member of its

7   cooperative and thus being able to procure cannabis from it.

8       66.    City has violated Plaintiff's right and the right of its collective members right

9   to bodily security and integrity by imposing upon Plaintiff the myriad burdensome and

10   unlawful restrictions and limitations contained in the Revised and Amended Ordinances,

11   which limitations and restrictions obstruct Plaintiff's collective members from cultivating,

12   obtaining, distributing and using the medical marijuana to which they are rightfully entitled

13   under California law, and which subject them to criminal and other sanctions for engaging in

14   protected activity.

15       67.    City has used legal process for a wrongful purpose.

16       68.    City has violated Plaintiff's right and its members' right to liberty by

17   intentional violation of their privacy and the sanctity of their private confidential information,

18   including medical information, all without justification.

19       69.    City has created a dangerous situation for Plaintiff and its collective members

20   by increasing their risk of harm, and acting to render them more vulnerable to danger.

21   Plaintiff further alleges that City did this with either an intent to harm or an intent to place it

22   and its members unreasonably at risk of harm.

23       70.    City has attempted to conducting unlawful searches and seizures of their

24   property and personal information, all the while attempting to preclude Plaintiff and its

25   collective members' right to adequate, effective, and meaningful access to the courts before

26   taking such actions.

27       71.    City has failed to conduct its review of Plaintiff's operations fairly and

28   objectively and with a view toward attaining truth and enabling Plaintiff's collective

22

1    members to be free to grow, distribute, obtain and use the medicine to which they are entitled

2    under law.

3         72.    City's actions as set forth in this cause of action were a cause of physical and

4    emotional harm and of financial deprivation to Plaintiff and Plaintiff's members.

5         73.    For the foregoing reasons, the Revised and Amended Ordinances and the

6    manner of their adoption violates Plaintiff's and Plaintiff's members' right to due process of

7    law. City's action damages Plaintiff by depriving it of the benefit of its out-of-pocket

8    expenses as well as the value of its business that would otherwise have lasted at the very least

9    for the remaining term of the Lease and lease option period, and likely for much longer.

10   City's action deprives the members of Plaintiff's collective of a safe, private, convenient and

11   affordable way to obtain medicinal marijuana, to which they are entitled under the law.

12        74.    City's actions have violated the civil rights of Plaintiff secured to it via the

13   14th Amendment to the U.S. Constitution, and are a source of injury, loss, and harm to the

14   Plaintiff. Plaintiff is entitled to a judgment for such violations in an amount that it will prove

15   at trial.

16

**THIRD CAUSE OF ACTION**

**Violation of Constitutional Right to Equal Protection Under the Law**
**[42 U.S.C. § 1983; 14th Amend.]**

17

18

19        75.    Plaintiff incorporates and repleads the allegations of paragraphs 1 through 74

20   above.

21        76.    In adopting the Revised and Amended Ordinances and imposing their

22   unlawful restrictions and limitations on Plaintiff, City violated the Fourteenth Amendment to

23   the United States Constitution which states that "no state shall . . . deny to any person within

24   its jurisdiction the equal protection of the laws." The guarantee of equal protection is

25   violated where the government exposes a person to intentional and arbitrary discrimination

26   by treating them differently under the law than others similarity situated, without a rational

27   basis for such treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

28   /// ///

23

77.     Of the three existing dispensaries operating under permits from City, only one existing dispensary would be allowed to remain in business under the Amended Ordinance. That dispensary is Pacific Coast Dispensary located at 331 N. Milpas ("Pacific Coast"). Plaintiff is informed and believes that Pacific Coast has been under criminal investigation for violation of the California medical marijuana laws. On the basis of that information and belief, Plaintiff alleges that City has elected to exempt from the closure requirements of the Amended Ordinance a dispensary that is under suspicion of illegal conduct, but located in what City considers a more acceptable location, in favor of closing a law abiding dispensary that is actuality far safer and actively better for the community.  Plaintiff alleges that City is motivated by bias, unconcerned with its obligation to respect Plaintiff's constitutionally vested rights, and unconcerned with its obligations under the MMP to facilitate, and not obstruct, the ability of qualified patients to obtain and use medical marijuana.

78.     The Revised and Amended Ordinances allow a total of three dispensaries to operate in City. The Revised and Amended Ordinances render void right to operate of two existing dispensaries, one being Green Well. Thus, the Revised and Amended Ordinances authorize City to issue two permits to other applicants. City has issued one permit thus far to Santa Barbara Patients' Group, a dispensary that operated for nearly ten years without a permit. City's requirement that Plaintiff shut down, despite its vested interests and rights, while allowing other unpermitted dispensaries to continue to operate notwithstanding their illegal status, is arbitrary, capricious and lacking in rational basis, and deprives Plaintiff of equal protection of the laws. No rational basis exists for treating Green Well differently from other dispensaries that the Amended Ordinance will allow to continue operating.

79.     The Revised and Amended Ordinances contain additional geographic restrictions that arbitrarily and without justification apply to require Green Well to shut down while other  similarly situated dispensaries are allowed to continue in operation.

80.     For the foregoing reasons, the Revised and Amended Ordinances and the manner of their adoption violates Plaintiff's rights to equal protection of the law, with resulting damage by depriving Plaintiff of the benefit of its out-of-pocket expenses as well as

24

1  the value of its business for the remaining term of the Lease and the option period. The

2  Revised and Amended Ordinances deprive the members of Plaintiff's collective of a safe,

3  private, convenient and affordable way to obtain medicinal marijuana, to which they are

4  entitled under the law. Plaintiff is entitled to a judgment for such amount that it will prove at

5  trial.

6       81.   City has further violated Plaintiff's equal protection rights by imposing upon it

7  and its individual members the restrictions and limitations of the Revised and Amended

8  Ordinances which prevent them from enjoying the rights to which they are entitled under the

9  state's medical marijuana laws which other citizens are free to enjoy.

10       82.   City's actions have violated the civil rights of Plaintiff secured to it via the

11  14th Amendments to the U.S. Constitution, and are a source of injury, loss, and harm to the

12  Plaintiff. Plaintiff is entitled to a judgment for such violations in an amount that it will prove

13  at trial.

14  **FOURTH CAUSE OF ACTION**

15  **Violation of Prohibition against Taking without Just Compensation**

16  **[42 U.S.C. § 1983; 5th Amend., 14th Amend.]**

17       83.   Plaintiff incorporates and repleads the allegations of paragraphs 1 through 82

18  above.

19       84.   In adopting the Revised and Amended Ordinances without payment of just

20  compensation and without providing for a reasonable and adequate amortization period for

21  recovery of the investment Plaintiff made in good faith, City violated the Fifth Amendment

22  prohibition against taking private property for public use without just compensation. *Lake*

23  *Country Estates, Inc. v. Tahoe Regional Planning Agency* 440 U.S. 391, 399 (1979)

24  [inverse condemnation is actionable under 42 U.S.C. section 1983 as a violation of the Fifth

25  Amendment's guarantee]; see also *First English Evangelical Lutheran Church v. County of*

26  *Los Angeles*, 42 U.S. 304 (1987); *Tahoe Sierra Preservation Council v. Tahoe Regional*

27  *Planning Agency*, 749 F.3d 764, 774 (9th Cir. 1984); *MacLeod v. County of Santa Clara*,

28  F.2d 541, 544, fn. 5 (9th Cir. 1984).

25

85. The Revised and Amended Ordinances revoke Plaintiff's Use Permit and requires that Plaintiff cease operations without payment of compensation or provision of an adequate compensatory amortization period. A jurisdiction may eliminate nonconforming uses by either of two "constitutionally equivalent alternatives: It can eliminate the use immediately by payment of just compensation, or it can require removal of the use without compensation following a reasonable amortization period." *Tahoe Regional Planning Agency v. King*, 233 Cal.App.3d 1365, 1394 (1991). City offers neither option here.

86. Neither the 180-day nor the four-year amortization period provided by the Revised and Amended Ordinances are reasonable amortization periods, nor are they "commensurate with the investment involved." *National Advertising Co. v. County of Monterey*, 1 Cal.3d 875, 879 (1970) ; *Tahoe Regional Planning Agency v. King, supra*, 233 Cal.App.3d at p. 1397; *People v. Gates* 41 Cal.App.3d 590, 595, 604 (1974). Here, the amortization period deprives Plaintiff of the entire value of a business lawfully commenced pursuant to permits the City itself granted, depriving it of the value of improvements it made, which improvements are not suitable for alternative uses, and depriving it of the investment it made to plan for, construct and install those improvements and commence operations.

87. Plaintiff invested nearly $400,000 in good faith just to establish its lawful business, and then City's actions required even further expense and cost to be incurred by Plaintiff by forcing it to fight for its legal rights in order to stay open past the initially imposed 180-day amortization period.  Green Well has only been in operation for approximately 20 months. Plaintiff has therefore not had an opportunity to recoup its investment costs, let alone realize its reasonable investment expectations. Nearly four years remain on the lease term, plus an additional four years at Plaintiff's option. As the Revised Ordinance would allow only three dispensaries to remain in City and contains provisions assuring that Plaintiff would not qualify, Plaintiff faces a combination of regulatory circumstances that effectively deprive it of the ability to plan, the  ability to operate, and the ability to enjoy the benefit of its fundamental vested right.

/// ///

88.     City has imposed on Plaintiff, first by enacting the Revised Ordinance and then by enacting the Amended Ordinance, extraordinary additional expense required to comply with the Ordinance's stringent limitations and obligations – expenses which Plaintiff had no reason to expect and should not have been forced to incur, given Plaintiff's Use Permit had different requirements than those imposed, without due process, by the Ordinance revisions. The imposition of these expensive and inconvenient limitations and obligations without due process works a taking without just compensation on Plaintiff.

89.     For all the foregoing reasons, the Revised and Amended Ordinances and the manner of their adoption constitute a taking without just compensation, violating Plaintiff's rights secured to it by 5th and 14th Amendments to the U.S. Constitution, and are a source of injury, loss, and harm to the Plaintiff. Plaintiff is entitled to a judgment for such violations in an amount that it will prove at trial.

## FIFTH CAUSE OF ACTION

### Violation of Constitutional Right to Freedom of Association
### [42 U.S.C. § 1983; 1st Amend.]

90.     Plaintiff incorporates and repleads the allegations of paragraphs 1 through 89 above.

91.     In adopting the Revised and Amended Ordinances, which aim to terminate Plaintiff's operations at a date certain in the near future, and which aim to drastically restrict the ability of Plaintiff's collective members to associate for the purposes authorized by and intended to be facilitated by California's Compassionate Use Act and Medical Marijuana Program Act, City has acted to restrict the Plaintiff's constitutionally protected right of freedom of association in the organization of their choice, which right is secured to them by the First Amendment.

92.     In adopting the Revised and Amended Ordinances and enforcing them against Plaintiff, City is using its zoning powers to arbitrarily and capriciously and without rational basis prevent Plaintiff's members, medical marijuana patients and caregivers, from meeting to distribute and access their medicine, and is denying them their constitutionally protected

27

1  right to choose which organization with which they choose to associate in order to obtain

2  their medicine in a safe, private, and confidential manner. In adopting and enforcing the

3  Revised and Amended Ordinances against Plaintiff without due process, City is unlawfully

4  attempting to not only to stifle their right to assembly and association, but to restrict

5  communication, education, and advocacy regarding medical marijuana which is enhanced

6  and effected by virtue of Plaintiff's existence. "It is beyond debate that freedom to engage in

7  association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty'

8  assured by the Due Process Clause." (*N.A.A.C.P. v. Alabama*, 357 U.S. 449, 460 (1958); *see*

9  *Healy v. James*, 408 U.S. 169, 181 (1972) ["While the freedom of association is not

10  explicitly set out in the Amendment, it has long been held to be implicit in the freedoms of

11  speech, assembly and petition."].

12       93.     Plaintiff's members are qualified medical marijuana patients suffering from

13  conditions including cancer, multiple sclerosis, chronic back pain, arthritis, neurological

14  disorders, digestive ailments, migraine headaches, bursitis, insomnia, social anxiety,

15  depression, and other serious ailments.  The current restrictions upon and ultimate

16  termination of their right to associate at and express themselves within Plaintiff's Facility,

17  and Plaintiff's concomitant right to organize and facilitate that association of members, is and

18  will continue to be the cause of substantial pain and hardship to Plaintiff and its members.

19       94.     City's actions have violated the civil rights of Plaintiff secured to it via the 1st

20  Amendment to the U.S. Constitution, and are a source of injury, loss, and harm to the

21  Plaintiff. Plaintiff is entitled to a judgment for such violations in an amount that it will prove

22  at trial.

