1

2

3                                                                    **O**

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11   SANTA BARBARA PATIENTS'          )  Case No. CV 10-06534 DDP (RCx)
     COLLECTIVE HEALTH                )
12   COOPERATIVE, a California        )  **ORDER GRANTING IN PART AND**
     cooperative corporation,         )  **DENYING IN PART DEFENDANT'S**
13                                     )  **MOTION TO DISMISS**
                      Plaintiff,      )
14                                     )  [Dkt. No. 69]
          v.                          )
15                                     )
     CITY OF SANTA BARBARA, a         )
16   California municipal             )
     corporation,
17
                      Defendant.
18   _____

19       Presently before the court is Defendant City of Santa

20   Barbara's Motion to Dismiss Plaintiff's Complaint for Mootness

21   under Federal Rule of Civil Procedure 12(b)(1).  Defendant contends

22   that because Plaintiff Santa Barbara Patients' Collective Health

23   Cooperative ("SBPCHC")has closed its marijuana dispensary in the

24   face of an enforcement action by the United States Attorney's

25   Office, Plaintiff's action is moot.

26       After reviewing the parties' papers and hearing oral argument,

27   the court grants the Motion in part and denies the Motion in part

28   and adopts the following order.

## I.   BACKGROUND

Plaintiff Santa Barbara Patients' Collective Health Cooperative ("SBPCHC") is a cooperative corporation that was operating a medical marijuana collective and dispensary in the city of Santa Barbara.  Plaintiff obtained a Medical Marijuana Dispensary Permit ("Permit") in 2008, shortly after the City of Santa Barbara ("City") enacted Ordinance 5449, its first medical marijuana ordinance ("Original Ordinance"), codified in Chapter 28.80 of the Santa Barbara Municipal Code.  (See Compl. Exh. A.) On June 29, 2010, the Original Ordinance was revised by the enactment of Ordinance 5226 ("Revised Ordinance").  (See Compl. Exh. B.)  The Revised Ordinance changed the permissible locations for the operation of marijuana dispensaries within the City and required existing dispensaries to comply within 180 days.

Plaintiff brought this action under 42 U.S.C. § 1983 in response to the Revised Ordinance of June 29, 2010.  In November 2010, this court issued a Preliminary Injunction in favor of Plaintiff, prohibiting enforcement against Plaintiff.  On May 17, 2011, in response to the Preliminary Injunction,[1] the City adopted "An Ordinance of the Council for the City of Santa Barbara Amending the Municipal Code to Establish Revised Regulations for Those Storefront Medical Marijuana Dispensaries Permitted Under City Ordinance No. 5449 as Adopted on March 25, 2008" ("the Amendment"). (Compl. Exh. C.)  The Amendment allowed existing dispensaries in non-conforming locations to operate in those locations for four years, so long as "the day to day operation of the non-conforming dispensary is consistent with dispensary operational requirements"

---

[1]See Compl. Exh. D (City Attorney's Council Agenda Report).

1  of the Revised Ordinance and so long as operations did not cease

2  for more than 30 days.  (Id.)

3       On August 15, 2011, Plaintiff filed its First Amended

4  Complaint and Petition for Writ of Mandate ("FAC"), alleging eight

5  causes of actions and seeking compensatory and punitive damages and

6  a writ of mandate.  Plaintiff alleged violations of its rights

7  (fundamental vested rights, right to due process, right to equal

8  protection, and right to freedom of association) and of the

9  prohibitions against taking without just compensation and ex post

10 facto laws.

11      In the meantime, the City had appealed this court's

12 Preliminary Injunction.  The Ninth Circuit affirmed the Preliminary

13 Injunction on June 13, 2012, and remanded it to this court for

14 reconsideration based on the fact that during the pendency of the

15 appeal, the City had passed the Amended Ordinance, which extended

16 the amortization period from 180 days to four years.[1]

17 **II. LEGAL STANDARD**

18      A complaint will survive a motion to dismiss when it contains

19 "sufficient factual matter, accepted as true, to state a claim to

20 relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.

21 Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S.