23                              **SIXTH CAUSE OF ACTION**

24            **Violation of Constitutional Prohibition on Ex Post Facto Laws**

25                          **[42 U.S.C. § 1983, 14th Amd.]**

26       95.     Plaintiff incorporates and repleads the allegations of paragraphs 1 through 94

27  above.

28  /// ///

1    96.    The ex post facto clauses of both the United States Constitution and the state
2  of California bar any law which imposes a penalty for an act innocent when done.    U.S.
3  Const. Art. 1, § 10, cl. 1; Cal. Const. Art. 1, § 9.  An ordinance is ex post facto if it imposes
4  punishment for past conduct lawful at time it was engaged in.  *Garner v. Board of Public*
5  *Works*, 341 U.S. 716, 721 (1951).

6    97.    The retroactive nature of the Revised and Amended Ordinances renders them
7  ex post facto legislation as applied to Plaintiff, as they impose severe penalties now for
8  actions and choices made by Plaintiff before either of the Ordinances were enacted, and
9  before those actions were subject to penalty. *See, Hossom v. City of Long Beach*, 83
10  Cal.App.2d 745 (1948) [City ordinance terminating right of redemption for property tax
11  deeded to city one year from date of ordinance's enactment, as applied to property which
12  record title holders had attempted to redeem more than a year before enactment of the
13  ordinance, was invalid as an "ex post facto law".]

14    98.    The Revised and Amended Ordinances and the manner of their  adoption
15  violate Plaintiff's rights secured to it by Art. 1, § 10, cl. 1 of the U.S. Constitution, Art. 1, § 9
16  of the California Constitution, and the 14th Amendment, which requires states to provide due
17  process and prohibits the making of any law which deprives any person of life, liberty or
18  property without due process of law."  City's violation of these rights secured to Plaintiff by
19  federal and state law is a source of injury, loss, and harm to Plaintiff.  Plaintiff is entitled to a
20  judgment for such violations in an amount that it will prove at trial.

21                        **SEVENTH CAUSE OF ACTION**
22                **Mandate To Set Aside The Revised Ordinance as an**
23                **Illegal and Void Purported Exercise of The Police Power**

24    99.    Plaintiff incorporates and repleads the allegations of paragraphs 1 through 98
25  above.

26    100.    The Dispensary Use Permit became final in August 2009 when the Planning
27  Commission rejected the appeal from the Hearing Officer's decision, thus validating the use
28  as legal in all respects at that time.  Since January 5, 2010, Plaintiff has operated in the

1  Facility under the Use Permit in compliance with the conditions of the Use Permit and all
2  applicable laws.  Less than six months after Green Well began operating, City adopted the
3  Revised Ordinance, effectively converting the use permitted by the Use Permit into an
4  illegal, non-conforming use.  City's actions in adopting the Revised Ordinance were
5  arbitrary, capricious and lacking in rational basis, as nothing in the record before the City
6  Council showed any change in underlying circumstances between the date when City issued
7  the Use Permit and the dates when it adopted the Revised Ordinance that would justify the
8  policy reversal reflected in the Revised Ordinance – which has now itself been overridden by
9  the Amended Ordinance, containing the same operational provisions challenged herein, and
10  also containing an unconstitutional provision requiring revocation of Plaintiff's permit at a
11  time certain in the near future.

12       101.  The Revised and Amended Ordinances are invalid as a purported exercise of
13  the police power and Plaintiff is entitled to a writ of mandate ordering that both be set aside
14  and that no action be taken to enforce either ordinance against Plaintiff.

15  **EIGHTH CAUSE OF ACTION**

16
17  **Mandate To Set Aside The Revised Ordinance As An Illegal And Void Purported
Exercise Of The Police Power As Applied To Plaintiff For Failure To Exempt
Plaintiff's Use As A Fundamental Vested Right**
18

19       102.  Plaintiff incorporates and repleads the allegations of paragraphs 1 through 101
20  above.

21       103.  The Use Permit became final in August 2009 when the Planning Commission
22  rejected the appeal from the Hearing Officer's decision, thus validating the use as legal in all
23  respects at that time.  Less than six months after Green Well began operating, City adopted
24  the Revised Ordinance invalidating the use permitted by the Use Permit. In the meantime,
25  after issuance of the Use Permit and prior adoption of the Revised Ordinance, City issued to
26  Plaintiff a Building Permit for construction of improvements in the Facility as required to
27  comply with the conditions of the Use Permit and the Original Ordinance. In good faith
28  reliance on the Use Permit and the Building Permit, Plaintiff spent approximately $400,000,

30

1  to complete the work of improvement and commenced business in the Facility. Plaintiff has

2  operated in the Facility since January 5, 2010 after completion of the improvement work, in

3  compliance with all applicable laws and the terms of the Building Permit and the Use Permit.

4  Good faith, lawful reliance on permits validly issued conferred on Plaintiff a fundamental

5  vested right to continue the use allowed pursuant to the Use Permit and Building Permit.

6      104.   The Revised and Amended Ordinances require Plaintiff to shut down

7  unlawfully and to lose the entire value of its lawfully established use, operation, activities,

8  permit, lease, and investment without providing just compensation or adequate alternative

9  locations or adequate amortization duration of continued legal non-conforming use.

10      105.   The Revised and Amended Ordinances deprive Plaintiff of its fundamental

11  vested right without compensation other than a 180 day or four year "amortization" period of

12  continued operation, both of which are grossly inadequate under the law and facts. The

13  Revised and Amended Ordinances are thus arbitrary, capricious, and lacking in rational basis

14  as applied to Plaintiff and the Facility, and are therefore void. *Goat Hill Tavern v. City of*

15  *Costa Mesa, supra* 6 Cal.App.4th 1519 (1992). Plaintiff is entitled to a writ of mandate

16  ordering that both of these ordinances to be set aside and that no action be taken to enforce

17  either of these ordinances against Plaintiff.

18                               **REQUEST FOR RELIEF**

19      106.   Under the First through Sixth Causes of action, for general, special, and

20  compensatory damages according to proof, for interest on damages as authorized by law, and

21  in addition thereto;

22      107.   For punitive damages against any individual Defendants who may be named

23  in an amount according to proof;

24      108.   For costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988;

25      109.   Under the Seventh Cause of Action for a writ of mandate setting aside the

26  Amended Ordinance as arbitrary, capricious and lacking in rational basis, and thus void as to

27  Plaintiff, and coupled with an order granting an injunction prohibiting City from enforcing

28  the Revised or Amended Ordinances against Plaintiff;

FIRST AMENDED COMPLAINT AND PETITION FOR WRIT OF MANDATE

110.   Under the Eighth Cause of Action for a writ of mandate directing City to set aside the Revised and Amended Ordinances as void for violation of a fundamental vested right, coupled with an order that no action be taken to enforce either ordinance against Plaintiff.

111.   For such other relief as the Court may deem just and proper.

Dated:  August 15, 2011                    ROSENBERG LEGAL

                                           _____
                                           Dana J. Rosenberg, Attorney for Plaintiff

Dated:  August 15, 2011                    LAW OFFICE OF JANET K. MᶜGINNIS

                                           _____
                                           Janet K. MᶜGinnis, Attorney for Plaintiff

32

ORDINANCE NO. _____

AN ORDINANCE OF THE COUNCIL OF THE CITY OF
SANTA BARBARA AMENDING THE MUNICIPAL CODE BY
ADDING      CHAPTER      28.80      ESTABLISHING
REGULATIONS   AND   PROCEDURES   FOR   MEDICAL
CANNABIS DISPENSARIES.

     The City Council of the City of Santa Barbara does ordain
as follows:

**SECTION ONE.** The City Council adopts the ordinance codified in
this chapter based upon the following findings and
determinations:

A.  The voters of the State of California approved Proposition
215 (codified as Health and Safety Code Section 11362.5 et seq.)
entitled "The Compassionate Use Act of 1996" (Act).

B.  The intent of Proposition 215 was to enable persons residing
in the State of California who are in need of cannabis for
medical purposes to be able to obtain and use it without fear of
criminal prosecution under limited, specified circumstances.

C.  The State enacted SB 420 in 2004, being Sections 11362.7 et
seq., of the Health and Safety Code, being identified as the
Medical Cannabis Program, (Program), to clarify the scope of the
Compassionate Use Act of 1996 and to allow cities and other
governing bodies to adopt and enforce rules and regulations
consistent with the Program.

D.  To protect the public health, safety, and welfare, it is the
desire of the City Council to modify the City Code consistent
with the Program, regarding the location and operation of
medical cannabis dispensaries.

E.  It is the City Council's intention that nothing in this
chapter shall be construed to do any of the following: 1. to
allow persons to engage in conduct that endangers others or
causes a public nuisance; 2. to allow the use of cannabis for
non-medical purposes; or 3. to allow any activity relating to
the cultivation, distribution, or consumption of cannabis that
is otherwise illegal and not permitted by state law.

1

**EXHIBIT A**
Pg. 1 of 18

F.  Pursuant to California Health and Safety Code Section 11362.71 et seq., the State Department of Health, acting by and through the state's counties, is to be responsible for establishing and maintaining a voluntary medical cannabis identification card program for qualified patients and primary caregivers.

G. California Health and Safety Code Section 11362.71(b) requires every county health department, or its designee, to implement a procedure to accept and process applications from those seeking to join the identification program in the matters set forth in Section 11362.71 et seq.

H.  This chapter is found to be categorically exempt from environmental review pursuant to CEQA Guidelines Section 15061(b) (3) in that the Council finds and determines that there is nothing in this chapter or its implementation that could foreseeably have any significant effect on the environment.

I.  That this chapter is compatible with the general objectives of the general plan and any applicable specific plan, in that this use would be conditionally permitted in commercial and industrial districts, being similar to other permitted and conditionally permitted uses, such as pharmacies and medical clinics, and in that the use will be subject to strict review and conditions.

J. That this chapter is compatible with the public convenience, general welfare and good land use practice, in that medical marijuana dispensaries address a medical need in the community, and in that the use will be subject to rigorous review and conditions.

K.  That this chapter will not adversely affect the orderly development of property, in that dispensaries would be subject to a careful review process, and strict operating requirements would be imposed.

**SECTION TWO.**  Title 28 of the Santa Barbara Municipal Code is amended by adding a new chapter, Chapter 28.80 entitled "Medical Cannabis Dispensaries," which reads as follows:

2

**Section 28.80.010 Purpose and Intent.**

It is the purpose and intent of this chapter to regulate the locations of medical cannabis dispensaries in order to promote the health, safety, and general welfare of residents and businesses within the City. It is neither the intent nor the effect of this chapter to condone or legitimize the use or possession of cannabis except as allowed by California law.

**Section 28.80.020 Definitions.**

For the purpose of this chapter, the following words and phrases shall have the following meanings:

**A. Applicant.** A person who is required to file an application for a permit under this chapter, including an individual owner, managing partner, officer of a corporation, or any other operator, manager, employee, or agent of a dispensary.

**B. Drug Paraphernalia.** As defined in California Health and Safety Code Section 11362.5, and as may be amended from time to time.

**C. Identification Card.** As defined in California Health and Safety Code Section 11362.5 et seq., and as may be amended from time to time.

**D. Medical Cannabis Dispensing Collective or Dispensary.** Any association, cooperative, affiliation, or collective of persons where multiple qualified patients or primary care givers are organized to provide education, referral, or network services, and facilitation or assistance in the lawful retail distribution of medical cannabis. "Dispensary" shall include any facility or location where the primary purpose is to dispense medical cannabis (i.e., marijuana) as a medication that has been recommended by a physician and where medical cannabis is made available to or distributed by or to a primary caregiver or a qualified patient, in strict accordance with California Health and Safety Code Section 11362.5 et seq. A dispensary shall not include dispensing by primary caregivers to qualified patients in the following locations so long as the location of the clinic, health care facility, hospice, or residential care facility is otherwise permitted by the Municipal Code or by applicable state laws:

3

1. a clinic licensed pursuant to Chapter 1 of Division 2 of the state Health and Safety Code;

2. a health care facility licensed pursuant to Chapter Two of Division 2 of the state Health and Safety Code;

3. a residential care facility for persons with chronic life-threatening illness licensed pursuant to Chapter 3.01 of Division 2 of the state Health and Safety Code;

4. residential care facility for the elderly licensed pursuant to Chapter 3.2 of Division 2 of the state Health and Safety Code;

5. a residential hospice, or a home health agency licensed pursuant to Chapter 8 of Division 2 of the state Health and Safety Code;

provided that any such clinic, health care facility, hospice or residential care facility complies with applicable laws including, but not limited to, Health and Safety Code Section 11362.5.

**E. Permittee.** The person to whom either a dispensary permit is issued by the City and who is identified in California Health and Safety Code Section 11362.7, subdivision (c) or (d), or (e) or (f).