22 544, 570 (2007)). When considering a Rule 12(b)(6) motion, a court

23 _____

    [1]The Circuit also suggested that Pack v. Superior Court, 132
24 Cal. Rptr. 3d 633 (Ct. App. 2011), rev. granted 268 P.3d 1063
   (2012), a case on federal preemption of local marijuana ordinance
25 then pending before the California Supreme Court, might moot parts
   of the current action or "inform the district court's resolution of
26 them." Santa Barbara Patients' Collective Health Cooperative v.
   City of Santa Barbara, No.10-57024, 2012 WL 2129370 (9th Cir. June
27 13, 2012). On August 22, 2012, the California Supreme Court
   dismissed Pack as moot since Long Beach had repealed and replaced
28 its ordinance. Pack v. S.C., 283 P.3d 1159 (2012). Thus, the court
   does not consider Pack here.

1   must "accept as true all allegations of material fact and must

2   construe those facts in the light most favorable to the plaintiff."

3   Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000). Although a

4   complaint need not include "detailed factual allegations," it must

5   offer "more than an unadorned, the-defendant-unlawfully-harmed-me

6   accusation." Iqbal, 129 S. Ct. at 1949. Conclusory allegations or

7   allegations that are no more than a statement of a legal conclusion

8   "are not entitled to the assumption of truth." Id. at 1950. In

9   other words, a pleading that merely offers "labels and

10   conclusions," a "formulaic recitation of the elements," or "naked

11   assertions" will not be sufficient to state a claim upon which

12   relief can be granted. Id. at 1949 (citations and internal

13   quotation marks omitted).  "When there are well-pleaded factual

14   allegations, a court should assume their veracity and then

15   determine whether they plausibly give rise to an entitlement of

16   relief." Id. at 1950. Plaintiffs must allege "plausible grounds to

17   infer" that their claims rise "above the speculative

18   level." Twombly, 550 U.S. at 555-56. "Determining whether a

19   complaint states a plausible claim for relief" is a "context-

20   specific" task, "requiring the reviewing court to draw on its

21   judicial experience and common sense." Iqbal, 129 S. Ct. at 1950.

22   **III. DISCUSSION**

23      **A.      Timeliness of 12(b)(1) Motion**

24        Plaintiff's argument that Defendant's Motion is untimely is

25   without merit.  "[M]ootness is a jurisdictional defect. . . .

26   [which] means that it can be raised at any time either by the

27   parties or by the court acting sua sponte."  Barilla v. Ervin, 886

28   F.2d 1514, 1519 (9th Cir. 1989), overruled on other grounds. It was

1  appropriate for Defendant to move to dismiss on mootness grounds at
2  this stage in the proceedings.

3  **B.      Mootness**

4      "[A] federal court has no authority to give opinions upon moot
5  questions or abstract propositions, or to declare principles or
6  rules of law which cannot affect the matter in issue in the case
7  before it." Church of Scientology of California v. U.S., 506 U.S.
8  9, 12, 113 S.Ct. 447, 449 (1992)(citations and internal quotation
9  marks omitted). Thus, "[a]n actual controversy must be extant at
10 all stages of review, not merely at the time the complaint is
11 filed." Bernhardt v. County of Los Angeles, 279 F.3d 862, 871 (9th
12 Cir. 2002).  An action becomes moot if "the requisite personal
13 interest captured by the standing doctrine ceases to exist at any
14 point during the litigation." Jacobs v. Clark County Sch. Dist.,
15 526 F.3d 419, 425 (9th Cir. 2008)(internal quotation marks
16 omitted).  In other words, if it is "impossible for the court to
17 grant any effectual relief whatever to a prevailing party, the
18 appeal must be dismissed." Church of Scientology of Cal. v. U.S.,
19 506 U.S. 9, 12, 113 S.Ct. 447, 449 (1992)(citations and internal
20 quotation marks omitted).

21     Defendant argues that this action is moot because Plaintiff's
22 business was closed down by federal law, not by the City, and is
23 prohibited from operating by federal law, not by the Ordinance, and
24 thus the court cannot "grant any effectual relief" to Plaintiff.
25 (Mot. at 7.) Defendant acknowledges that "a live claim for damages
26 may prevent dismissal for mootness," but asserts that none of
27 Plaintiff's actual damages are due to the Ordinance.  (Mot. at 7.)
28 Finally, Defendant argues that the possibility of Plaintiff

1  reopening its business is too "remote and speculative" to create a

2  "tangible prejudice to the existing interests" of Plaintiff.  (Mot.