**F. Person.** An individual, partnership, co-partnership, firm, association, joint stock company, corporation, limited liability company or combination of the above in whatever form or character.

**G. Person with an Identification Card.** As set forth in California Health and Safety Code Section 11362.5 et seq., and as amended from time to time.

**H. Physician.** A licensed medical doctors including a doctor of osteopathic medicine as defined in the California Business and Professions Code.

**I. Primary Caregiver.** As defined in California Health and Safety Code Section 11362.5 et seq., and it as may be amended.

4

**EXHIBIT A**
Pg. 4 of 18

**J. Qualified Patient.** As defined in California Health and Safety Code Section 11362.5 et seq., and as it may be amended from time to time.

**K. School.** An institution of learning for minors, whether public or private, offering a regular course of instruction required by the California Education Code. This definition includes an elementary school, middle or junior high school, senior high school, or any special institution of education for persons under the age of eighteen years, whether public or private.

## 28.80.030 Dispensary Permit Required to Operate.

It is unlawful for any person to engage in, conduct or carry on, or to permit to be engaged in, conducted or carried on, in or upon any premises in the City the operation of a dispensary unless the person first obtains and continues to maintain in full force and effect a Dispensary Use Permit issued by the City Staff Hearing Officer pursuant to this Chapter, or by the Planning Commission on an appeal from a decision by the Staff Hearing Officer.

## 28.80.040 Business License Tax Liability.

An operator of a dispensary shall be required to apply for and obtain a Business Tax Certificate pursuant to Chapter 5.04. as a prerequisite to obtaining a permit pursuant to the terms of this Chapter, as required by the State Board of Equalization. Dispensary sales shall be subject to sales tax in a manner required by state law.

## 28.80.050 Imposition of Dispensary Permit Fees.

Every application for a dispensary permit or renewal shall be accompanied by an application fee, in an amount established by resolution of the City Council from time to time. This application or renewal fee shall not include the standard City fees for fingerprinting, photographing, and background check costs and shall be in addition to any other business license fee or permit fee imposed by this Code or other governmental agencies.

5

**28.80.060 Limitations on the Permitted Location of a Dispensary.**

**A. Permissible Zoning for Dispensaries.** A dispensary may only be located within the C-2 or C-M zoned areas of the City as so designated in the General Plan, Title 28 of the Municipal Code, and City Zoning map provided, however, that dispensaries may also be located on parcels situated as follows:

1. any parcel fronting on State Street between Calle Laureles and the westerly boundary of the City at the intersection State Street and Calle Real;

2. any parcel fronting on Milpas between Canon Perdido Street and Carpinteria Street;

3. any C-P zoned parcel fronting on Cliff Drive within 1000 feet of the intersection of Cliff Drive and Meigs Road;

**B. Storefront Locations.** A dispensary shall only be located in a visible store-front type location which provides good public views of the dispensary entrance, its windows, and the entrance to the dispensary premises from a public street.

**C. Areas and Zones Where Dispensaries Not Permitted.** Notwithstanding subparagraph (A) above, a dispensary shall not be allowed or permitted in the following locations or zones:

1. On a parcel located within 500 feet of a school or a park; or

2. On a parcel located within 500 feet of a permitted dispensary; or

3. On a parcel fronting on State Street between Cabrillo Boulevard and Arrellaga Street; or

4. On a parcel zoned R-O or zoned for residential use.

**D. Locational Measurements.** The distance between a dispensary and above-listed uses shall be made in a straight line from any parcel line of the real property on which the dispensary is located to the parcel line the real property on which the facility, building, or structure, or portion of the building or structure, in which the above listed use occurs or is located.

6

**EXHIBIT A**
Pg. 6 of 18

**28.80.070 Operating Requirements for Dispensaries.**

Dispensary operations shall permitted and maintained only in compliance with the following day-to-day operational standards:

**A. Criminal History.** A dispensary permit applicant, his or her agent or employees, volunteer workers, or any person exercising managerial authority over a dispensary on behalf of the applicant shall not have been convicted of a felony or be on probation or parole for the sale or distribution of a controlled substance.

**B. Minors.** It is unlawful for any dispensary permittee, operator, or other person in charge of any dispensary to employ any person who is not at least 18 years of age. Persons under the age of 18 shall not be allowed on the premises of a dispensary unless they are a qualified patient or a primary caregiver, and they are in the presence of their parent or guardian. The entrance to a dispensary shall be clearly and legibly posted with a notice indicating that person under the age of 18 are precluded from entering the premises unless they are a qualified patient or a primary caregiver, and they are in the presence of their parent or guardian.

**C. Dispensary Size and Access.** The following dispensary and access restrictions shall apply to all dispensaries permitted by the Chapter:

1. A dispensary shall not be enlarged in size (i.e., increased floor area) without a prior approval from the Staff Hearing Officer amending the existing dispensary permit pursuant to the requirements of this Chapter.

2. The entrance area of the dispensary building shall be strictly controlled; A viewer or video camera shall be installed in the door that allows maximum angle of view of the exterior entrance.

3. Dispensary personnel shall be responsible for monitoring the real property of the dispensary site activity (including the adjacent public sidewalk and rights-of-way) for the purposes of controlling loitering.

4. Only dispensary staff, primary caregivers, qualified patients and persons with bona fide purposes for visiting the site shall be permitted within a dispensary.

7

**EXHIBIT A**

Pg. 7 of 18

5. Potential patients or caregivers shall not visit a dispensary without first having obtained a valid written recommendation from their physician recommending use of medical cannabis.

6. Only a primary caregiver and qualified patient shall be permitted in the designated dispensing area along with dispensary personnel.

7. Restrooms shall remain locked and under the control of Dispensary management at all times.

**F. Dispensing Operations.** The following restrictions shall apply to all dispensing operations by a dispensary:

1. A dispensary shall only dispense to qualified patients or a primary caregivers with a currently valid physicians approval or recommendation in compliance with the criteria in California Health and Safety Code Section 11362.5 et seq.. Dispensaries shall require such persons to provide valid official identification, such as a Department of Motor Vehicles driver's license or State Identification Card.

2. Prior to dispensing medical cannabis, the dispensary shall obtain a verification from the recommending physician's office personnel that the individual requesting medical cannabis is or remains a qualified patient pursuant to state Health & Safety Code Section 11362.5.

3. A dispensary shall not have a physician on-site to evaluate patients and provide a recommendation or prescription for the use of medical cannabis.

**G. Consumption Restrictions.** The following medical marijuana consumption restrictions shall apply to all permitted dispensaries:

1. Cannabis shall not be consumed by patients on the premises of the dispensary.

The term "premises" includes the actual building, as well as any accessory structures, parking lot or parking areas, or other surroundings within 200 feet of the dispensary's entrance. Dispensary employees who are qualified patients may consume cannabis within the enclosed building area of the premises, provided such consumption occurs only via oral consumption (i.e., eating only) but not by means of smoking or vaporization.

**EXHIBIT A**

Pg. 8 of 18

2.   Dispensary operations shall not result in illegal re-
distribution of medical cannabis obtained from the
dispensary, or use or distribution in any manner which
violates state law.

**H. Retail Sales of Other Items by a Dispensary.** The retail sales
of dispensary related or marijuana use items may be allowed
under the following circumstances:

1.   With the approval of the Staff Hearing Officer, a
dispensary may conduct or engage in the commercial sale of
specific products, goods, or services in addition to the
provision of medical cannabis on terms and conditions
consistent with this chapter and applicable law.

2. No dispensary shall sell or display any drug
paraphernalia or any implement that may be used to
administer medical cannabis.

3.   A dispensary shall meet all the operating criteria for
the dispensing of medical cannabis as is required pursuant
to California Health and Safety Code Section 11362.5 et
seq.

**I.   Operating Plans.** In connection with a permit application
under this Chapter, the applicant shall provide, as part of the
permit application, a detailed Operations Plan and, upon
issuance of the dispensary permit, shall operate the dispensary
in accordance with the Operations Plan as such plan is approved
by the Staff Hearing Officer:

**1. Floor Plan.** A dispensary shall have a lobby waiting area
at the entrance to the dispensary to receive clients, and a
separate and secure designated area for dispensing medical
cannabis to qualified patients or designated caregivers.
The primary entrance shall be located and maintained clear
of barriers, landscaping and similar obstructions so that
it is clearly visible from public streets, sidewalks or
site driveways.

**2. Storage.** A dispensary shall have suitable locked storage
on premises, identified and approved as a part of the
security plan, for after-hours storage of medical cannabis.

**3. Security Plans.** A dispensary shall provide adequate
security on the premises, in accordance with a security
plan approved by the Chief of Police and as reviewed by the

9

Staff Hearing Officer, including provisions for adequate lighting and alarms, in order to insure the safety of persons and to protect the premises from theft.

5. **Security Cameras.** Security surveillance cameras shall be installed to monitor the main entrance and exterior of the premises to discourage and to report loitering, crime, illegal or nuisance activities. Security video shall be maintained for a period of not less than 72 hours.

6. **Alarm System.** Professionally monitored robbery alarm and burglary alarm systems shall be installed and maintained in good working condition within the dispensary at all times.

7. **Emergency Contact.** A dispensary shall provide the Chief of Police with the name, cell phone number, and facsimile number of an on-site community relations staff person to whom the City may provide notice of any operating problems associated with the dispensary.

J. **Dispensary Signage and Notices.**

1. A notice shall be clearly and legibly posted in the dispensary indicating that smoking, ingesting or consuming cannabis on the premises or in the vicinity of the dispensary is prohibited.

2. Signs on the premises shall not obstruct the entrance or windows.

3. Address identification shall comply with Fire Department illuminated address signs requirements.

4. Business identification signage shall comply with the City's Sign Ordinance (SBMC Chapter 22.70) and be limited to that needed for identification only, consisting of a single window sign or wall sign that shall not exceed six square feet in area or 10 percent of the window area, whichever is less.

K. **Employee Records.** Each owner or operator of a dispensary shall maintain a current register of the names of all volunteers and employees currently working at or employed by the dispensary, and shall disclose such registration for inspection by any City officer or official but only for the purposes of determining compliance with the requirements of this chapter.

**EXHIBIT A**
Pg. 10 of 18

**L. Patient Records.** A dispensary shall maintain confidential health care records of all patients and primary caregivers using only the identification card number issued by the county, or its agent, pursuant to California Health and Safety Code Section 11362.71 et seq., as a protection of the confidentiality of the cardholders, or a copy of the written recommendation from a physician or doctor of osteopathy stating the need for medical cannabis under state Health & Safety Code Section 11362.5.

**M. Staff Training.** Dispensary staff shall receive appropriate training for their intended duties to ensure understanding of rules and procedures regarding dispensing in compliance with state and local law, and properly trained or professionally-hired security personnel.

**N. . Site Management.**

1. The operator of the establishment shall take all reasonable steps to discourage and correct objectionable conditions that constitute a nuisance in parking areas, sidewalks, alleys and areas surrounding the premises and adjacent properties during business hours if directly related to the patrons of the subject dispensary.

2. The operator shall take all reasonable steps to reduce loitering in public areas, sidewalks, alleys and areas surrounding the premises and adjacent properties during business hours.

3. The operator shall provide patients with a list of the rules and regulations governing medical cannabis use and consumption within the City and recommendations on sensible cannabis etiquette.

**O. Trash, Litter, Graffiti.**

1. The operator shall clear the sidewalks adjoining the premises plus 10 feet beyond property lines along the street as well as any parking lots under the control of the operator as needed to control litter, debris and trash.

2. The operator shall remove all graffiti from the premises and parking lots under the control of the operator within 72 hours of its application.

11

**EXHIBIT A**

Pg. 11 of 18

**P. Compliance with Other Requirements.** The dispensary operator shall comply with all provisions of all local, state or federal laws, regulations or orders, as well as any condition imposed on any permits issued pursuant to applicable laws, regulations or orders.

**Q. Display of Permit.** Every dispensary shall display at all times during business hours the permit issued pursuant to the provisions of this chapter for such dispensary in a conspicuous place so that the same may be readily seen by all persons entering the dispensary.

**R. Alcoholic Beverages.** No dispensary shall hold or maintain a license from the State Division of Alcoholic Beverage Control for the sale of alcoholic beverages, or operate a business on the premises that sells alcoholic beverages. No alcoholic beverages shall be allowed or consumed on the premises.

**S.  Parking Requirements.** Dispensaries shall be considered office uses relative to the parking requirements imposed by Section 28.90.100(I).