3  at 4.)

4  **1.    Actual Damages**

5  Under its first six causes of action, Plaintiff requests relief

6  in the form of general, special, compensatory, and punitive

7  damages, along with costs and attorney's fees pursuant to 42 U.S.C.

8  § 1988. The First Amended Complaint does not specify the amount of

9  damages requested.  In its Opposition to the Motion, Plaintiff

10  asserts that it was injured by Defendant, but the only actual

11  damages Plaintiff points to are $160,000 in attorney's fees to

12  obtain the preliminary injunction and "tens of thousands more" to

13  defend against Defendant's appeal. (Opp. at 5.)

14  Although the prevailing party in a § 1983 action can recover

15  reasonable attorney's fees, such fees are not separately cognizable

16  as damages.  "[A]ttorney's fees [cannot] fairly be characterized as

17  an element of 'relief' indistinguishable from other elements.

18  Unlike other judicial relief, the attorney's fees allowed under §

19  1988 are not compensation for the injury giving rise to an action.

20  Their award is uniquely separable from the cause of action to be

21  proved at trial." <u>White v. New Hampshire Dept. of Employment Sec.</u>,

22  455 U.S. 445, 452 (1982).  <u>See also</u> <u>Metcalf v. Borba</u>, 681 F.2d

23  1183, 1185 (9th Cir. 1982).

24  Thus the court finds that Plaintiff has not pled actual damages

25  sufficient to defeat mootness.

26  **2.    Nominal Damages**

27  Because Plaintiff is bringing a § 1983 suit, Plaintiff may be

28  entitled to nominal damages for the violation of its constitutional

rights even if it cannot show actual damages.  See Bernhardt v. County of Los Angeles, 279 F.3d 862, 872 (9th Cir. 2002).  See also United States v. Marolf, 173 F.3d 1213, 1219 ("Nominal damages are available where the violation of a legal or constitutional right produces no 'actual damages.'"), and Draper v. Coombs, 792 F.2d 915, 922 (9th Cir. 1986)("Even assuming that [Plaintiff] did not suffer actual damages as a result of the unlawful extradition, his complaint stated valid section 1983 claims for nominal damages.") "By making the deprivation of such rights actionable for nominal damages without proof of actual injury, the law recognizes the importance to organized society that those rights be scrupulously observed; but at the same time, it remains true to the principle that substantial damages should be awarded only to compensate actual injury or, in the case of exemplary or punitive damages, to deter or punish malicious deprivations of rights." Carey v. Piphus, 435 U.S. 247, 266 (1978).

"A live claim for nominal damages will prevent dismissal for mootness." Bernhardt v. County of Los Angeles, 279 F.3d 862, 872. See also Jacobs v. Clark County Sch. Dist., 526 F.3d 419 (9th Cir. 2008)(students' claims for constitutional violations were not moot although they no longer attended the violating high schools and had no evidence of actual damages because the students alleged injuries in the form of deprivation of constitutional rights).  If Plaintiff has a live claim for nominal damages, then Plaintiff's action is not moot.  The court now considers each of Plaintiff's Causes of Action to determine whether Plaintiff has pled a violation of its constitutional rights.

**a. Violation of Fundamental Vested Rights (Fifth and Fourteenth Amendments) and Due Process of Law (Fourteenth Amendment)(First and Second Causes of Action)**

In the First Cause of Action of the FAC, Plaintiff alleges that "City's enactment of the Revised and Amended Ordinances violates Plaintiff's fundamental vested rights protected by the Constitution of the United States under the Fifth and Fourteenth Amendments and constitutes a taking of property without compensation, as it purports to shut down retroactively a lawful use expressly permitted by City, without an adequate amortization period or compensation." (FAC ¶ 53.) In the Second Cause of Action, Plaintiff alleges that the Revised Ordinance violates its right to due process of law by depriving it of the value of its business without due process.