**28.80.080 Dispensary Permit Application – Preparation and Filing.**

**A.  Application Filing.** A complete Performance Standard Permit use permit application submittal packet shall be submitted including all necessary fees and all other information and materials required by the City and this chapter. All applications for permits shall be filed with the Community Development Department, using forms provided by the City, and accompanied by the applicable filing fee. It is the responsibility of the applicant to provide information required for approval of the permit. The application shall be made under penalty of perjury.

**B.  Eligibility for Filing.** Applications may only be filed by the owner of the subject property, or by a person with a lease signed by the owner or duly authorized agent of the owner allowing them the right to occupy the property for the intended use.

**C.  Filing Date.** The filing date of any application shall be the date when the City receives the last submission of information or materials required in compliance with the submittal requirements specified herein.

12

**EXHIBIT A**

**D.  Effect of Incomplete Filing.** Upon notification that an application submittal is incomplete, the applicant shall be granted an extension of time to submit all materials required to complete the application within 30 days. If the application remains incomplete in excess of 30 days the application shall be deemed withdrawn and new application submittal shall be required in order to proceed with the subject request. The time period for granting or denying a permit shall be stayed during the period in which the applicant is granted an extension of time.

**E.  Effect of Other Permits or Licenses.** The fact that an applicant possesses other types of state or City permits or licenses does not exempt the applicant from the requirement of obtaining a dispensary permit.

**28.80.090 Criteria for Review of Dispensary Applications by Staff Hearing Officer.**

**A. Decision on Application.** Upon an application for a Dispensary permit being deemed complete, the Staff Hearing Officer, or the Planning Commission on appeal of a decision of the Staff Hearing Officer, shall either issue a Dispensary permit, issue a Dispensary permit with conditions in accordance with this chapter, or deny a Dispensary permit.

**B. Criteria for Issuance.** The Staff Hearing Officer, or the Planning Commission on appeal, shall consider the following criteria in determining whether to grant or deny a dispensary permit:

> 1.  That the dispensary permit is consistent with the intent of the state Health & Safety Code for providing medical marijuana to qualified patients and primary caregivers and the provisions of this Chapter and the Municipal Code, including the application submittal and operating requirements herein.

> 2.  That the proposed location of the Dispensary is not identified by the City Chief of Police as an area of high crime activity (e.g., based upon crime reporting district/statistics as maintained by the Police Department).

> 3.  For those applicants operating other Dispensaries within the City, that there have not been significant numbers of calls for police service, crimes or arrests in the area or to the applicant's existing dispensary location.

13

**EXHIBIT A**

Pg. 13 of 18

4.  That all required application fees have been paid and reporting requirements have been satisfied in a timely manner.

5.  That issuance of a dispensary permit for the dispensary size requested is justified to meet needs of community.

6.  That issuance of the dispensary permit would serve needs of City residents within a proximity to this location.

7. That the location is not prohibited by the provisions of this chapter or any local or state law, statute, rule or regulation and no significant nuisance issues or problems are anticipated or resulted and that compliance with other applicable requirements of the City's Zoning Ordinance will be accomplished.

8.  That the site plan, floor plan, and security plan have incorporated features necessary to assist in reducing potential crime-related problems and as specified in the operating requirements section. These features may include, but are not limited to, security on-site; procedure for allowing entry; openness to surveillance and control of the premises; the perimeter, and surrounding properties; reduction of opportunities for congregating and obstructing public ways and neighboring property; illumination of exterior areas; and limiting furnishings and features that encourage loitering and nuisance behavior.

9.  That all reasonable measures have been incorporated into the security plan or consistently taken to successfully control the establishment's patrons' conduct resulting in disturbances, vandalism, crowd control inside or outside the premises, traffic control problems, cannabis use in public, or creation of a public or private nuisance, or interference of the operation of another business.

10.  That the dispensary would not adversely affect the health, peace, or safety of persons living or working in the surrounding area, overly burden a specific neighborhood, or contribute to a public nuisance; or that the dispensary will generally not result in repeated nuisance activities including disturbances of the peace, illegal drug activity, cannabis use in public, harassment of passerby, excessive littering, excessive loitering,

14

**EXHIBIT A**

Pg. 14 of 18

illegal parking, excessive loud noises, especially late at night or early in the morning hours, lewd conduct, or police detentions or arrests.

11.   That any provision of the Municipal Code or condition imposed by a City issued permit, or any provision of any other local, or state law, regulation, or order, or any condition imposed by permits issued in compliance with those laws will not be violated.

12.   That the applicant has not knowingly made a false statement of material fact or has knowingly omitted to state a material fact in the application for a permit.

13.   That the applicant has not engaged in unlawful, fraudulent, unfair, or deceptive business acts or practices with respect to the operation of another business within the City.

**28.80.100 Appeal from Staff Hearing Officer Determination.**

**A.   Appeal to the Planning Commission.** An applicant or any interested party who disagrees with the Staff Hearing Officer's decision to issue, issue with conditions, or to deny a dispensary permit may appeal such decision to the City Planning Commission by filing an appeal pursuant to the requirements of subparagraph (B) of Section 28.05.020 of the Municipal Code.

**B. Notice of Planning Commission Appeal Hearing.** Upon the filing of an appeal pursuant to subparagraph (A) above, the Community Development Director shall provide public notice in accordance with the notice provisions of SBMC Section 28.87.380.

**C. Planning Commission Appeal.** Notwithstanding subparagraph (C) of Section 28.05.020, Section 28.87.360, and Section 1.30.050, a decision by the Planning Commission on appeal of the Staff Hearing Officer pursuant to this Chapter shall be final and may not be appealed to the City Council.

**28.80.110 Suspension and Revocation by Planning Commission.**

**A. Authority to Suspend or Revoke a Dispensary Permit.** Consistent with Section 28.87.360, any dispensary permit issued under the terms of this chapter may be suspended or revoked by the Planning Commission when it shall appear to the Commission that the permittee has violated any of the requirements of this

15

**EXHIBIT A**

Pg. 15 of 18

chapter or the dispensary is operated in a manner that violates the provisions of this chapter, including the operational requirements of this Chapter, or in a manner which conflicts with state law.

**B. Suspension or Revocation – Written Notice.** Except as otherwise provided in this chapter, no permit shall be revoked or suspended by virtue of this chapter until written notice of the intent to consider revocation or suspension of the permit has been served upon the person to whom the permit was granted at least ten (10) days prior to the date set for such review hearing and the reasons for the proposed suspension or revocation have been provided to the permittee in writing. Such notice shall contain a brief statement of the grounds to be relied upon for revoking or suspending such permit. Notice may be given either by personal delivery to the permittee, or by depositing such notice in the U.S. mail in a sealed envelope, postage prepaid, (via regular mail and return receipt requested), addressed to the person to be notified at his or her address as it appears in his or her application for a dispensary permit.

**C. Appeal of Planning Commission Decision.** Notwithstanding subparagraph (C) of Section 28.05.020, Section 28.87.360, and Section 1.30.050, a decision by the Planning Commission to suspend or revoke a permit issued pursuant to this Chapter shall be final and may not be appealed to the City Council.

## 28.80.120 Transfer of Dispensary Permits.

**A. Permit – Site Specific.** A permittee shall not operate a dispensary under the authority of a dispensary permit at any place other than the address of the dispensary stated in the application for the permit. All dispensary permits issued by the City pursuant to this chapter shall be non-transferable.

**B. Transfer of a Permitted Dispensary.** A permittee shall not transfer ownership or control of a dispensary or attempt to transfer a dispensary permit to another person unless and until the transferee obtains an amendment to the permit from the Staff Hearing Officer pursuant to the permitting requirements of this chapter stating that the transferee is now the permittee. Such an amendment may be obtained only if the transferee files an application with the Community Development Department in accordance with this all provisions of this chapter accompanied by the required application fee.

16

**EXHIBIT A**
Pg. 16 of 18

**C. Request for Transfer with a Revocation or Suspension Pending.**
No dispensary permit may be transferred (and no permission for a
transfer may be issued) when the Community Development
Department has notified in writing the permittee that the permit
has been or may be suspended or revoked and a notice of such
suspension or revocation has been provided.

**D. Transfer without Permission.** Any attempt to transfer a permit
either directly or indirectly in violation of this section is
declared void, and the permit shall be deemed revoked.

**28.80.130 Medical Marijuana Vending Machines.**

No person shall maintain, use, or operate a vending machine
which dispenses marijuana to a qualified patient or primary
caregiver unless such machine is located within the interior of
a duly permitted dispensary.
**SECTION THREE.** Those Dispensaries which were authorized pursuant
to the Santa Barbara Municipal Code Chapter 28.80 prior to the
date of the adoption of the ordinance enacting this Chapter
shall be deemed pre-existing legal uses of real property upon
which they are situated for a period of three (3) from the date
of the adoption of this Ordinance provided the following
operational conditions are complied with:

  1. the dispensary shall not be relocated nor shall it be
  discontinued for a period of time in excess of thirty (30)
  days without obtaining a dispensary permit pursuant to this
  Chapter;

  2. the dispensary shall comply with all portions of Chapter
  28.80 (as enacted by this Ordinance) except for the
  locational provisions of Section 28.80.060; and

  3. the dispensary shall be subject to the requirements for
  non-conforming uses of SBMC section 28.87.030 until such
  time that they have been permitted under this Ordinance.

Prior to the expiration of the three (3) year non-conforming
period, all medical marijuana dispensaries operating as allowed
dispensaries which pre-date the adoption of this Ordinance shall
either obtain a dispensary permit (as required by and in full
accord with this Ordinance) or shall discontinue such use not
later than the end of the three (3) year amortization period. No
such pre-existing legal dispensary shall be assigned or
otherwise transferred to a new owner or owners, whether
voluntarily or by operation of law, without having obtained a
permit pursuant to this Ordinance.

17

**EXHIBIT A**
Pg. 17 of 18

**SECTION FOUR.** The requirements of this Chapter shall apply to all dispensaries which are not permitted or authorized by the Municipal Code prior to the date of the adoption of the ordinance enacting this chapter.

18

ORDINANCE NO. _____

**AN ORDINANCE OF THE COUNCIL OF THE
CITY OF SANTA BARBARA AMENDING THE
MUNICIPAL CODE BY REVISING CHAPTER
28.80 AND ESTABLISHING REVISED
REGULATIONS AND PROCEDURES FOR
MEDICAL MARIJUANA STOREFRONT
COLLECTIVE DISPENSARIES.**

The City Council of the City of Santa Barbara does ordain as follows:

**SECTION ONE.**  Chapter 28.80 of Title 28 of the Santa Barbara Municipal Code, entitled "Medical Marijuana Dispensaries," is amended to read as follows:

**Section 28.80.010 Purpose and Intent.**

It is the purpose and intent of this Chapter to regulate the storefront distribution of medical marijuana in order to ensure the health, safety, and welfare of the residents of the City of Santa Barbara. The regulations in this Chapter, in compliance with the State Compassionate Use Act of 1996 and the State Medical Marijuana Program Act ("the SB 420 statutes"), are not intended and do not interfere with a patient's right to use medical marijuana as authorized under the Compassionate Use Act or the SB 420 statutes, nor do they criminalize the possession or cultivation of medical marijuana by specifically defined classifications of persons, as authorized under the Compassionate Use Act. Under the Compassionate Use Act of 1996 and the SB 420 statutes, only qualified patients, persons with identification cards, and primary caregivers may legally cultivate medical marijuana collectively and provide it to qualified patients or person with identifications cards. Therefore, medical marijuana collectives within the City which choose to operate storefront dispensary locations must comply with all provisions of the Santa Barbara Municipal Code ("SBMC") for obtaining a permit for the storefront dispensary as well as complying with the Compassionate Use Act, the SB 420 statutes, and all other applicable local and state laws. Nothing in this Chapter purports to permit activities that are otherwise illegal under federal, state, or local laws.

1

**Section 28.80.020 Definitions.**

For the purpose of this Chapter, the following words and phrases shall have the following meanings:

**A. Applicant.** A person who is required to file an application for a Medical Marijuana Storefront Collective Dispensary permit under this Chapter, including an individual owner, managing partner, officer of a corporation, or any other dispensary operator, Management Member, employee, or agent of a Medical Marijuana Storefront Collective Dispensary.

**B. Drug Paraphernalia.** As defined in California Health and Safety Code Section 11014.5, and as may be amended from time to time.

**C. Identification Card.** As defined in California Health and Safety Code Section 11362.71 and as may be amended from time to time.

**D. Management Member.** A Medical Marijuana Collective member with responsibility for the establishment, organization, registration, supervision, or oversight of the operation of a Collective including, but not limited to, members who perform the functions of president, vice president, director, operating officer, financial officer, secretary, treasurer, or manager of the Collective.