In the Order Granting Plaintiff's Motion for Preliminary Injunction ("Preliminary Injunction Order"), this court found that Plaintiff had "established with sufficient likelihood a vested right in the permit." (Preliminary Injunction Order at 5.) The court now reaffirms that conclusion. The relevant section of the Preliminary Injunction is the following:

> First, the court considers whether Plaintiff has established with sufficient likelihood a vested right in the permit. The court concludes that it has. As the California Supreme Court has explained:
>
> > The doctrine of vested rights . . . states that a property owner who, [1] in good faith reliance on a government permit, [2] has performed substantial

1          work and incurred substantial liabilities

2          <u>has a vested right</u> to . . . use the

3          premises as the permit allows.

4    <u>Communities for a Better Env't v. South Coast Air Quality</u>

5    <u>Dist.</u>, 226 P.3d 985, 994 (Cal. 2010) (brackets and emphasis

6    added).  In other words, "[w]here a permit has been properly

7    obtained and in reliance thereon the permitee has incurred

8    material expense, he acquires a vested property right . . . .

9    <u>O'Hagen v. Bd. of Zoning Adjustment</u>, 19 Cal. App. 3d. 151, 158

10   (1971).  This right is "vested" and it does not go away with

11   the enactment of a new ordinance.  <u>See</u> <u>Edmonds v. County of Los</u>

12   <u>Angeles</u>, 255 P.2d 772, 777 (Cal. 1953) ("The rights of users

13   of property as those rights existed at the time of the

14   adoption of a zoning ordinance are well recognized and have

15   always been protected.")

16        Here, it is undisputed that Plaintiff obtained a valid

17   Dispensary Use Permit to build a dispensary at 500 N. Milpas

18   Street.  It is further undisputed that Plaintiff incurred

19   substantial costs in good faith reliance of that permit.[1]

20   Accordingly, Plaintiff has acquired a vested right to operate

21   the dispensary that cannot be infringed by the Revised

22   Ordinance without due process of law.  <u>See</u> <u>Communities for a</u>

23   <u>Better Env't</u>, 226 P.3d at 994 ("[a] subsequent zoning

24   ordinance cannot deprive a person of a vested right without

25   due process").  The question, then, is whether Plaintiff was

26

27        [1]  The parties dispute the amount spent by Plaintiff in
     reliance of the permit.  Even taking City's figure, Plaintiff
28   expended a sufficient amount to constitute reliance on the permit
     for purposes of this vested rights analysis.

                                    9

1    afforded due process.

2        In considering whether Plaintiff was afforded due

3    process, the court notes that as a general principle "[o]nce a

4    use permit has been properly issued the power of a

5    municipality to revoke it is limited." <u>O'Hagen</u>, 19 Cal. App.

6    3d. at 158.  Accordingly, governmental entities do not tend to

7    apply newly enacted zoning ordinances to close businesses

8    lawfully operating at the time those ordinances became

9    effective.  <u>Bauer v. City of San Diego</u>, 75 Cal. App. 4th 1281,

10   1292 (1999).  This is because municipalities wish "to avoid

11   questions as to the constitutionality of [the new ordinance's]

12   application to those [existing] uses."   <u>Hansen Brothers</u>

13   <u>Enterprises, Inc. v. Board of Supervisors</u>, 907 P.2d 1324, 1335

14   (Cal. App. 1996). Here, however, we are faced with just such a

15   question.

16       Contrary to City's assertion, the existence of a vested

17   right does not preclude City from amending its zoning

18   ordinances.  "It is well settled in California that public

19   entities may impair vested rights where necessary to protect

20   the health and safety of the public." <u>Davidson v. County of</u>

21   <u>San Diego</u>, 49 Cal.App.4th 639, 648 (1996).  City's arguments

22   fail to appreciate, however, that while the government may

23   infringe upon vested rights under certain circumstances, such

24   rights may only be impaired "with due process of law."  <u>Id. at</u>

25   <u>649</u>; <u>see also</u> <u>Tahoe Reg'l Planning Agency v. King</u>, 233

26   Cal.App.3d 1265, 1395 ("The principle that 'zoning legislation

27   may validly provide for the eventual termination of

28   nonconforming property uses without compensation if it

10

1    provides a reasonable amortization period commensurate with
2    the investment involved' is well-established.")