**E. Medical Marijuana Storefront Collective Dispensary or Storefront Collective Dispensary.** An incorporated or unincorporated association which is composed of four (4) or more Qualified Patients and their designated Primary Caregivers who associate at a particular location or Property within the City in order to collectively or cooperatively cultivate marijuana for medical purposes and who, acting through Management Members, distribute the collectively cultivated medical marijuana to the members of their Collective at a storefront dispensary located within a non-residential zone of Santa Barbara, all in accordance with the Compassionate Use Act of 1996 (California Health and Safety Code sections 11362.5) and Health and Safety Code section 11362.7 through 11362.9. For the purposes of this Chapter, the term "Medical Marijuana cooperative" (or "cooperative") shall have the same meaning as a "Medical Marijuana collective" (or a "collective") and the term "cooperative" shall have the definition and formation requirements established for it by state law.

2

**EXHIBIT B**

Pg. 2 of 25

A Storefront Collective Dispensary shall not include the dispensing of medical marijuana by primary caregivers to qualified patients in the following locations so long as the location and operation of the clinic, health care facility, hospice, or residential care facility is otherwise permitted by the Municipal Code and operated in the manner required by applicable state laws:

  1. a clinic licensed pursuant to Chapter 1 of Division 2 of the state Health and Safety Code,

  2. a health care facility licensed pursuant to Chapter Two of Division 2 of the state Health and Safety Code,

  3. a residential care facility for persons with chronic life-threatening illness licensed pursuant to Chapter 3.01 of Division 2 of the state Health and Safety Code,

  4. residential care facility for the elderly licensed pursuant to Chapter 3.2 of Division 2 of the state Health and Safety Code,

  5. a residential hospice, or a home health agency licensed pursuant to Chapter 8 of Division 2 of the state Health and Safety Code,

provided that any such clinic, health care facility, hospice or residential care facility also fully complies with applicable laws including, but not limited to, the Compassionate Use Act of 1996 and the SB 420 statutes.

**F. Permittee.** The Management Member or Members identified to the City by an Applicant as such and to whom a City Storefront Collective Dispensary permit has been issued and someone who also qualifies as a primary caregiver.

**G. Person with an Identification Card.** A person as described in California Health and Safety Code Section 11362.71 through 11362.76, and as amended from time to time.

**H. Physician.** A licensed medical doctors including a doctor of osteopathic medicine as defined in the California Business and Professions Code.

**EXHIBIT B**
Pg. 3 of 25

**I. Primary Caregiver.** A person as defined and described in either subdivision (d) or (e) of California Health and Safety Code Section 11362.7 as it may be amended from time to time.

**J. Property.** The location or locations within the City at which Medical Marijuana Collective members and Management members associate to collectively or cooperatively cultivate or to distribute Medical Marijuana exclusively to their Collective members.

**K. Qualified Patient.** A person as defined and described in California Health and Safety Code Section 11362.5 et seq., and as it may be amended from time to time. For the purposes of this Chapter, a Qualified Patient shall also include a Person with an Identification Card.

**L. School.** An institution of learning for minors, whether public or private, offering a regular course of instruction required by the California Education Code. This definition includes an elementary school, middle, or junior high school, senior high school, or any special institution of education for persons under the age of eighteen years, whether public or private.

**M. Reasonable Compensation.** Compensation commensurate with reasonable wages and benefits paid to employees of federal Internal Revenue Code qualified non-profit organizations which employees have similar job descriptions and duties, as well as a comparable required level of experience and education, similar prior earnings or wage history, and number of hours typically worked per week. The payment of a bonus shall not be considered reasonable compensation.

**Section 28.80.030    Storefront Collective Dispensary – Permit Required to Operate.**

It shall be unlawful for any person to engage in, to conduct or carry on (or to permit to be engaged in, conducted or carried on) in or upon his or her Property located within the City, the operation of a Storefront Collective Dispensary unless an Applicant has first obtained and continues to maintain in full force and effect a valid Storefront Collective Dispensary Permit issued by the City for that Property pursuant to this Chapter.

4

**EXHIBIT B**
Pg. 4 of 25

**Section 28.80.040    Imposition of Medical Marijuana Storefront Collective Dispensary Permit Fees.**

Every application for a Storefront Collective Dispensary permit shall be accompanied by an application fee (in an amount established by resolution of the City Council) at a amount calculated to recover the City's full cost of reviewing and issuing the Storefront Collective Dispensary permit) and the filing of a complete required application pursuant to this Chapter. The application fee shall not include the standard City fees for fingerprinting, photographing, and background check costs and shall be in addition to any other business license fee or permit fee imposed by this Code or other governmental agencies.

**Section 28.80.050    Limitations on the Permitted Location of a Storefront Collective Dispensary.**

**A. Permissible Zoning for Storefront Collective Dispensaries.** Storefront Collectives Dispensaries may only be permitted and located on parcels within the City which are zoned for commercial uses and on those street block faces listed in the exhibit to this Chapter designated as "Medical Marijuana Storefront Collectives Dispensaries – Allowed Locations" dated as of June 22, 2010.

**B.    Storefront Locations.** Except for those locations shown as allowed within the West Pueblo Medical Area on the exhibit attached to this Chapter which have been specifically approved by the Staff Hearing Officer as non-storefront locations pursuant to this Chapter, a Storefront Collective Dispensary shall only be located in a visible store-front type ground-floor location which provides good public views of the Dispensary entrance, its windows, and the entrance to the Storefront Collective Dispensary premises from a public street.

**C. Commercial Areas and Zones Where Storefront Collective Dispensaries Not Permitted.** Notwithstanding subparagraph (A) above, a Storefront Collective Dispensary shall not be allowed or permitted on a parcel located within 1000 feet of another permitted or allowed Storefront Collective Dispensary.

**D.    Locational Measurements.** The distance between a Storefront Collective Dispensary and above-listed restrictions shall be calculated as a straight line from any parcel line of the Property on which the Storefront Collective Dispensary is located to the parcel line the real property on which the

**EXHIBIT B**

Pg. 5 of 25

facility, building, or structure, or portion of the building or structure, in which the above-listed use occurs or is located.

For the purposes of determining compliance with the locational restrictions imposed by this section, the permissibility of a proposed Storefront Collective Dispensary location shall be determined by City staff based on the date the permit application has been deemed complete by the City with the earliest complete applications deemed to have priority over any subsequent Storefront Collective Dispensary application for any particular permissible location.

**E. One Collective Dispensary for Each Area of the City.** No more than one Storefront Collective Dispensary may open or operate in each of the areas of the City designated as allowed or permissible Collective Dispensary location areas in the exhibit attached to this Chapter except for those areas which, at the time of the adoption of the ordinance amending this Chapter, already have more than one Storefront Collective Dispensary on a legal non-conforming basis and which are allowed to continue to operate on a legal non-conforming basis under Section Two of the Ordinance amending this Chapter – in which case a legal non-conforming Dispensary may be allowed to continue to operate in such an area.

**F. Maximum Number of Medical Marijuana Storefront Collective Dispensaries Allowed Permits.** Notwithstanding the above, the City may not issue a total of more than three (3) Collective Dispensary permits at any one time and, subject to the amortization allowance period contained within the uncodified portions of the City ordinance adopting amendments to this chapter, no more than three (3) permitted or allowed Collective Dispensaries may legally operate within the City, including specifically those dispensaries which are open and operating in a legal nonconforming manner at the time of the adoption of the ordinance amending this Chapter.

**Section 28.80.060    Storefront Collective Dispensary – Permit Application Requirements.**

**A. Application Filing.** A complete Performance Standard Permit application submittal packet is required for a Storefront Collective Dispensary permit and it shall be submitted (along with all required fees) and all other information and materials required by this Chapter in order to file a complete application for a Storefront Collective Dispensary Permit for a specific Property. All applications for Storefront Collective Dispensary permits shall be filed with the Community Development Department

6

**EXHIBIT B**
Pg. 6 of 25

using forms provided by the City. It is the responsibility of the Applicant to provide all of the information required for approval of the permit. The application shall signed by a Management Member under penalty of perjury.

**B. Eligibility for Filing.** If a Storefront Collective Dispensary permit application is filed by a non-owner of the Property, it shall also be accompanied by a written affirmation from the Property owner expressly allowing the Applicant and Management Member to apply for the Permit and acknowledging the Applicant's right to use and occupy the Property for the intended Medical Marijuana Storefront Collective Dispensary use.

**C. Filing Date.** The filing date of any application shall be the date when the City officially receives the last submission of information or materials required in compliance with the submittal requirements specified herein and the application has been deemed complete in writing by the City.

**D. Effect of Incomplete Filing.** Upon notification that an application submittal is incomplete, the Applicant shall be granted an extension of time to submit all materials required to complete the application within thirty (30) days. If the application remains incomplete in excess of thirty (30) days the application shall be deemed withdrawn and new application submittal shall be required in order to proceed with the subject request.

**E. Filing Requirements – Proposed Operational Plan.** In connection with a permit application, an Applicant for a Storefront Collective Dispensary permit shall provide a detailed "Operations Plan" for the proposed Dispensary and, upon issuance of the Storefront Collective Dispensary permit by the City, shall operate the Storefront Collective Dispensary in accordance with the Operations Plan, as approved, at all times. A required Operations Plan shall consist of at least the following:

   **1. Site Plan and Floor Plan.** A Storefront Collective Dispensary application shall have a proposed site plan and floor plan which shows a lobby waiting area at the entrance to the Storefront Collective Dispensary used to receive qualified patients or primary caregivers, and a separate and secure designated area for dispensing medical marijuana to qualified patients or designated primary caregivers members of the Collective. The primary entrance shall be located and maintained clear of barriers, landscaping and similar obstructions so that it is clearly visible from public streets, sidewalks or site driveways.

7

**EXHIBIT B**
Pg. 7 of 25

**2. Storage.** A Storefront Collective Dispensary shall have suitable locked storage on the premises, identified and approved as a part of the operational security plan for the after-hours storage of medical marijuana.

**3. Security Plans.** A Storefront Collective Dispensary shall provide a plan to provide adequate security on the premises of the Dispensary which shall be maintained in accordance with the Dispensary security plan approved by the Chief of Police and as reviewed by the Staff Hearing Officer. This plan shall include provisions for adequate lighting and alarms in order to insure the safety of persons and to protect the premises from theft. All security guards used by dispensaries shall be licensed and employed by a state licensed private-party operator security company retained by the Storefront Collective Dispensary and each security guard used shall possess a valid state Department of Consumer Affairs "Security Guard Card" at all times. Security guards shall not possess or carry firearms or tazers while working at a Collective Dispensary.

**4. Security Cameras.** The Security Plan shall show how the Property will be monitored at all times by closed-circuit television for security purposes. The camera and recording system must be of adequate quality, color rendition and resolution to allow the ready identification of an individual on or adjacent to the Property. The recordings shall be maintained at the Property for a period of not less than thirty (30) days.

**5. Alarm Systems.** The Operations Plan shall provide that professionally monitored burglary and fire alarm systems shall be installed and such systems shall be maintained in good working condition within the Storefront Collective Dispensary at all times.

**6. Emergency Contact.** A Operations Plan shall provide the Chief of Police with the name, cell phone number, and facsimile number of a Management Member to act as an on-site community relations staff person to whom the City may provide notice of any operating problems associated with the Storefront Collective Dispensary.

**7. Public Nuisance.** The Operations Plan shall provide for the Management Members of the Collective Dispensary to take all reasonable steps to discourage and correct objectionable conditions that constitute a public or

**EXHIBIT B**

Pg. 8 of 25

private nuisance in parking areas, sidewalks, alleys and areas surrounding the premises and adjacent properties during business hours if directly related to the patrons of the subject Storefront Collective Dispensary.

**8. Loitering Adjacent to a Dispensary.** The Operations Plan shall provide that the Management Members will take all reasonable steps to reduce loitering by Collective members in public areas, sidewalks, alleys and areas surrounding the Property and adjacent premises during the business hours of the Storefront Collective Dispensary.

**9. Trash, Litter, Graffiti.** The Operations Plan shall provide that the Management Members will keep area which includes the sidewalks adjoining the Dispensary plus ten (10) feet beyond property lines (as well as any parking lots under the control of the Dispensary) clear of litter, debris, and trash.

**10. Removal of Graffiti.** The Operations Plan shall provide a method for the Management Members to promptly remove all graffiti from the Property and parking lots under the control of the Collective within 72 hours of its appearance.

**F. Filing Requirements – Information Regarding Storefront Collective Dispensary Management.** A Storefront Collective Dispensary Applicant shall also provide the following Management Member and Collective information as part of a Storefront Collective Dispensary application:

**1.** The name, address, telephone number, title and function(s) of each Management Member;

**2.** For each Management Member, a fully legible copy of one (1) valid government issued form of photo identification, such as a state driver's license or identification card. Acceptable forms of government issued identification include, but are not limited to, driver's license or photo identity cards issued by the state Department of Motor Vehicles (or equivalent) that meet REAL ID benchmarks, a passport issued by the United States or by a foreign government, U.S. Military ID cards (active duty or retired military and their dependents) or a Permanent Resident card.