3       Along such lines, California courts have recognized the
4    "hardship and doubtful constitutionality of compelling the
5    immediate discontinuance of nonconforming uses." San Diego
6    County v. McClurken, 234 P.2d 972, 975 (Cal. 1951).  For this
7    reason, zoning ordinances "customarily exempt existing land
8    uses (or amortize them over time) to avoid questions as to the
9    constitutionality of their application to those uses."
10   Calvert v. County of Yuba, 145 Cal.App.4th 613, 625 (2006).
11   "A zoning ordinance which requires the discontinuance
12   forthwith of a nonconforming use existing when the ordinance
13   was adopted is a deprivation of property without due process
14   of law unless the use is a public nuisance." McCaslin v. City
15   of Monterey Park, 163 Cal. App. 2d 339 (1958).

16      Here, City does not argue that Plaintiff's business is a
17   nuisance.  The Revised Ordinance does, however, contain an
18   exemption for nonconforming uses.  Section two of the Revised
19   Ordinance states that:

20          dispensaries which have opened . . .
21       prior to the effective date of this
22       Ordinance and which are [] located at a
23       location   no   longer   permitted   for
24       dispensaries pursuant to this Ordinance .
25       . . may, despite non-conforming location
26       . . . remain as a legal non-conforming
27       use   for   a   period   not   exceeding   one
28       hundred eighty (180) days after the

1                effective date of this Ordinance . . . .

2        (Dckt. # 21, Ex. 1).  "Nothing in the Constitution forbids

3        municipalities from requiring non-conforming uses to close,

4        change their business, or relocate within a reasonable time

5        period."  <u>World Wide Video of Washington, Inc. V. City of</u>

6        <u>Spokane</u>, 368 F.3d 1186, 1199 (9th Cir. 2004).  The question,

7        then, is whether the amortization period here is sufficient to

8        satisfy due process. As a general matter, an amortization "is

9        insufficient only if it puts a business in an impossible

10       position due to a shortage of relocation sites." <u>Id.</u>  Here,

11       the ordinance itself creates such "a shortage of relocation

12       sites."  In fact, the Revised Ordinance limits the number of

13       dispensaries in the City of Santa Barbara to a total of three.

14       This total includes those dispensaries which are open and

15       operating in a legal, non-conforming manner at the time of the

16       adoption of the ordinance.  In its July 21, 2010, letter, the

17       City stated that "three pending applications that satisfy the

18       new locational requirements have already been deemed

19       complete," and that Plaintiff "must close on January 29,

20       2011."  (Lee Decl., Ex. J.)  The court concludes that

21       Plaintiff has made a strong showing that the amortization

22       period provided by the Revised Ordinance has put Plaintiff in

23       "an impossible position," forcing Plaintiff to close its

24       business and lose its permit without due process.

25 (Order Granting Plaintiff's Motion for Preliminary Injunction,

26 Sept. 29, 2010, 5-8.)

27   Reaffirming this analysis, the court now finds that Plaintiff

28 states a claim for a violation of its right to due process by the

1  Revised Ordinance.  Accordingly, Defendant's Motion is denied as to
2  the Second Cause of Action.

3     Likewise, the court denies Defendant's Motion as to the First
4  Cause of Action.  Although a vested right may be impaired or
5  revoked if the authorized use is deemed to constitute a menace to
6  public health or safety, as discussed above, the Revised Ordinance
7  must be "sufficiently necessary to the public welfare as to justify
8  the impairment."  <u>Davidson v. County of San Diego</u>, 49 Cal.App.4th
9  639, 649 (internal quotation marks and citation omitted). "Probably
10 the single most important factor to be considered in determining
11 whether a particular impairment is constitutionally permissible is
12 the nature and extent of the impairment. . . . Other important
13 factors to be considered are the nature, importance and urgency of
14 the interest to be served by the challenged legislation; and
15 whether the legislation was appropriately tailored and limited to
16 the situation necessitating its enactment."  <u>Id.</u> (internal
17 quotation marks and citations omitted).