**3.** Written confirmation as to whether the Collective or a Management Member of the Collective previously operated in

9

**EXHIBIT B**

Pg. 9 of 25

this or any other county, city or state under a similar license or permit, and whether the Collective or Management Member Applicant ever had such a license or permit revoked or suspended by and the reason(s) therefore.

**4.** If the Collective is a corporation or a cooperative, a certified copy of the Collective's Secretary of State Articles of Incorporation, Certificate(s) of Amendment, Statement(s) of Information and a copy of the Collective's By laws;

**5.** If the Collective is an unincorporated association, a copy of the articles of association;

**6.** The name and address of the Applicant's or Collective's current designated Agent for Service of Process;

**7.** A statement dated and signed by each Management Member, of the Collective, under penalty of perjury, that the Management Member has personal knowledge of the information contained in the Dispensary Application, that the information contained therein is true and correct, and that the application has been completed under the supervision of the identified Management Member(s);

**8.** Whether Edible Medical Marijuana products will be prepared and distributed at the proposed Dispensary Property;

**9.** The Property location or locations where any and all Medical Marijuana will be collectively cultivated by the Collective members and Management Members;

**Section 28.80.070    Criteria for Review of Collective Dispensary Applications by the City Staff Hearing Officer.**

**A. Decision on Application.** Upon an application for a Storefront Collective Dispensary permit being deemed complete, the Staff Hearing Officer shall either issue a Storefront Collective Dispensary permit, issue a Storefront Collective Dispensary permit with conditions in accordance with this Chapter, or deny a Storefront Collective Dispensary permit.

**B. Criteria for Issuance.** The Staff Hearing Officer, or the City Council on appeal, shall consider the following criteria in

10

**EXHIBIT B**
Pg. 10 of 25

determining whether to grant or deny a Medical Marijuana
Storefront Collective Dispensary permit:

1. That the Collective Dispensary permit and the operation
of the proposed Dispensary will be consistent with the
intent of the Compassionate Use Act of 1996 and the SB 420
Statutes for providing medical marijuana to qualified
patients and primary caregivers and the provisions of this
Chapter and with the Municipal Code, including the
application submittal and operating requirements herein.

2. That the proposed location of the Storefront Collective
Dispensary is not identified by the City Chief of Police as
an area of increased or high crime activity.

3. For those applicants who have operated other Storefront
Collective Dispensaries within the City, that there have
not been significant numbers of calls for police service,
crimes or arrests in the area of the applicants former
location.

4. That issuance of a Collective Dispensary permit for the
Collective Dispensary size requested is appropriate to meet
needs of community for access to medical marijuana.

5. That issuance of the Collective Dispensary permit would
serve needs of City residents within a proximity to this
location.

6. That the location is not prohibited by the provisions of
this Chapter or any local or state law, statute, rule, or
regulation and no significant nuisance issues or problems
are likely or anticipated and that compliance with other
applicable requirements of the City's Zoning Ordinance will
be accomplished.

7. That the Dispensary's Operations Plan, its site plan,
its floor plan, the proposed hours of operation, and a
security plan have incorporated features necessary to
assist in reducing potential crime-related problems and as
specified in the operating requirements section. These
features may include, but are not limited to, security on-
site; procedure for allowing entry; openness to
surveillance and control of the premises; the perimeter,
and surrounding properties; reduction of opportunities for
congregating and obstructing public ways and neighboring
property; illumination of exterior areas; and limiting

**EXHIBIT B**

Pg. 11 of 25

furnishings and features that encourage loitering and nuisance behavior.

**8.** That all reasonable measures have been incorporated into the Dispensary security plan or consistently taken to successfully control the establishment's patrons' conduct resulting in disturbances, vandalism, crowd control inside or outside the premises, traffic control problems, marijuana use in public, or creation of a public or private nuisance, or interference of the operation of another business.

**9.** That the Storefront Collective Dispensary is likely to have no potentially adverse affect on the health, peace, or safety of persons living or working in the surrounding area, overly burden a specific neighborhood, or contribute to a public nuisance and that the Dispensary will generally not result in repeated nuisance activities including disturbances of the peace, illegal drug activity, marijuana use in public, harassment of passerby, excessive littering, excessive loitering, illegal parking, excessive loud noises, especially late at night or early in the morning hours, lewd conduct, or police detentions or arrests.

**10.** That any provision of the Municipal Code or condition imposed by a City issued permit, or any provision of any other local, or state law, regulation, or order, or any condition imposed by permits issued in compliance with those laws will not be violated.

**11.** That the Applicant has not made a false statement of material fact or has omitted to state a material fact in the application for a permit.

**12.** That the Applicant has not engaged in unlawful, fraudulent, unfair, or deceptive business acts or practices with respect to the operation of another business within the City.

**Section 28.80.080    On-Going Management Requirements for Medical Marijuana Storefront Collective Dispensaries.**

Storefront Collective Dispensary operations shall be maintained and managed on a day-to-day basis only in compliance with the following operational standards and requirements:

**EXHIBIT B**

Pg. 12 of 25

**A. Criminal History.** A Storefront Collective Dispensary permittee, including all Management Members of that permittee, shall not have been convicted of a felony or be on probation or parole for the sale or distribution of a controlled substance and shall remain free of such a conviction or probation during the period of time in which the Storefront Collective Dispensary is being operated.

**B. Minors.** It shall be unlawful for any Storefront Collective Dispensary permittee, a Management Member of the permittee, or any other person effectively in charge of any Storefront Collective Dispensary to employ any person who is not at least 18 years of age. Persons under the age of eighteen (18) years shall not be allowed on the premises of a Medical Marijuana Collective Dispensary unless they are a qualified patient member of the Collective and they are accompanied by a parent or guardian at all times. The entrance to a Storefront Collective Dispensary shall be clearly and legibly posted with a notice indicating that persons under the age of eighteen (18) are precluded from entering the premises unless they are a qualified patient member of the Collective and they are in the presence of their parent or guardian.

**C. Storefront Collective Dispensary Size and Access.** The following access restrictions shall apply to all Storefront Collective Dispensaries permitted by this Chapter:

**1.** A Storefront Collective Dispensary shall not be enlarged in size (i.e., increased floor area) without prior review and approval of the change from the Staff Hearing Officer and an approved amendment to the existing Storefront Collective Dispensary permit pursuant to the requirements of this Chapter.

**2.** An expressly designated Management Member or Members shall be responsible for monitoring the Property of the Storefront Collective Dispensary for any nuisance activity (including the adjacent public sidewalk and rights-of-way) which may occur on the block within which the Storefront Collective Dispensary is operating.

**3.** Only Collective members as primary caregivers or qualified patients shall be permitted within a Storefront Collective Dispensary building for the purposes of cultivating, processing, distributing, or obtaining medical marijuana.

13

**EXHIBIT B**

Pg. 13 of 25

**4.** A qualified patient or a primary caregiver shall not visit a Storefront Collective Dispensary without first having obtained a valid written recommendation from his or her licensed physician recommending the use of medical marijuana or, in the case of a primary caregiver, without first having been expressly designated a primary caregiver to a qualified patient as required by the Compassionate Use Act.

**5.** A qualified patient or primary caregiver may not obtain medical marijuana upon their first in-person visit to a Storefront Collective Dispensary and, instead, may only become a member of the Collective at the first visit to a particular Dispensary. Upon joining the Collective, a registered member of a Collective may obtain medical marijuana as a qualified patient or primary caregiver only after an initial waiting period of 24 hours after their initial in-person visit to the Dispensary for the purposes of joining the Collective.

**6.** Only a primary caregiver and qualified patient members of the Collective Dispensary shall be allowed within the designated marijuana dispensing area of a Storefront Collective Dispensary (as shown on the site plan required by the Application) along with only a necessary Management Members.

**7.** Restrooms with the Storefront Collective Dispensary shall remain locked and under the control of Collective Dispensary Management Members at all times.

**D.  Medical Marijuana Dispensing Operations.** The following medical marijuana distribution restrictions and conditions shall apply to all of the day-to-day medical marijuana dispensing operations which occur within a City permitted Storefront Collective Dispensary:

**1.** A Storefront Collective Dispensary shall only dispense to qualified patients or primary caregivers with a currently valid physicians approval or recommendation in compliance with the criteria of the Compassionate Use Act of 1996 and the SB 420 Statutes to those persons who are registered as active members of that Collective and may do so only during storefront dispensary operating hours of between eight o'clock in the morning (8:00 a.m.) through six o'clock in the evening (6:00 p.m.) Monday through Saturday only. The days and hours of the dispensary's operation shall be posted in a sign located on the street

14

**EXHIBIT B**

Pg. 14 of 25

frontage of the dispensary premises in a manner consistent
with the City's Sign Ordinance. Storefront Collectives
Dispensaries shall require such persons receiving medical
marijuana to provide valid official identification, such as
a Department of Motor Vehicles driver's license or State
Identification Card each time they seek to obtain medical
marijuana.

2.   Prior to dispensing medical marijuana, a Management
Member of the Storefront Collective Dispensary shall obtain
a re-verification from the recommending physician's office
personnel that the individual requesting medical marijuana
is or remains a qualified patient or a primary caregiver.

3.   A Storefront Collective Dispensary shall not have a
physician on-site to evaluate patients and provide a
Compassionate Use Act recommendation for the use of medical
marijuana.

4. Every Storefront Collective Dispensary shall display at
all times during its regular business hours, the permit
issued pursuant to the provisions of this Chapter for such
Collective Dispensary in a conspicuous place so that the
same may be readily seen by all persons entering the
Storefront Collective Dispensary.

5. No Storefront Collective Dispensary shall hold or
maintain a license from the State Division of Alcoholic
Beverage Control for the sale of alcoholic beverages, or
operate a business on the premises of the Dispensary that
sells alcoholic beverages. No alcoholic beverages shall be
allowed or consumed on the premises.

6. Storefront Collective Dispensaries shall be considered
commercial use relative to the parking requirements imposed
by Santa Barbara Municipal Code Section 28.90.100(I).

7. A notice shall be clearly and legibly posted in the
Storefront Collective Dispensary indicating that smoking,
ingesting, or consuming marijuana on the premises or in the
vicinity of the Dispensary is prohibited. Signs on the
premises shall not obstruct the entrance or windows.
Address identification shall comply with Fire Department
illuminated address signs requirements.

8. Business identification signage for Storefront
Collective Dispensaries shall comply with the City's Sign
Ordinance (SBMC Chapter 22.70) and be limited to that

15

**EXHIBIT B**
Pg. 15 of 25

needed for identification only, consisting of a single
window sign or wall sign that shall not exceed six square
feet in area or 10 percent of the window area, whichever is
less.

**E. Dispensary Medical Marijuana On-Site Consumption and Re-
Distribution Restrictions.** The following medical marijuana
consumption restrictions shall apply to all permitted Storefront
Collective Dispensaries:

**1.** Medical marijuana shall not be consumed by qualified
patients on the Property or the premises of the Storefront
Collective Dispensary.

The term "premises" includes the actual building, as well
as any accessory structures, parking lot or parking areas,
or other surroundings within 200 feet of the Collective
Dispensary's entrance. Collective Dispensary management
member employees who are qualified patients may consume
marijuana within the enclosed building area of the
premises, provided such consumption occurs only via oral
consumption (i.e., eating only) but not by means of smoking
or vaporization.

**2.** Storefront Collective Dispensary operations shall not
result in illegal re-distribution or sale of medical
marijuana obtained from the Collective Dispensary, or the
use or distribution in any manner which violates state law.

**F. Retail Sales of Other Items by a Storefront Collective
Dispensary.** The retail sales of related marijuana use items at a
Storefront Collective Dispensary may be allowed only under the
following circumstances:

**1.** With the approval of the Staff Hearing Officer, a
Collective Dispensary may conduct or engage in the
commercial sale of specific products, goods, or services
(except drug paraphernalia) in addition to the provision of
medical marijuana on terms and conditions consistent with
this Chapter and applicable law.

**2.** No Collective Dispensary shall sell or display for sale
any drug paraphernalia or any implement that may be used to
administer medical marijuana.