18    Here, Plaintiff has alleged that Defendant has "made no
19 attempt to justify its interference with Plaintiff's vested right
20 based on a compelling public necessity or to prevent a nuisance."
21 (FAC ¶ 57.)  According to Plaintiff, the Revised Ordinance's
22 requirement that dispensary operations be 600 feet from any school
23 "does not operate to protect health and safety and more or less
24 than the 500-foot restriction under the original Ordinance, nor
25 does the City have any substantial evidence to support the idea
26 that the health, safety, and welfare of school children would not
27 be threatened by a 600-foot radius as opposed to a 500-foot
28 radius."  (FAC ¶ 65.)  Plaintiff has thus sufficiently pled a

1  violation of a vested right without a countervailing demonstration

2  of the "nature, importance, and urgency" of the revision to the

3  Original Ordinance.

4      Defendant's Motion to Dismiss is DENIED as to the first two

5  Causes of Action.

6  **b. Violation of Constitutional Right to Equal Protection Under**

7  **the Law (Fourteenth Amendment)(Third Cause of Action)**

8  "Social and economic legislation . . . that does not employ

9  suspect classifications or impinge on fundamental rights must be

10  upheld against equal protection attack when the legislative means

11  are rationally related to a legitimate governmental purpose.

12  Moreover, such legislation carries with it a presumption of

13  rationality that can only be overcome by a clear showing of

14  arbitrariness and irrationality." Hodel v. Indiana, 452 U.S. 314,

15  331-332 (1981)(citations omitted). Here, Plaintiff alleges the

16  following:

17      City has elected to exempt from the closure requirements

18      of the Amended Ordinance a dispensary that is under suspicion

19      of illegal conduct, but located in what City considers a more

20      acceptable location, in favor of closing a law abiding

21      dispensary that is actually far safer and better for the

22      community.  Plaintiff alleges that City is motivated by bias,

23      unconcerned with its obligations under the MMP to facilitate,

24      and not obstruct, the ability of qualified patients to obtain

25      and use medical marijuana....

26      The Revised and Amended Ordinances render void right to

27      operate of two existing dispensaries, one being Green Well.

28      Thus, the Revised and Amended Ordinances authorize City to

1    issue two permits to other applicants. City has issued one
2    permit thus far to Santa Barbara Patients' Group, a dispensary
3    that operated for nearly ten years without a permit.  City's
4    requirement that Plaintiff shut down, despite its vested
5    interests and rights, while allowing other unpermitted
6    dispensaries to continue to operate notwithstanding their
7    illegal status, is arbitrary, capricious and lacking in
8    rational basis, and deprives Plaintiff of equal protection of
9    the laws.  No rational basis exists for treating Green Well
10    differently from other dispensaries that the Amended Ordinance
11    will allow to continue operating.

12 (FAC ¶¶ 77-78.)  The court finds that Plaintiff has not met its
13 burden of showing that the Revised Ordinance was arbitrary based on
14 bias against Plaintiff.  The City has a legitimate governmental
15 interest in zoning restrictions on medical marijuana dispensaries,
16 as on other types of businesses.  Although the City violated
17 Plaintiff's due process rights and its vested interest in its
18 business by issuing the Revised Ordinance, Plaintiff has failed to
19 show that the Revised Ordinance on its own terms is devoid of a
20 rational basis. Thus Plaintiff has failed to show a constitutional
21 violation that would be the basis of a claim for nominal damages.

22    The court therefore GRANTS Defendant's Motion with respect to
23 the Third Cause of Action.

24 **c. Violation of Prohibition Against Taking Without Just**
25 **Compensation (Fifth Amendment, Fourteenth Amendment)(Fourth Cause**
26 **of Action)**

27    "It is well established that there is no federal
28 Constitutional right to be free from changes in the land use laws.

15

1   Therefore, an interest in a particular land use does not constitute
2   a protected property interest, unless the interest has vested in
3   equity based on principles of detrimental reliance." <u>Bowers v.</u>
4   <u>Whitman</u>, 671 F.3d 905, 915-916 (9th Cir. 2012)(internal quotation
5   marks and citations omitted).  As discussed above, Plaintiff's
6   right to rely on its Use Permit had vested.  Thus, although zoning
7   ordinances typically do not constitute regulatory takings, they
8   could in this case.