16

**EXHIBIT B**

Pg. 16 of 25

**G. Storefront Collective Dispensary – Compliance with the Compassionate Use Act of 1996 and SB 420 Statutes.**

**1. State Law Compliance Warning.** Each Collective Dispensary shall have a sign posted in a conspicuous location inside the Storefront Collective Dispensary advising the public of the following:

a. The diversion of marijuana for non-medical purposes is a criminal violation of state law.

b. The use of marijuana may impair a person's ability to drive a motor vehicle or operate heavy machinery.

c. The sale of marijuana and the diversion of marijuana for non-medical purposes are violations of state law.

**2. Not For Profit Operation of the Storefront Collective Dispensary.** No Medical Marijuana Storefront Collective Dispensary shall operate for profit. Cash and in-kind contributions, reimbursements, and reasonable compensation for services provided by Management Members and Collective members toward the Collective's actual expenses for the growth, cultivation, processing, and provision of Medical Marijuana to qualified patients of the Collective shall be allowed provided that such reimbursements are in strict compliance with the applicable provisions of the SB 420 Statutes. All such cash and in-kind reimbursement amounts and items shall be fully and properly documented in the financial and accounting records of the Collective Dispensary in accordance with and as required by the recordkeeping requirements of this Chapter.

**3. Cultivation of Medical Marijuana by the Collective.** The Collective cultivation of medical marijuana shall be limited to the Collective members and Management Members. Cultivation of medical marijuana by the Collective members and the Management Members shall occur exclusively within the boundaries of the counties of Santa Barbara, Ventura, or San Luis Obispo County and only at the real property identified for such cultivation on the approved Storefront Collective Dispensary Permit application.

No cultivation of medical marijuana at any Property where the marijuana will be visible with the un-aided eye from any public or other private property, nor shall cultivated medical marijuana or dried medical marijuana be visible

17

**EXHIBIT B**
Pg. 17 of 25

from the building exterior on the Property. No cultivation shall occur at the Property of the Collective unless the area devoted to the cultivation is secured from public access by means of a locked gate and any other security measures necessary to prevent unauthorized entry.

**4. Distribution of Medical Marijuana within Santa Barbara Only.** Distribution of the medical marijuana collectively cultivated by some Collective members to other Collective members shall occur exclusively within the boundaries of the city of Santa Barbara and only at the real property identified as the permitted Dispensary location on the approved Storefront Collective Dispensary Permit application.

**5. Membership Limited to One Collective.** Membership in a Collective which operates a Storefront Collective Dispensary within the City shall be limited to one Collective per qualified patient or primary caregiver. Each Collective shall also consist only of individuals residing with Santa Barbara County, as the term "principal residence" is defined in the federal Internal Revenue Code.

**J. Maintenance of Appropriate Collective Records Regarding Cultivation and Compliance with the SB 420 Statutes.**

**1. Cultivation Records.** Every permitted Storefront Collective Dispensary shall maintain on-site (i.e., at the Property designated for the operation of the Storefront Collective Dispensary) the medical marijuana cultivation records of the Collective. These records shall be signed under penalty of perjury by each Management Member responsible for the cultivation and shall identify the location or locations within the counties of Santa Barbara, Ventura, or San Luis Obispo at which the Collective's medical marijuana is being cultivated. Such records shall also record the total number of marijuana plants cultivated or stored at each cultivation location. The Storefront Collective Dispensary shall also maintain an inventory record documenting the dates and amounts of medical marijuana cultivated or stored at the Dispensary Property, if any, as well as the daily amounts of Medical Marijuana distributed from the permitted Dispensary.

**2. Membership Records.** Every Storefront Collective Dispensary shall maintain full and complete records of the following membership information: a. the full name, date of birth, residential address, and telephone number(s) of each

18

**EXHIBIT B**

Pg. 18 of 25

Collective member and Management Member, b. the date each Collective member and Management Member joined the Collective, 3. the exact nature of each Collective member's and Management Member's participation in the Collective, and 4. the current status of each member and Management Member as a Qualified Patient or Primary Caregiver.

**3. Financial Records.** The Collective Dispensary shall also maintain a written accounting record or ledger of all cash, receipts, credit card transactions, reimbursements, (including any in-kind contributions), and any and all reasonable compensation for services provided by the Management Members or other members of the Collective, as well as records of all operational expenditures and costs incurred by the Storefront Collective Dispensary in accordance with generally accepted accounting practices and standards typically applicable to business records.

**4. Dispensary Record Retention Period.** The records required above by subparagraphs (1),(2), and (3) of this subsection shall be maintained by the Medical Marijuana Collective Dispensary for a period of three (3) years and shall be made available to the City upon a written request, subject to the authority set forth in Section 28.80.090.

**Section 28.80.090    City Access to and Inspection of Required Storefront Collective Dispensary Records.**

A duly designated City Police Department or Community Development Department representative may enter and shall be allowed to inspect the premises of every Storefront Collective Dispensary as well as the financial and membership records of the Collective required by this Chapter between the hours of eight o'clock (8:00) A.M. and six o'clock (6:00) P.M., or at any appropriate time to ensure compliance and enforcement of the provisions of this Chapter, except that the inspection and copying of the private medical records of a Collective member shall be made available to the Police Department only pursuant to a properly executed search warrant or inspection warrant by a court of competent jurisdiction, or a court order for the inspection of such records.

It shall be unlawful for any property owner, landlord, lessee, Medical Marijuana Collective Dispensary member or Management Member or any other person having any responsibility over the operation of the Storefront Collective Dispensary to refuse to allow, impede, obstruct or  interfere with an inspection of the

19

**EXHIBIT B**
Pg. 19 of 25

Storefront Collective Dispensary or the required records thereof.

**Section 28.80.100    Sale, Distribution, or Exchange of Medical Marijuana with a non-Medical Marijuana Collective Member.**

**A. Transfers to or from a Non-Collective Member.** A Storefront Collective Dispensary, including the Management Member operating the Dispensary, shall not cause or permit the sale, distribution, or exchange of Medical Marijuana or of any Edible Medical Marijuana product to any non-Collective Management Member or member. No Storefront Collective Dispensary shall possess medical marijuana that was not collectively cultivated by its Management Members or members either at the Property designated for the cultivation or at its prior location allowed in accordance with this Chapter.

**B. Assistance for Edible Marijuana Products.** Sales of edible medical marijuana products may be permitted at a Storefront Collective Dispensary and an individual or business within the City which assists a Dispensary in preparing and processing such a product will be deemed by the City as an "individual who provides assistance to a qualified patient or person with an identification card, or his or her designated primary caregiver, in administering medical marijuana to a qualified patient …" as that phrase is used in state Health and Safety Code section 11362.765(b)(3).

**Section 28.80.110    Appeal from Staff Hearing Officer Determination.**

**A.   Appeal to the Planning Commission and the City Council.** An applicant or any interested party who disagrees with the Staff Hearing Officer's decision to issue, issue with conditions, or to deny or to revoke a Storefront Collective Dispensary permit may appeal the Staff Hearing Officer's decision to the City Planning Commission in accordance with the appeal provisions of subsection (B) of Santa Barbara Municipal Code section 28.05.020 and, thereafter, to the City Council by filing an appeal pursuant to the requirements of section 1.30.050 of the Municipal Code.

**B. Notice of Appeal Hearing.** Upon the filing of an appeal pursuant to subparagraph (A) above, the Community Development Director or the City Clerk shall provide public notice of the appeal hearing in accordance with the notice provisions of SBMC Section 28.87.380.

20

**EXHIBIT B**

Pg. 20 of 25

**Section 28.80.120    Suspension and Revocation by Staff Hearing Officer.**

**A. Authority to Suspend or Revoke a Storefront Collective Dispensary Permit.** Consistent with Section 28.87.360, any Storefront Collective Dispensary permit issued under the terms of this Chapter may be suspended or revoked by the Staff Hearing Officer if it shall appear to that Officer that the Dispensary permittee has violated any of the requirements of this Chapter or the Dispensary is being operated in a manner which violates the operational requirements or operational plan required by this Chapter, or operated in a manner which conflicts with state law.

**B. Annual Review of Collective Dispensary Operations.** The staff of the Community Development Department and the Police Department are hereby authorized to conduct an annual review of the operation of each permitted Storefront Collective Dispensary within the City for full compliance with the operational and recordkeeping requirements of this Chapter, including specifically, annual verification that all persons employed or volunteering at the Storefront Collective Dispensary have not been convicted of or on probation for a crime related to the possession, sale, or distribution of controlled substances. A fee in an amount established by resolution of the City Council may be established in order to reimburse the City for the time involved in the annual review process. The staff may initiate a permit suspension or revocation process for any Storefront Collective Dispensary which, upon completion of an annual review, is found not to be in compliance with the requirements of this Chapter or which is operating in a manner which constitutes a public nuisance.

**C. Suspension or Revocation – Written Notice.** Except as otherwise provided in this Chapter, no permit shall be revoked or suspended by the Staff Hearing Officer under the authority of this Chapter until written notice of the intent to consider revocation or suspension of the permit has been served upon a Management Member or the person to whom the permit was granted at least ten (10) days prior to the date set for such review hearing. Such revocation or suspension notice shall state the specific reasons for the proposed suspension or revocation and must have been provided to the permittee in writing prior to the hearing. Such notice shall contain a brief statement of the grounds to be relied upon for revoking or suspending such permit. Notice may be given either by personal delivery to the permittee, or by depositing such notice in the U.S. mail in a sealed envelope, postage prepaid, (via regular mail and return

21                                    **EXHIBIT B**

receipt requested), addressed to the person to be notified at his or her address as it appears in his or her application for a Storefront Collective Dispensary permit.

**Section 28.80.130    Transfer of Collective Dispensary Permits.**

**A. Permit – Site Specific.** A permittee shall not operate a Storefront Collective Dispensary under the authority of a Storefront Collective Dispensary permit at any place other than the address of the Collective Dispensary stated in the application for the permit. All Collective Dispensary permits issued by the City pursuant to this chapter shall be non-transferable to a different location.

**B. Transfer of a Permitted Collective Dispensary.** A permittee shall not transfer ownership or control of a Storefront Collective Dispensary or attempt to transfer a Collective Dispensary permit to another person unless and until the transferee obtains an amendment to the permit from the Staff Hearing Officer pursuant to the permitting requirements of this Chapter stating that the transferee is now the permittee. Such an amendment may be obtained only if the transferee files an application with the Community Development Department in accordance with this all provisions of this Chapter accompanied by the required transfer review application fee.

**C. Request for Transfer with a Revocation or Suspension Pending.** No Storefront Collective Dispensary permit may be transferred (and no permission for a transfer may be issued) when the Community Development Department has notified in writing the permittee that the permit has been or may be suspended or revoked for non-compliance with this Chapter and a notice of such suspension or revocation has been provided.

**D. Transfer without Permission.** Any attempt to transfer a Storefront Collective Dispensary permit either directly or indirectly in violation of this Chapter is declared void, and the permit shall be deemed revoked.

**Section 28.80.140    Medical Marijuana Vending Machines.**

No person shall maintain, use, or operate a vending machine which dispenses marijuana to a qualified patient or primary caregiver unless such machine is located within the interior of a duly permitted Collective Dispensary.

**EXHIBIT B**

Pg. 22 of 25

**Section 28.80.150   Business License Tax Liability.**

An operator of a Storefront Collective Dispensary shall be required to apply for and obtain a Business Tax Certificate pursuant to Chapter 5.04. as a prerequisite to obtaining a Storefront Collective Dispensary permit pursuant to the terms of this Chapter. When and as required by the State Board of Equalization, Storefront Collective Dispensary transactions shall be subject to sales tax in a manner required by state law.

**SECTION TWO.**

**A. Dispensaries Open and Operating Legally Prior to the Effective Date of This Ordinance.** Those dispensaries which have opened and are being operated in a manner consistent with state law and the Santa Barbara Municipal Code prior to the effective date of this Ordinance and which are either located at a location no longer permitted for dispensaries pursuant to this Ordinance or are operated at locations which have never been issued a City dispensary permit may, despite a non-conforming location or despite not having been issued a City dispensary permit, remain as a legal non-conforming use for a period not exceeding one hundred eighty (180) days after the effective date of this Ordinance so long as those such dispensary operators comply with the following requirements during the one hundred eighty (180) day amortization period:

    1. the day-to-day operation of the dispensary is consistent with all of the day-to-day dispensary operational and recordkeeping requirements of Chapter 28.80, as revised and enacted by this Ordinance, and;

    2. the operation of the dispensary has not previously been and is not discontinued in its operation for a period of time in excess of thirty (30) consecutive days;

    3. the dispensary operator does either of the following: (a) applies for and obtains a City Collective Dispensary permit for its existing location (if such location is allowed under this Ordinance) or applies for a permit for new dispensary location pursuant to the requirements of this Ordinance prior to the expiration of the amortization period, or (b) the operator advises the City in writing of his or her intent to discontinue operation of the nonconforming dispensary upon the expiration of the one hundred eighty (180) period  – which application or written

**EXHIBIT B**

Pg. 23 of 25

advisement shall occur within sixty (60) days of the
adoption date of this ordinance.