9        Nonetheless, the court finds that the takings claim has been
10  mooted by the closure of Plaintiff's facility. In contrast to
11  claims of procedural due process, a takings claim is "rooted in the
12  notions of adequate compensation and economic restitution."
13  <u>Weinberg v. Whatcom County</u>, 241 F.3d 746, 752 (9th Cir. 2001).
14  If the Revised or Amended Ordinance had resulted in Plaintiff
15  losing all enjoyment of its business and suffering property loss,
16  Plaintiff would have a claim for compensation under the Takings
17  Clause.  Here, however, Plaintiff cannot point to any damages
18  resulting from Defendant's actions, nor has Defendant been given
19  the opportunity to compensate Plaintiff for such a taking.  "[A]
20  claim that the application of government regulations effects a
21  taking of a property interest is not ripe until the government
22  entity charged with implementing the regulations has reached a
23  final decision regarding the application of the regulations to the
24  property at issue." <u>Williamson County Reg'l Planning Com'n v.</u>
25  <u>Hamilton Bank of Johnson City</u>, 473 U.S. 172, 186-187 (1985).

26       The court thus GRANTS Defendant's Motion to Dismiss with
27  respect to the Fourth Cause of Action.

28

**d. Violation of Constitutional Right to Freedom of Association (First Amendment)(Fifth Cause of Action)**

Plaintiff alleges that "City is attempting [...] not only to stifle their right to assembly and association, but to restrict communication, education, and advocacy regarding medical marijuana which is enhanced and effected by virtue of Plaintiff's existence." (FAC ¶ 92.) According to Plaintiff, the "current restrictions upon and ultimate termination of their right to associate at and express themselves within" the Facility "is and will continue to be the cause of substantial pain and hardship to Plaintiff and its members." (FAC ¶ 93.)

"Among the rights protected by the First Amendment is the right of individuals to associate to further their personal beliefs." Healy v. James, 408 U.S. 169, 181 (1972). See U.S. v. Rubio, 727 F.2d 786, 791 (9th Cir. 1983)("We agree with defendants that the First Amendment protects their right to associate with one another and with the Hell's Angels Motorcycle Club."). Plaintiff alleges that the Revised and Amended Ordinance limits membership in the collective to "one Collective per qualified patient or primary caregiver" and limits members of the collective to individuals who are residents of Santa Barbara County. (FAC ¶¶ 49, 50.)

The court finds that these membership restrictions impinge on Plaintiff's freedom of association such that Defendant needs to meet a heightened level of scrutiny to justify them. Thus, at this stage of the proceedings, Plaintiff has pled a constitutional violation that, if substantiated and not defeated by a defense, is sufficient to support nominal damages.

17

1   The court thus DENIES Defendant's Motion with respect to the

2   Fifth Cause of Action.

3       **e. Violation of Constitutional Prohibition on Ex Post Facto**

4   **Laws (Fourteenth Amendment)(Sixth Cause of Action)**

5       "[The Ex Post Facto] Clause is aimed at laws that

6   retroactively alter the definition of crimes or increase the

7   punishment for criminal acts." California Dept. of Corrections v.

8   Morales, 514 U.S. 499, 504 (1995)(citations and internal quotation

9   marks omitted). "[M]any statutes that 'unsettle expectations and

10  impose burdens on past conduct' are nonetheless 'uncontroversially

11  prospective.' For example, a ban on gambling is not impermissibly

12  retrospective simply because it 'harms the person who had begun to

13  construct a casino before the law's enactment.' . . . A state may

14  outlaw a formerly legal business even if it causes hardship to

15  those who relied on the earlier law." Spoklie v. Montana, 411 F.3d

16  1051, 1058 (9th Cir. 2005)(quoting Landgraf v. USI Film Prods., 511

17  U.S. 244, 269 n.24 (1994)).

18      Plaintiff alleges that it is subject to "severe penalties now

19  for actions and choices" made prior to the enactment of the Revised

20  or Amended Ordinance. (Opp. at 5.) The court finds that although

21  the revision of the Ordinance caused Plaintiff hardship and

22  violated some of Plaintiff's rights, the Revised and Amended

23  Ordinance cannot be considered to be imposing a "punishment" or

24  "penalty" upon Plaintiff, and that therefore the Ex Post Facto

25  prohibition does not apply.