**SECTION THREE.** City Ordinance No. 5510 entitled "An Ordinance Of
The Council Of The City Of Santa Barbara Extending A Temporary
Suspension Of The Right To Apply For Or To Obtain A Permit For
The Opening Or Operation Of Medical Marijuana Dispensaries
Otherwise Permitted By Santa Barbara Municipal Code Chapter
28.80 On An Interim Basis" adopted on February 2, 2010 is hereby
repealed as of the effective date of this Ordinance.

**SECTION FOUR.** This ordinance shall not take effect and shall be
deemed repealed unless, prior to its effective date, the City
Council adopts a resolution calling for a special City election
on the regularly scheduled statewide election date of November
2, 2010 in order to submit to the voters of the City for their
consideration and possible approval (pursuant to state Elections
Code section 9222) an ordinance of the City to ban the operation
of all medical marijuana storefront dispensaries within the City
of Santa Barbara.

24

**EXHIBIT B**

Pg. 24 of 25

**EXHIBIT A TO ORDINANCE NO. \_\_\_\_**
**MEDICAL MARIJUANA DISPENSARIES**
**SANTA BARBARA MUNICIPAL CODE CHAPTER 28.80**
**ALLOWED LOCATION EXHIBIT**
**DATED AS OF JUNE 22, 2010**

1. **Outer State Street Area:**

   a. 3400 - 3900 blocks of State Street
   b. All parcels on south La Cumbre Road
   c. All parcels on south La Cumbre Lane
   d. All parcels on La Cumbre Plaza Lane
   e. 00-100 blocks of south Hope Avenue

2. **Upper De la Vina Area:**

   a. 2600 – 2900 blocks of De la Vina Street

3. **Mission Street Area:**

   a. 1900-2000 blocks of De la Vina Street
   b. 100 block of west Mission Street
   c. 1800 block of State Street
   d. 1400 block of Chapala Street

4. **Milpas Street:**

   a. 00–400 blocks of north Milpas Street

5. **West Pueblo Medical Facility Area:**

   a. 200 block of Nogales
   b. 200-400 blocks of west Pueblo
   c. 2400-2500 blocks of Bath
   d. 2300 block of Castillo
   e. 300 block of West Junipero

**EXHIBIT B**

Pg. 24 of 25

*Council Introduction Draft*
*May 17, 2011*

ORDINANCE NO. _____

AN ORDINANCE OF THE COUNCIL OF THE CITY OF
SANTA BARBARA AMENDING THE MUNICIPAL CODE TO
ESTABLISH REVISED REGULATIONS FOR THOSE
STOREFRONT MEDICAL MARIJUANA DISPENSARIES
PERMITTED UNDER CITY ORDINANCE NO. 5449 AS
ADOPTED ON MARCH 25, 2008.

THE COUNCIL OF THE CITY OF SANTA BARBARA DOES ORDAIN AS FOLLOWS:

**SECTION ONE. Dispensaries Permitted Under City Ordinance No. 5449.** Notwithstanding Section Two of City Ordinance No. 5526, as adopted on June 29, 2010 and Santa Barbara Municipal Code section 28.80.050, those dispensaries which are being operated in a manner consistent with state law and which were permitted by the City under City Ordinance No. 5449 (as adopted by the City Council on March 25, 2008) may, despite a non-conforming location, remain as a legal non-conforming use at such permitted locations for a period of four (4) years after the effective date of City Ordinance No. 5526 provided that:

1. the day-to-day operation of the non-conforming dispensary is consistent with dispensary operational requirements of Chapter 28.80, as such requirements were enacted by City Ordinance No. 5526, and;

2. the operation of the non-conforming dispensary is not discontinued for a period of time in excess of thirty (30) consecutive days.

**SECTION TWO.** Those provisions of Santa Barbara Municipal Code Chapter 28.80 not inconsistent with this ordinance shall remain in full force and effect with respect to the storefront dispensaries permitted by Santa Barbara Municipal Chapter 28.80 (as presently codified) by City Ordinance No. 5526.

1

**EXHIBIT C**
Pg. 1 of 1

Agenda Item No._____

File Code No.  520.04



# CITY OF SANTA BARBARA

## COUNCIL AGENDA REPORT

**AGENDA DATE:**   May 17, 2011

**TO:**   Mayor and Councilmembers

**FROM:**   City Attorney's Office

**SUBJECT:**   Medical Marijuana Dispensary Ordinance – Amendment For Dispensaries Permitted Under The March 2008 Dispensary Ordinance

**RECOMMENDATION:**

That the City Council introduce and subsequently adopt, by reading of title only, An Ordinance of the Council of the City of Santa Barbara Amending the Municipal Code to Establish Revised Regulations for Those Storefront Medical Marijuana Dispensaries Permitted Under City Ordinance No. 5449 as Adopted on March 25, 2008.

**DISCUSSION:** In March of 2008, the City Council adopted City Ordinance No. 5449 to enact and codify Santa Barbara Municipal Code Chapter 28.80 as the City's first comprehensive zoning scheme for the permitting of storefront medical marijuana dispensaries. The City's enactment of SBMC Chapter 28.80 was in response to the statewide voter approval of Prop 215 in November 1996 (now state Health & Safety Code §11362.5 – and known as the "Compassionate Use Act.") It was also intended to supplement the state Legislature's enactment of the state Medical Marijuana Program Act (Health & Safety Code §§11362.7 -11362.83 – the "MMPA") which became effective on January 1, 2004 and, which according to guidelines adopted by the State Attorney General's Office, allows the operation of storefront medical marijuana dispensaries, under strictly limited circumstances, by groups of people who associate on a cooperative or collective basis to assist qualified patients in cultivating and obtaining medical marijuana.

Given the state medical marijuana law provisions, the Attorney General's express recognition that some medical marijuana dispensaries may be lawful, and with the appearance of several storefront dispensaries within the City in late 2007 and 2008, the City Council decided to enact City zoning regulations to limit dispensaries to nonresidential areas of the City and to establish day-to-day operational and security requirements for such dispensaries – all in an effort to minimize some of the potentially negative collateral impacts which are often associated with dispensaries.

**EXHIBIT D**
Pg. 1 of 3

Council Agenda Report
Medical Marijuana Dispensary Ordinance – Amendment For Dispensaries Permitted
Under The March 2008 Dispensary Ordinance
May 17, 2011
Page 2

Ultimately, under the City's initial March 2008 Ordinance, three collective/cooperative entities obtained City land use permits to open and operate – provided that they operate in accordance with the state MMPA and the Compassionate Use Act. These City permitted storefront dispensaries are as follows: 1. the Santa Barbara Patients' Collective Health Cooperative (500 N. Milpas), 2. the Greenlight Dispensary (631 Olive Street), and 3. Pacific Coast Collective (300 N. Milpas).

However, in late 2009 and early 2010, it became apparent there was significant public concern that, among other things, the City's March 2008 dispensary ordinance did not expressly limit the number of local collectives/cooperatives which might be allowed to obtain a City dispensary permit nor did it require that the permitted dispensaries be geographically well dispersed around the City. In response, the Council asked the Council Ordinance Committee to hold public hearings to consider amendments to the March 2008 ordinance. Ultimately, after a number of public hearings and significant public input, SBMC Chapter 28.80 was revised in June 2010 to impose a maximum limit on City permitted dispensary locations within the City, including those dispensaries which had been permitted under the original 2008 dispensary ordinance. In addition, the June 2010 ordinance revised the locations within the City where dispensaries could be permitted by establishing five separate dispersed areas for dispensaries. This ordinance also expressly limited dispensaries to certain block faces within each of those areas and by not allowing more than one dispensary in each area.

These locational restrictions had the effect of making two of the dispensaries permitted under the March 2008 ordinance (500 N. Milpas and 631 Olive Street) non-conforming locations. As a result, the June 2010 ordinance required any non-conforming dispensary to either move to a permitted location (by obtaining a new permit for that location) or to close down the previously permitted dispensary within six months of the adoption of the June 2010 ordinance. This final requirement – that certain permitted dispensaries now be required to close within 180 days of the effective date of the June 2010 ordinance - resulted in federal litigation against the City – based on legal claims that the June 2010 ordinance 180 day "amortization" provision violates the federal constitutional rights of the two permitted dispensary operators directly impacted by this requirement; that is, by virtue of the Fifth and Fourteenth Amendments to the U.S. Constitution, these two operators have claimed that, having made a substantial investment in obtaining a City dispensary permit and having undertaken the tenant improvements required by the City in order to open their dispensaries, they acquired a fundamental vested property right to continue in operation.

In November 2010, in ruling on a motion for a preliminary injunction filed by one of the non-conforming dispensary operators, the federal district court judge assigned to hear both lawsuits made it clear that he, at least preliminarily and prior to a trial on the merits, is inclined to agree with these dispensaries that the City's June 2010 ordinance 180 day closure requirement is a possible violation of the due process rights of the dispensary operators. In ruling in favor of the plaintiffs on their motion, the District Court issued a preliminary injunction which orders the City to refrain from any effort to shut the 500 N. Milpas dispensary down, at least pending a full trial of their lawsuit.

**EXHIBIT D**

Pg. 2 of 3

Council Agenda Report
Medical Marijuana Dispensary Ordinance – Amendment For Dispensaries Permitted
Under The March 2008 Dispensary Ordinance
May 17, 2011
Page 3

Consequently, in an effort to address the constitutional concerns raised by the District Court and to achieve a prompt and mutually acceptable resolution of the litigation filed by the two non-conforming dispensaries, it is the recommendation of the City Attorney's office that the City acknowledge the District Judge's ruling on this motion and accept that the judge in this case is not likely to alter his conclusions regarding the constitutional precedents applicable to the June 2010 ordinance's application to these two previously permitted dispensaries.

As a result, in our view, the City Attorney's office believes it be appropriate for the City Council to amend the City's present dispensary ordinance to acknowledge that the two dispensaries permitted under the March 2008 ordinance (but which are located at locations no longer allowed for dispensaries) may continue as pre-existing non-conforming uses for a total period of four years from the effective date of the June 2010 Dispensary Ordinance amendment. Therefore, we recommend the adoption of the attached uncodified ordinance which would impose the new four year amortization period which adoption we believe will result in a successful and final resolution of the pending federal court litigation.

We should also be clear, however, that nothing in this ordinance will allow any medical marijuana dispensary within the City to operate on a day-to-day basis in a manner contrary to the state Compassionate Use Act, the state Medical Marijuana Program Act, or the June 2010 Ordinance's operational requirements. And, of course, nothing allows the distribution of marijuana to persons not entitled to its use under state law (i.e., use by a "qualified patient") or the distribution of marijuana on a for-profit basis and doing so will remain a crime under the state Penal Code which will be prosecuted.  Finally, as a non-conforming use, these dispensaries would be subject to the City's existing Zoning Ordinance requirement that any non-conforming use which ceases operation for a continuous period of more than thirty days will lose its legal non-conforming status and must close and any dispensary which violates the law is subject to having its permit revoked upon the completion of an appropriate "due process" revocation hearing.

**PREPARED BY:**     Stephen P. Wiley, City Attorney

**APPROVED BY:**     City Administrator's Office

# EXHIBIT D

# DECLARATION OF SERVICE

I, the undersigned, declare that I am employed in the County of Santa Barbara, State of California. I am over the age of 18 and not a party to the within action; my business address is 307 East Carrillo Street, Santa Barbara, CA 93101.

On August 15, 2011,

I served the following:

## PLAINTIFF'S FIRST AMENDED COMPLAINT

on the following:

Stephen P. Wiley, City Attorney
Tom R. Shapiro, Asst. City Attorney
CITY OF SANTA BARBARA, OFFICE OF THE CITY ATTORNEY
P.O. Box 1990
Santa Barbara, CA 93102-1990

☒ **(By Mail)** I caused such document to be mailed in sealed envelope, by first-class mail, postage fully prepaid. This firm's regular practice of processing correspondence or other documents for mailing is to deposit such materials with the U.S. Postal Service on the date identified in a confirming declaration. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after the identified mailing date.

☐ **(By Personal Service)** I caused such document to be delivered by hand.

☐ **(By FAX)** I caused such document to be sent via facsimile transmission with confirmation of transmittal indicated by the individual transmission journal attached hereto to the individual(s) at the address(es) and FAX number(s) shown.

☐ **(State)** I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct on _____ at Santa Barbara, California.

☒ **(Federal)** I declare that the foregoing is true and correct to the best of my knowledge on this 15th day of August at Santa Barbara, California.

Dana Rosenberg