26      The court hereby GRANTS Defendant's Motion as to the Sixth

27  Cause of Action.

28

**3. Relief Through Writ of Mandate (Seventh and Eighth Causes of Action)**

Defendant argues that Plaintiff's claims for writ of mandate are moot because "the federal government notified the Property owner, who in turn notified SBPCHC, that they were prohibited under federal law from operating a marijuana dispensary.  In response, SBPCHC shut down their business and surrendered possession of the Property."  (Mot. At 7.)  Therefore, according to Defendant, any opinion of this court would be purely advisory because "SBPCHC is prohibited from operating at the Property under federal law."  Id. The court finds that this would not bar Plaintiff from opening another dispensary.  The U.S. Department of Justice did not directly compel Plaintiff to close its dispensary.  Instead, it contacted the owner of the Property to inform her of her liability for the dispensary's operations in violation of federal law. (Mot., Exh. A.)  The property owner then terminated Plaintiff's lease early.  (Mot., Exh. B.) Whatever the D.O.J's reasons for going through the property owner instead of Plaintiff, the effect is that Plaintiff is not "prohibited under federal law from operating a marijuana dispensary" except to the extent that all marijuana dispensaries in California are prohibited under federal law. The court holds that Plaintiff is not barred from opening a dispensary under California law.

The remaining question is whether Plaintiff's case is nonetheless moot because it has not attempted to open another dispensary.  In City News, the Supreme Court found the case moot because City News "neither now pursues nor currently expresses an intent to pursue a license under Waukesha law."  City News &

1   _Novelty, Inc. v. City of Waukesha_, 531 U.S. 278, 746-47 (2001). In

2   contrast, in _City of Erie v. Pap's A.M._, the Court held that "Pap's

3   is still incorporated under Pennsylvania law, and it could again

4   decide to operate a nude dancing establishment in Erie." _City of_

5   _Erie v. Pap's A.M._, 529 U.S. 277, 287 (2000).

6       Plaintiff claims in its Opposition that it "may seek another

7   permit when the time is right." (Opp. at 8.) It suggests that the

8   time is not yet right because "law on federal pre-emption of state

9   marijuana laws is in flux" but that "it is reasonable to expect

10  that reopening will eventually be possible." (_Id._)  This is too

11  speculative of a basis on which to maintain a claim for mandate

12  under Plaintiff's Seventh Cause of Action ("Mandate To Set Aside

13  the Revised Ordinance as an Illegal and Void Purported Exercise of

14  The Police Power").  The court thus GRANTS Defendant's Motion as to

15  the Seventh Cause of Action.

16      Plaintiff appears to concede that the Eighth Cause of Action,

17  "Mandate to Set Aside the Revised Ordinance as an Illegal and Void

18  Purported Exercise of the Police Power for Failure to Exempt

19  Plaintiff's Use as a Fundamental Vested Right" is moot. "While the

20  request for an order prohibiting enforcement against SBPCHC may be

21  moot, the request for an order setting aside the entire ordinance

22  is not." (Opp. at 7.)  The court finds that both mandate claims

23  are moot. Any mandate prohibiting enforcement of the Revised

24  Ordinance against Plaintiff would be ineffectual, given that

25  Plaintiff is not currently running a dispensary.

26      The court GRANTS Defendant's Motion as to Plaintiff's Seventh

27  and Eight Causes of Action.

28      ///

**IV. CONCLUSION**

The court GRANTS the Motion in part and DENIES it in part. The Third, Fourth, Sixth, Seventh, and Eighth Causes of Action are DISMISSED as moot.  The Motion is DENIED as to the First, Second, and Fifth Causes of Action.


IT IS SO ORDERED.



Dated: November 29, 2012

DEAN D. PREGERSON

United States District Judge