**Dana J. Rosenberg, SBN 255398**
**Rosenberg Legal**
**307 East Carrillo Street**
**Santa Barbara, CA  93101**
**Tel:   (805) 745-1717 / Fax:  (805) 456-0404**
**rosenberglegal@cox.net**

**Gary S. Casselman, SBN 81658**
**Law Offices of Gary S. Casselman**
**3415 S. Sepulveda Blvd., Suite 100**
**Los Angeles, California 90034**
**Tel: (310) 314-4444 / Fax: (310) 314-4447**
**garyscasselman@gmail.com**

**Attorneys for Plaintiff/Petitioner**

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANTA BARBARA PATIENTS' COLLECTIVE HEALTH COOPERATIVE, etc., <br><br> Plaintiff/Petitioner, <br><br> vs. <br><br> CITY OF SANTA BARBARA, etc., et al., <br><br> Defendants/Respondents. | CASE NO.   CV 10-06534 DDP (VBKx) <br><br> EX PARTE APPLICATION FOR REVIEW AND STAY OF OCTOBER 8 , 2013 ORDER COMPELLING IMMEDIATE PRODUCTION PLAINTIFF'S UNREDACTED CORPORATE RECORDS EN TOTO, AND ORDERING BANK OF SANTA BARBARA TO ISSUE ALL BANKING RECORDS DIRECTLY TO DEFENDANT CITY <br> [Fed. Rule Civ. Proc. Rule 72] <br><br> Date:  October 8, 2013 <br> Time:  10:00 a.m. <br> Courtroom: 590, Roybal <br><br> Hon. Victor B. Kenton |

Plaintiff urgently applies  ex parte to District Judge Dean Pregerson to review and stay  the order of October 8, 2013 by Magistrate Judge Victor Kenton compelling production of documents containing privileged identities of members of Plaintiff, Santa Barbara Patients' Collective Health Cooperative (the "Cooperative").  The  confidential identities of the Cooperative's members, which the Cooperative specifically seeks to protect under its cause of action for 1st Amendment rights of association and assembly, is fatally threatened by disclosure, exposing them to harassment, hostility, economic reprisals, and criminal sanctions, it will result in withdrawal of membership and discouragement of new members; it will chill, if not destroy, the members' associational rights, and, in sum, destroy the Cooperative's ability to function in any capacity, including and especially by re-opening a medical marijuana dispensary.  As explained *infra*, the oral protective order issued will do nothing to prohibited disclosure of privileged identities of members to the very persons from whom the members seek to protect themselves.

Further, Plaintiff requests an order shortening time for a motion to dismiss Defendant's counterclaim alleging unlawful operation of Plaintiff's long-closed medical marijuana dispensary on grounds of mootness.  Alternatively, Plaintiff applies for an order that Defendant show cause as to why its counterclaim should not be dismissed as moot.

Respectfully submitted,

DATED: October 10, 2013

/s/ Gary S. Casselman
GARY S. CASSELMAN, Attorney for Plaintiff
SANTA BARBARA PATIENTS'
COLLECTIVE HEALTH COOPERATIVE

/s/ Dana J. Rosenberg
DANA J. ROSENBERG, Attorney for Plaintiff
SANTA BARBARA PATIENTS'
COLLECTIVE HEALTH COOPERATIVE

2

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................... iii

I.  INTRODUCTION ...................................................................... 1

   A. RELIEF REQUESTED .......................................................... 2

   B. CHRONOLOGY OF DISCOVERY DISPUTE ............................ 2

II. REVIEW REQUESTED ............................................................. 8

   A. DISPOSITIVE NATURE OF THE RULING ............................... 8

   B. STATE LAW PRIVILEGES NOT ADDRESSED
      PRIOR TO THE RULING AT ISSUE ..................................... 10

     1.  California Constitution, article I, section 1 .................... 10

     2.  Medical privacy rights for all records related to the
        members' status as medical marijuana patients
        pursuant to Evidence Code section 994 - Physician-
        patient privilege, and Civil Code §56 et seq., the
        Confidentiality of Medical Information Act. ................. 10

        a.  Relevant case law ............................................... 11

     3.  Evidence Code 1060 – trade secrets ............................ 12

     4.  Government Code section 7460 et seq., California
        Right to Financial Privacy Act ("RFPA) ..................... 13

        a.  Relevant case law – tax returns and other financial
           information. ........................................................ 11

   C. FEDERAL PRIVILEGES ERRONEOUSLY
      OVERRULED ...................................................................... 15

     1.  5th Amendment Privilege Against Self-Incrimination ...... 15
        a.  Affirmative defenses ........................................... 15
        b.  Affirmative claims in cross-complaint ................... 18

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

    c.  Corporation's right to assert 5th Amendment privilege ......... 19

2. First Amendment Protection of Freedom of Intimate
   Association. ................................................................. 20

3. Plaintiff's right to assert these privileges on behalf of
   its members ............................................................... 20

4. Mootness and laches considerations ............................ 21

D. ABUSE OF THE EX PARTE PROCESS RESULTING
   IN FUNDAMENTAL UNFAIRNESS ............................. 22

1. Defendant has had years to subpoena the banking
   records, and took no steps get them until its June
   2013 motion to compel ............................................... 24

III. CONCLUSION ...................................................................... 26

# TABLE OF AUTHORITIES

## FEDERAL CASE LAW

*Bates v. City of Little Rock* (1960)
361 U.S. 516 ................................................................. 21

*In re Administrative Subpoena Blue Cross \
Blue Shield of Massachusetts, Inc.* (D.Mass.2005)
400 F.Supp.2d 386 ..................................................... 8

*Kruger v. Apfel* (7th Circ. 2000).
214 F.3d 784 ............................................................... 1

*Lancer Arabians, Inc. v. Beech Aircraft Corp.* (M.D.Fla.1989)
723 F.Supp. 1444 ....................................................... 1

*N.A.A.C.P. v. Alabama* (1958)
357 U.S. 449 .............................................................. 21

*Neal v. Miller* (S.D.Ill.1982)
542 F.Supp. 79 ............................................................ 1

*United States v. Rivera-Guerrero* (9th Cir.2004)
377 F.3d ..................................................................... 2

## STATE CASE LAW

*Bearman v. Superior Court* (2d Dist. 2004)
1 Cal.Rptr.3d 644 ...................................................... 11

*Church of Hakeem, Inc. v. Superior Court, Alameda County* (1980)
110 Cal.App.3d 384 ................................................... 20

*City and County of San Francisco v. Pacello* (1978)
85 Cal. App. 3d 637 ................................................... 22

*Dana Point Safe Harbor Collective v. Superior Court* (2010)
51 Cal.4th 1 ............................................................... 19

*In City of Monterey v. Carrnshimba* (2013)
215 Cal.App.4th 1068 ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ 21

*Pacific-Union Club v. Superior Court* (1991);
 232 Cal.App.3d 60⎯⎯⎯⎯⎯⎯⎯⎯⎯ 20

*Qualified Patients Assn. v. City of Anaheim* (2010)
187 Cal.App.4th 734⎯⎯⎯⎯⎯⎯⎯⎯⎯ 19

*People ex rel. City of Dana Point v. Holistic Health* (2013),
213 Cal.App.4th 1016 ⎯⎯⎯⎯⎯⎯⎯⎯⎯ 14

*Valley Bank of Nevada v. Superior Court* (1975).
15 Cal.3d 652⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ 10

*Webb v. Standard Oil Co*. (1957).
49 Cal.2d 509⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ 15

## **FEDERAL STATUTES**

Federal Rules of Civil Procedure
Rule 72⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ 1, 2, 8

United States Code, Title 24
section 1320d ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ 8
[Health Insurance Portability and Accountability Act of 1996]
section 1983⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ 15, 16
section 1988  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ 15

United States Constitution
1st amendment⎯⎯⎯⎯⎯⎯⎯⎯⎯2, 7, 9, 20
5th amendment⎯⎯⎯⎯⎯⎯⎯⎯7, 15, 19, 24
14th amendment⎯⎯⎯⎯⎯⎯⎯⎯⎯ 20

## **STATE STATUTES**

California Constitution
article 1, section 1⎯⎯⎯⎯⎯⎯⎯⎯⎯ 10,13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Civil Code

section 56 ............................................................................ 10

section 3490 Confidentiality of Medical Information Act. ........ 21

Code of Civil Procedure

section 1985 ........................................................................ 14

section 1985.3 ..................................................................... 14

Evidence Code

section 994 .......................................................................... 10

Government Code

section 7460 [Right to Financial Privacy Act] ..................... 13

section 7470 ........................................................................ 13

section 7471 ........................................................................ 13

section 7474 ........................................................................ 13

section 7475 ........................................................................ 13, 14

section 7476 ........................................................................ 14

section 7480 ........................................................................ 14

section 7489 ........................................................................ 13

Health and Safety Code

section 11362.7 [Medical Marijuana Program Act] ............. 18

section 11362.81 ................................................................. 18

section 11570 ...................................................................... 18-19

section 128735 .................................................................... 11

**Local Rules**

Central District Court Rules

Rule 7-18 ............................................................................ 25

Rule 37-1 ............................................................................ 25

Rule 37.2-3 ......................................................................... 3

**TREATISE**

755 3 Witkin, Cal. Procedure (5th ed. 2008) Actions, § 70 ........... 19

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

**A.    RELIEF REQUESTED.**   Because of the limited time for preparation of this Motion for Review, Plaintiffs request the following relief, and allow time for fuller briefing if necessary:   1) Stay of the order requiring turnover of all corporate records, whether or not Plaintiff has had a chance to review them, which will result in irreparable harm due to the completely unnecessary disclosure of Cooperative members' names; 2) withdrawal of the Order for Production of Records issued to The Bank of Santa Barbara; and 3) an order to modify the scheduling order and to shorten time to bring a motion to dismiss Defendant's counter-claim alleging unlawful operation of Plaintiff's marijuana dispensary on grounds of mootness.  Alternatively, Plaintiff applies for an order that Defendant show cause as to why its counter-claim for unlawful operation of the Cooperative's dispensary should not be dismissed as moot.

Plaintiffs specifically request review of the order issued October 8, 2013. While Defendants may argue that an essentially similar order was issued on August 21, 2013 and therefore the deadline for review has passed, but that is not the case here; as the previous order was tentative.  Even if that were so, Rule 72's deadline for filing objections to a magistrate's decision is not jurisdictional, and does not bar the district court from considering late objections. *Kruger v. Apfel*, 214 F.3d 784 (7th Circ. 2000).   Moreover, the district judge has the authority to ignore the form of the decision and treat it as a Report and Recommendation, either denying or granting it.  See, for instance, *Lancer Arabians, Inc. v. Beech Aircraft Corp.*, 723 F.Supp. 1444, 1445-1446 (M.D.Fla.1989) [district court treated Magistrate Judge's decision granting motion to strike claim for punitive damages as motion to dismiss and construed it as report and recommendation subject to de novo review]; *Neal v. Miller*, 542 F.Supp. 79, 81 (S.D.Ill.1982) ["[T]he Court treats the magistrate's denial of leave to proceed in forma pauperis as a Report and

Recommendation"]; *United States v. Rivera-Guerrero*, 377 F.3d 1064, 1071 (9th Cir.2004) ["the district court should treat the magistrate judge's [dispositive] 'order' as proposed findings and recommendations []"). As discussed below, this order should be treated as dispositive under Fed. Rules Civ. Pro., § 72(b), given its dispositive effect on one of the substantive claims by Plaintiff regarding its members' constitutional and statutory right to freedom of assembly and association under the First Amendment.

## B.   CHRONOLOGY OF DISCOVERY DISPUTE

All dates are in 2013.

- May 3. Cooperative's Response to Demand for Production, Set One, is timely served, pursuant to several days' extension granted to Plaintiff by Defendant.

- June 5. Defendant moved to compel production of documents, despite having been notified the previous December that the corporate records were missing, and suspected to have been secreted by James Lee, a former corporate officer who had essentially gone into hiding at the same time the records were removed from the Cooperative's secure storage area. See Docket Item 84-1, ¶ 8, Declaration of Dana Rosenberg in Support Plaintiff 's Oppositions to Defendant's Motion to Compel Production of Documents, Set One. Defendant argued that Plaintiff's objections were untimely, improper, and could not be made regarding records that were not in the Cooperative's possession or control. It also sought sanctions for spoliation, accusing the Cooperative of complicity in the disappearance of the records. City also complained that its failure to file a joint stipulation was due to Plaintiff's failure to meet and confer. In fact, Defendant refused to meet and confer with newly retained co-counsel Gary S. Casselman while Ms. Rosenberg was unavailable, despite having communicated with him regularly for several months, including at an April 12, 2013 mediation in which he actively participated with Ms. Rosenberg and a representative of Plaintiff Cooperative. Hearing was set for July 7, 2013

2

- June 26.  Magistrate Judge Kenton phoned the parties, desiring to hold the hearing telephonically at that moment, without notice.  Among other things, he ordered on that date that a Joint Stipulation be filed and that the motion to compel be refiled. Docket Item 88, Minutes vacating motion to compel etc.  Defendant was given one week to prepare its portion before turning it over to Plaintiff (June 26 to July 3).  Plaintiff was given less than two days to complete its portion (July 3 to July 5).

- July 8.  The Joint Stipulation was filed together with a newly noticed motion to compel by Defendant set for hearing on August 8, 2013.

- July 15.  Plaintiff Cooperative filed a Supplemental Memorandum of Law in support of its opposition, as is allowed by Local Rule 37.2-3.

- July 26.  The Magistrate Judge issued a tentative decision stating, *inter alia*, that Plaintiff's responses to the demand were timely; that there was no spoliation; and requesting declarations responsive to the types of records which were missing from the Cooperative's storage facility and what has been done to get them back.

- July 29.  The City set the deposition of James Lee for this date in Walnut Creek, California.  Mr. Lee is the former corporate officer of the Cooperative estranged from the Cooperative, and who was believed to be responsible for the disappearance of the records stored after the Cooperative was shut down via federal authorities' threats to seize the landlord's real property if it did not terminate the Cooperative's lease.  Relying on the City's representations that Mr. Lee had been properly served, Mr. Casselman traveled to Walnut Creek for the deposition.  Mr. Lee did not show up.

- August 2.   Plaintiff filed declarations responsive to the July 26th order.

- August 6.  Hearing on Defendant's motion to compel was had.  The Reporter's Transcript is filed as Exhibit A hereto to the Declaration of Gary S. Casselman.

- The court did not address the federal constitutional privileges in any detail,

except to state that he did find any evidence in the City's filings that it intended to attempt to prove criminal conduct (Reporter's Transcript, pp. 7:17-25, 8:1-14), thus the Cooperative's First and Fifth Amendment claims of privilege were without merit.  The court did not address the state court privileges in any capacity whatsoever.  The Magistrate Judge ruled that the Cooperative's banking records be delivered as received from the bank directly to Defendant "with the packaging undisturbed;" that tax returns be provided; and that the court remain apprised of any developments with attempts to depose Mr. Lee.  If Plaintiff is unable to access banking or tax records, the court will issue orders to the banking and taxing entities for production of the documents if proposed orders are supplied by August 19th.  In fact, that is what occured. The court agreed that any further motions will be noticed, and not held ex parte. RT 48: 22-25.

- August 8.  James Lee sends an email to City Attorney Ostrenger shortly after 4:00 a.m. stating, among other things that he will not show up for deposition and has never been served; it was his father who has been repeatedly served. Ms. Ostrenger does not notify Plaintiff's counsel of this email until approximately 1:44 p.m. Plaintiff's counsel was justa bout to leave for his second flight to Northern California.

- August 20.  Facilitated by James Lee's newly retained counsel, Reid Breitman, the missing corporate records arrive at the office Plaintiff's counsel Casselman in Venice Beach, California.   There are ten large boxes of files.

- August 26.   Plaintiff's counsel Rosenberg is able to retrieve the boxes from Mr. Casselman in Venice Beach, California, and confirm that they are in fact the corporate records.   Plaintiff suggests that the trial date be continued to allow for review of the records, and the parties so stipulate.

- August 28 through now.  With the exception of the periods encompassing the Jewish High Holy days of Rosh Hashanah, Yom Kippur, and Purim, Plaintiff's

counsel Rosenberg has worked each day reviewing and organizing the disastrously shuffled documents.  Each box of approximately 3000 – 4,000 pages is highly disorganized and no previous estimations of time for completion of organization and review have been accurate, including because of Defendant's discovery motions, and the multiple and repeated short-term requirements of oppositions and responses to court orders.  As explained below, it is essentially a job for a large firm outside document review service, but Plaintiff's counsel Rosenberg is working alone due to lack of resources and funding, and is additionally slowed by a chronic medical condition.

- September 3.  The court orders the trial date moved to December 10, 2013, with the discovery cutoff remaining at August 5th "except for any issues pending with respect to City's Motion to Compel Production of Documents, and the deposition of James Lee will be taken."

- September 12, 2013.  Plaintiff's counsel Rosenberg retrieves the banking records from The Bank of Santa Barbara after being notified the previous afternoon that they were ready.  Upon being handed a memo indicating that check images are included, she opens the box and the records, and sees that thousands of images of checks containing names and bank account numbers of members are included, which was not expected.  See Docket Item No. 112-1, Declaration of Dana Rosenberg Responsive to September 25, 2013 order, filed October 1, 2013.  The box is mistakenly delivered to the copy shop for copying, which, however unintentionally, violates the August 6, 2013 order that they be delivered directly to Defendant "with the packaging undisturbed."

- September 23.  City moves ex parte, apparently in violation of the agreement made on the record at the August 6 hearing, for an order "as to Further Hearing on Motion to Compel Production of Documents and Sanctions for Failure to Comply with Court Ordered Discovery re Discovery Hearing."  Docket Item 107.   Plaintiff is given two hours' notice before the 40+ page motion is filed.

- <u>September 17</u>.  Copying of the banking records is completed and they are delivered to the City after removal of the check images showing members' names and bank account numbers.   Counsel begins redaction of those records. Tax documents having been received from the Franchise Tax Board and State Board of Equalization, those documents are copied and provided to Defendant together with the Jan – Nov. 2010 purchase orders from member cultivators (which use pseudonyms instead of real names, but show prices paid for medical marijuana).  Dec. 2010 purchase orders have not yet been located and the remaining purchase orders are shuffled among the boxes and in the process of being organized.

- <u>September 24</u>.  In the late afternoon City counsel Tava Ostrenger gives notice of an ex parte motion to compel production of complete banking documents and to determine a "date certain" for production of the corporate records recently returned by James Lee.  She is advised the banking records can be retrieved from the copy shop, but states that the City will not accept redacted records. She is advised that some of the corporate records are in fact ready for inspection, but advises the City does not want to accept the records "piecemeal."

- <u>September 25</u>.  Prior to the time Plaintiff is able to file its opposition to the ex parte motion (though it was filed that evening), Magistrate Judge Kenton issues a  minute order (Docket No. 108) requiring declarations about Plaintiff's counsel's receipt and handling of the banking records and corporate records be filed by October 1, 2013, together with filing of any written requests for the tax records (which records had already been produced), and setting the matter for hearing on October 8, 2013.  Plaintiff's opposition is filed that evening. Docket No. 109.

- <u>October 1</u>.  The court orders the transcript of the August 6 hearing.

/// ///

- October 4.   The court issues a tentative decision finding that Ms. Rosenberg's September 25, 2012 declaration explaining f her handling of the banking records indicates an intentional violation of the August 6, 2013 order, and it affirms its intention to sanction Plaintiff's counsel $10,000 for violation of the order to deliver banking records in their packaging "undisturbed."  The court summarily overrules all federal privileges, finding that Defendants are seeking "only civil penalties," and that "Plaintiff has expressed no more than a subjective fear of reprisal or other adverse impact which is insufficient to show an infringement of associational rights," thus the 1st and 5th Amendment privileges are inapplicable.  The court does not address the state court privileges, though expressly invited to do so by Plaintiff's counsel Casselman. RT August 6, 19:12-18, 20:7-14; 32:12-25, 33:1-21.  After citing to the section of Plaintiff's briefing that sets forth federal constitutional privileges, Magistrate Judge Kenton claims that his opinion sufficiently addresses it:  "I then deal with that." RT: 33:9.  Because he again ignores the state law privileges, Plaintiff's counsel Casselman asks "Where is the statutory -- state statutory privacy" RT 33:13-14, referring to state statutory privacy rights, apparently never referenced in any verbal or written order or reasoned opinion.  Mr. Casselman is cut off by the court: "You know, you are getting to the point now where you're not going to be able to argue much longer.  That's disrespectful.  That's the order."  RT 33:15-17.

- The court does not address the evidence submitted under oath, including citations from Defendant's own pleadings and statements of the City attorney, showing that its intention is to prove criminal conduct, based its theory that an "illegal business has no 'due process' rights." See section C.1.a. below.   It determines that there are only two categories of privileged documents in the thus-far reviewed voluminous corporate records returned by James Lees,

/// ///

- medical records (as defined by HIPAA), and attorney-client privileged documents.  Docket Item 117.

- October 8.  Hearing on Defendant's ex parte motion.   The court affirms its intention to sanction Plaintiff's counsel, and refuses to address any of the state law privileges.  Another order for banking records is issued, this time ordering production directly to the City, in violation of Government Code sections 7470 and 7471.  I orders that all recently returned corporate records be handed over the City whether or not reviewed by the Plaintiff by that time, and without redactions.  Although the City indicates that October 25, 2013 is an acceptable date, the court orders the records be handed over by October 15, 2013, the same day as the briefing on the order to show cause re imposition of $10,000 in sanctions.  It issues an oral protective order stating that the City may use the names of members for its own purposes only.  It refuses to address the state court privilege issues.  Minute order is issued, Docket No. 120.

## II.        REVIEW REQUESTED

**A.        DISPOSITIVE NATURE OF THE RULING.**  Local Rule 72-3.3 requires that in "matters covered by F.R.Civ.P. 72(b)," i.e. dispositive matters, the magistrate judge must "file a report which may contain proposed findings of fact, conclusions of law and recommendations for disposition."  The fact that this matter is based in pre-trial discovery procedures does not make it non-dispositive; see, for instance, See, e.g., *In re Administrative Subpoena Blue Cross Blue Shield of Massachusetts, Inc.,* 400 F.Supp.2d 386 (D.Mass.2005), in which the court found the government's motion to compel production of documents pursuant to an administrative subpoena to be "dispositive" of litigation before court because it determined the rights of the parties at dispute in the litigation.  Here, Plaintiff's cause of action for violation of its members' constitutional rights of freedom of association and freedom of assembly is based in large part upon the sections of the City's ordinance that allows unlimited, warrantless access to privileged and

confidential collective records –the same records are sought here. That cause of action, brought by the Cooperative on behalf of its members, survived a motion to dismiss without any question of the corporation's standing to assert the constitutional and privacy rights of its members.

Yet all such rights have been overruled by the magistrate judge, with no report filed in this case.   All privileges based in federal law were summarily dismissed with the briefest of explanations, while state law privileges were not addressed at all.   But the court's ruling, by forcing revelation of the identities of the Cooperative's members –employees, cultivators, volunteers, patrons, etc., all of whom are either qualified patients or qualified caregivers – eviscerates the claims stated in the Cooperative's First Amended Complaint that it has a right to protect the identities of its members from the City in order to preserve those members' privacy, their right of free association and assembly, their right to avoid self-incrimination, and to protect the trade secrets and other information essential to the operation of the Cooperative as an entity that provides safe, private, trustworthy, education-backed  distribution of quality controlled and tested medical marijuana. See Declaration of Nathaniel Reinke, filed concurrently herewith.

This court's November 29, 2011 ruling on the City's motion to dismiss this matter overruled the City's contention that the possibility of Plaintiff's reopening a dispensary is too "remote and speculative" to create a "tangible prejudice to the existing interests" of Plaintiff; that ruling stated: "The court holds that Plaintiff is not barred from opening a dispensary under California law." 11/29/11 Order Granting In Part And Denying In Part Defendant's Motion To Dismiss at 5:28-6:2; 19:22-23.  But regardless of whether or not the Cooperative chooses to reopen a storefront dispensary, it still has the right, currently, to engage in cultivation and distribution of medical marijuana.  It cannot do that where there would be a withdrawal of members, whom it has an obligation to inform if their names and personal identifying information –including bank account locations and account

1  numbers, driver's license photocopies, social security numbers, home and work

2  addresses, phone number and email addresses, etc. – have been provided to the

3  local agency that has been trying for many years to eradicate medical marijuana

4  from the City.

5  **B.    STATE LAW PRIVILEGES NOT ADDRESSED PRIOR TO**

6  **RULING AT ISSUE**.  Federal Rules of Evidence Rule 501 provides in pertinent

7  part: "[I]n a civil case, state law governs privilege regarding a claim or defense for

8  which state law supplies the rule of decision." Despite this, Magistrate Judge

9  Kenton would not address, in any manner, any of the many state law privileges set

10  forth in the record.  Following is a summary of the state court privileges that

11  argued in the Cooperative's briefing, all of which are applicable to one or all of the

12  banking, tax, and general corporate records recently returned to the Cooperative b

13  Mr. Lee.

14  **1.    California Constitution, article I, section 1.** Even within a

15  year of the 1974 Amendment to this state's constitution elevating the right of

16  privacy to an "inalienable right" expressly protected by force of constitutional

17  mandate, California courts have consistently held that such privacy "extends to

18  one's confidential financial affairs as well as to the details of one's personal life."

19  *Valley Bank of Nevada v. Superior Court*, 15 Cal.3d 652, 656 (1975).

20  **2.    Medical privacy rights for all records related to the**

21  **members' status as medical marijuana patients pursuant to Evidence Code**

22  **section 994 - Physician-patient privilege, and Civil Code §56 *et seq*., the**

23  **Confidentiality of Medical Information Act**.  The third party medical records in

24  the Cooperative's care are strictly confidential, and privileged under these statutes,

25  as is all information identifying them. Civil Code § 56(g).   It is worth noting that

26  California's Legislature has created a Joint Task Force on Personal Information

27  and Privacy to investigate and recommend changes to existing laws on use and

28  distribution of personal information to ensure that state law protects the right of

10

privacy.  1996 Stats. ch. 1025 § 3.  That task force has been greatly concerned with distribution of information collateral to actual records of medical condition or medical care held by a health care provider or pharmacy.  The same bill that created the task force amended Health and Safety Code § 128735 governing the detailed reporting requirements on discharged patients imposed on health facilities to exempt social security numbers and other data that might identify patients from the Public Records Act disclosure requirements and to declare: "It is the intent of the Legislature that the patient's rights of confidentiality shall not be violated in any manner."

      **a.**    <u>**Relevant case law**</u>**:**  In *Bearman v. Superior Court*, 11 Cal.Rptr.3d 644 (2d Dist. 2004), the appellate court held that a government agency ( in this case the State Medical Board seeking judicial enforcement of a subpoena for a physician's medical records), cannot delve into an area of reasonably expected privacy under the state constitution simply because it wants assurance the law is not violated – just as Defendant City seeks to do here.   The court held that the government entity must demonstrate through competent evidence that the particular records it seeks are sufficiently relevant and material to its inquiry so as to allow the trial court to independently make a finding of good cause to order the materials disclosed.

      *There has been no showing of relevance here.*   First, the City has developed <u>no evidence whatsoever</u> that the Cooperative, or its now-closed dispensary for that matter, operated illegally.  It must first develop that evidence, without discovery, and it has not done so.  Second, the Cooperative has repeatedly stipulated to the facts that City contends it needs the records to prove up.  As stated in the Joint Stipulation of Unresolved Matters re Plaintiff's motion to compel (filed July 8, 2013) at pp. 18-23, 26, 34, 39, 41, 44-24, 49, and 73 (Docket Item 90-1) –among other places –  the Cooperative will stipulate to virtually all the facts that City contends make it a criminal operation:  that it sold marijuana on the premises; that

it made enough of a profit to run the dispensary (though it never made enough money to actually pay off its debt and become a profitable operation); that it sold marijuana at a higher price than paid to its members who were cultivators so that it could profit from the purchase and run the dispensary business; that it did not grow its marijuana at the location of the dispensary but transported it from another location; that the Cooperative itself was not a qualified caregiver, nor were all its members qualified caregivers –most were qualified patients; that start-up capital was expended which was not itself earned via the Cooperative; that employees were paid money, and did not work strictly for barter in marijuana, etc. etc. etc. None of these admissions renders the Cooperative illegal or criminal, or renders its <u>formerly operating</u> dispensary a nuisance –which cannot now be abated in any event, as it is long closed.

See also section C.1.a below, further addressing the uselessness of seeking discovery to support the flawed defense that if shown to be a criminal organization, the Cooperative would have no constitutional rights to enforce.

**3.**   **<u>Evidence Code 1060 – trade secrets</u>.**   Revealing the identities of the Cooperative's members would compromise information from which the Cooperative and its members derive benefit specifically because the information is not generally known to others, and about which the Cooperative and its members make efforts to maintain secrecy.  Further, the recently returned boxes of corporate records contain (as Plaintiff's counsel's review has shown so far) or are likely to contain, information implicating trade secrets such as business plans and  management guidelines; employee handbook; credit card processing and inventory tracking programs; trade secrets regarding marijuana strains and uses; recipes for marijuana edibles and other marijuana products such as salves and oils; etc.  Just as in any other business, a dispensary's patron list is a trade secret, and documents revealing those patrons, such as copies of checks, credit card receipts, and other banking records.  This privilege is especially sensitive in a controversial

business such as that run by a medical marijuana Cooperative, which includes information about growers / vendors and where, and whom, a dispensary obtains its merchandise.  This information is that which allows a particular dispensary to be preferred by its patrons, and is indispensable to maintaining any sort of advantage over competing dispensaries.

     **4.**    **Government Code section 7460 et seq., California Right to Financial Privacy Act ("RFPA").**  California's RFPA protects strict confidentiality of records of individuals, business entities, and associations, and provides that "Evidence obtained in violation of this chapter is inadmissible in any proceeding except a proceeding to enforce the provisions of this article." Govt. Code, § 7489.  Sections 7470 and 7471 of the Act prohibit local agencies from requesting records, and prohibit banks from authorizing disclosure of the records, except under certain conditions, *which are not met here*.  Section 7470(a)  provides in relevant part that "Except as provided in Section 7480 [discussed below], no officer, employee, or agent of a state or local agency or department thereof, in connection with a civil or criminal investigation of a customer, whether or not such investigation is being conducted pursuant to formal judicial or administrative proceedings, may request or receive copies of, or the information contained in, the financial records of any customer from a financial institution," unless the request meets several conditions.  [Emphasis added].  The records must not only be "described with particularity" *but also* be "consistent with the scope and requirements of the investigation giving rise to such request."  Subdivisions (1) through (4) of section 7480 state that if the disclosure is not authorized by the customer, as here, disclosure must be "in response to an administrative subpoena or summons which meets the requirements of Section 7474;" or "in response to a search warrant which meets the requirements of Section 7475;" or "in response to a judicial subpoena or subpoena duces tecum which meets the requirements of Section 7476."

Here there are no applicable exceptions.  Section 7480, referenced in subdivision (a), excepts records "not identifiable as derived from records of a particular customer," and records disclosed after the bank receives from law enforcement or the District Attorney certifies "in writing that a crime report has been filed" involving fraud.  This request is not responsive to an administrative subpoena and summons, nor a search warrant.

Further, even assuming a court order such as issued here is the equivalent of a "judicial subpoena" and therefore eligible to potentially meet the requisites of section 7470, which is questionable,[1] it does not meet the requirements of Government Code section 7476. That section requires, *inter alia*, that the "subpoena or subpoena duces tecum is issued and served upon the financial institution and the customer in compliance with Chapter 2 (commencing with Section 1985) of Title 3 of Part 4 of the Code of Civil Procedure and the requirements of paragraph (2) or (3) have been met."  The referenced provisions of the Civil Code define subpoenas and the scope of their use; a court order does not meet the definition of subpoena set forth in Civil Code section 1985, and even if it did, the method of service has not been met.  For instance, Civ. Code, § 1985.3 requires, where the personal records of a consumer are to be produced (as with the images of a third party checks at issue here), that those persons must be served with a copy of the subpoena so that they are afforded 10 days to quash it.  No such steps were taken here; instead, the court has ordered the Bank to release images of checks which contain the names, and bank account numbers, of third parties: members of the cooperative, and all without affording these individuals any notice

---

[1]   The circumstances under which a court or administrative order is equivalent to a subpoena vary with the circumstances.  For instance, in *Dana Point Safe Harbor Collective v. Superior Court*, 51 Cal.4th 1 (2010), the court cited earlier precedent to find that "an administrative subpoena is not equivalent to a discovery order" in determining that such order was appealable as a final order.

or opportunity to contest the order.

       **a.**     <u>**Relevant case law – tax returns and other financial information**</u>.  California recognizes a privilege protecting tax returns from disclosure, with the goal of facilitating tax enforcement by encouraging a taxpayer to make full and truthful declarations in his return, without fear that his statements will be revealed or used against him for other purposes.  *Webb v. Standard Oil Co*., 49 Cal.2d 509, 513  (1957).  As stated by the *Webb* court, "If the information can be secured by forcing the taxpayer to produce a copy of his return, the primary legislative purpose of the secrecy provisions will be defeated. The effect of the statutory prohibition is to render the returns privileged, and the privilege should not be nullified by permitting third parties to obtain the information by adopting the indirect procedure of demanding copies of the tax returns."  *Ibid*.

       The City contends the Cooperative has put its finances at issue by claiming damages; see, eg, p. 81 of the Joint Stipulation of Unresolved Matters filed July 8, 2013 with City's second motion to compel production.  But Plaintiff's damage claims did not survive the November 2011 motion to dismiss; therefore Plaintiff is left with its case for violations of due process and freedom of assembly, which turn only on whether those violations occurred, and thus merit nominal damages triggered by the provisions 42 USC § 1988.   Defendant City's pursuit of a defense to a now non-existent claim is disingenuous, irrelevant and moot.

## C.    <u>FEDERAL PRIVILEGES ERRONEOUSLY OVERRULED</u>

       **1.**     **5th Amendment Privilege Against Self-Incrimination.** The privilege applies both in relation to evidence sought by the City to prove up  its affirmative defenses by showing the dispensary was a criminal operation; and to its affirmative claims as stated in the cross-complaint that the Cooperative's dispensary was a public nuisance.

       **a.**     <u>**Affirmative defenses.**</u>  First, there is no basis for City's contention that "proof" of criminal activity is a defense to a section 1983 action.

15

There is no authority, and none has ever been provided, that would show that allegations of criminal activity, or even *proof* of a plaintiff's status as a criminal, render that plaintiff without civil rights that can be violated –even convicted, jailed felons have civil rights that can be violated.  As it should go without saying, especially when said to a city attorney who regularly defends cases section 1983 brought by convicted, incarcerated persons, even criminals have civil rights.

Not surprisingly, the grant of preliminary injunction issued in November of 2011, and the partial denial of the motion to dismiss in November 2012, both reject the City's contentions as not relevant to the Cooperative's constitutional claims. Moreover, the Ninth Circuit's panel of three justices refused to consider the City's arguments and "evidence" of illegality during its appeal of the grant of preliminary injunction. Their opinion refusing to consider this "illegality" argument is underscored by the fact that the City put into the appeal record evidence that the Cooperative had received notice from federal law enforcement that its operations were illegal under federal law. Repeating the findings of Judge Pregerson, the three Ninth Circuit justices held that this case is not about whether medical marijuana is illegal.

Despite Magistrate Judge Kenton's contention that there is no evidence that the City is seeking to show or prove criminal acts,[2] the City has repeatedly made

---

[2] During the August 6, 2013 hearing on the City's motion to compel, the court repeatedly stated that it does not agree that the City wants to demonstrate that the Cooperative is a criminal organization.  It stated it has "seen  argument after argument that they [the records sought] have no relevance, but in terms of proving criminal activity, I don't think -- this is not a criminal case. The City Of Santa Barbara is alleging that the entity, the collectives, did not operate under law and regulation. Operated as a for-profit entity and wants to look at financial records" (Transcript of Proceedings, 8:8-14); that "all this argument about they won't show criminal activity misses the point. It's like any other business" 10:18-20.  When counsel attempted to point out that the claim of criminal activity was written into the pleadings, the magistrate judge confused the affirmative defenses and claims, and referring to the cross-complaint stated, "No, no, no. That's not what the -- that's not what the −  . . .  I have -- do you want me to read from it here up on the bench. I mean, I've read it. What they're saying is that it was operating as a -- you

1  clear that its defense depends entirely on such "proof."  Just some examples are as

2  follows:

3       --City's Opposition to Plaintiff's Motion for Preliminary Injunction, pp. 23-

4  24. Section VII of this document is entitled "This Is A Moot Dispute With

5  Circumstances Where SBPCHC Is Ultimately Unlikely To Prevail And Where

6  There Is An Absence Of Irreparable Harm - All Involving A Business Which, At

7  This Point, Appears To Be A Criminal Drug Selling Enterprise." City's opposition

8  sums up its argument by stating that "SBPCHC is not a legal business and is, in

9  fact, a criminal drug enterprise retailing marijuana in a manner contrary to state

10  and federal controlled substances laws. This hardly entitles them to an injunction

11  keeping their doors open." That argument was rejected by Judge Pregerson, and the

12  injunction was granted.

13       --City's appeal of the grant of preliminary injunction, pp.12, 51-52. City took

14  its unavailing "criminal enterprise" argument to the 9th Circuit, again arguing that

15  the Cooperative had no civil rights because it was a criminal enterprise. It stated in

16  its opening brief that "operation of the SBPCHC dispensary is a crime prohibited

17  by the California Health and Safety Code;" and rhetorically asked the appellate

18  court: "[H]ow is it that an apparently criminal enterprise is afforded such a

19  'balancing' and an assumption of 'vested rights' is made for it. Admittedly, this is an

20  odd situation - one does not often find a criminal enterprise filing a lawsuit against

21  a public entity and claiming that their due process rights have been violated[.]"

22       -- City's 9th Circuit Reply Brief simply restated those arguments, for

23  instance stating at p.3 that "the SBPCHC storefront collective violates state

24  criminal statutes," and alleging "on-going criminal conduct" at p.9. Again that

25

26

27

28

---

know, outside of the scope of the boundaries that are allowed under -- what is it? -- the Compassionate Use Act or the State -- I read it a few weeks ago. So, as i read it, they're basically saying this operated as a for-profit business." Defendant City's pursuit of a defense to a now non-existent claim is disingenuous, irrelevant and moot.

1    argument was defeated, and the case was returned to the District Court.

2        --Correspondence to Cooperative's counsel from Steven Wiley, lead City

3    Attorney. Early this year, when settlement talks were on track and the City

4    attorneys with whom plaintiff's counsel were dealing expressed interest in a

5    settlement for fees only, the settlement negotiations were interrupted by City

6    Attorney Stephen Wiley, who sent an email restating the City's thrice-rejected

7    argument that the Cooperative and its members are criminals: "Our position is that

8    an illegal business has no 'due process' rights and ultimately when the City proves

9    up our counter claim, Judge Pregersen [sic] will agree with us that a [sic] enterprise

10   proven to be a criminal operation cannot have its 'right' to stay open violated nor

11   can it receive 'nominal' damages - especially when the City never closed it down."

12   Exhibit E to Declaration of Dana Rosenberg in Support of Opposition to

13   Defendant's Ex Parte Request for Re-Hearing, etc., filed September 25, 2013.

14        **b.    Affirmative claims in cross-complaint.** Although the

15   magistrate judge correctly perceived that the City's cross-complaint alleges a civil

16   public nuisance, he did not consider the implications of proof.  In order to "prove"

17   that the Cooperative's dispensary was a nuisance, the City would have to prove

18   that it was not complying with the Medical Marijuana Program Act ("MMPA"),

19   Health & Safety Code section 11362.7 *et seq*.   Any use, cultivation, or distribution

20   of marijuana by someone who does not qualify under the MMPA, or who violaties

21   the MMPA despite being a qualified patient or caregiver, is a crime under

22   California's Uniform Controlled Substances Act, and subjects that person to

23   criminal penalties, including imprisonment and fines.  Health & Safety Code §

24   11362.81.

25        In sum, labeling a dispensary a "public nuisance" is tantamount to accusing

26   its managing members of criminal activity.  Health & Safety Code § 11570

27   provides that "Every building or place used for the purpose of unlawfully selling,

28   serving, storing, keeping, manufacturing, or giving away any controlled substance

                                              18

1   ... is a nuisance which shall be enjoined, abated, and prevented, and for which

2   damages may be recovered, whether it is a public or private nuisance." Although

3   section 11570 does not contain criminal penalties, the MMPA does, nuisance

4   actions, including and especially those against medical marijuana dispensaries, are

5   widely recognized as quasi-criminal in nature. *Qualified Patients Assn. v. City of*

6   *Anaheim* 187 Cal.App.4th 734, 755 (2010); 3 Witkin, Cal. Procedure (5th ed.

7   2008) Actions, § 70, p. 144.

8             **c.      Corporation's right to assert Fifth Amendment**

9   **privilege.** Defendant City contends that the Cooperative, as an entity, has no Firth

10  Amendment right to avoid incriminating itself.  However, while a corporation may

11  not be entitled to purely personal guarantees, that is, those constitutional rights that

12  have historically been granted to protect individuals, it may assert Fifth

13  Amendment and other constitutional privileges on behalf of the Cooperative's

14  members.  In *People ex rel. City of Dana Point v. Holistic Health*, 213 Cal.App.4th

15  1016 (2013), the court ruled on the ability of a medical marijuana dispensary's

16  corporate custodian of records to withhold documents under the Fifth Amendment

17  privilege. The individual custodian of records may not be sued, but someone has to

18  produce the records, and, even if they were available, that person would have the

19  right to invoke the Fifth Amendment privilege. In *Holistic Health*, the City of Dana

20  Point argued that the Fifth Amendment claim of privilege by the defendant's

21  custodian of records prevented it from ascertaining how Holistic Health calculated

22  its asserted net loss, and therefore prevented the City from attacking Holistic

23  Health's evidence that it did not operate for profit. Defendant City in the matter at

24  bar does not say how it would be adversely affected by invocation of the Fifth

25  Amendment, but it would undoubtedly claim some similar detriment. The Holistic

26  Health court discusses the limited reach of the Fifth Amendment in civil cases, but

27  ultimately rules that the privilege was properly invoked, and that the state's

28  Discovery Act was not a proper basis for the trial court to exclude evidence of

medical marijuana collective's Compassionate Use Act (CUA) defense to city's nuisance abatement and illegal business practices claims.

### 2.   First Amendment Protection of Freedom of Intimate Association.

**Association.**  Plaintiff objects to disclosure of the identities of individual members of the Cooperative on grounds of First Amendment freedom of association and assembly grounds, because the Cooperative is a private organization, not open to the general public, and uses a highly selective membership process that is purely private.  Its members are thus entitled to First Amendment protection of their freedom of intimate association. *Pacific-Union Club v. Superior Court*, 232 Cal.App.3d 60 (1991); *Church of Hakeem, Inc. v. Superior Court, Alameda County*, 110 Cal.App.3d 384 (1980). Plaintiff's pending First Amendment claim asserts that disclosure of Cooperative's members' identities (as purportedly allowed by the inspection provisions of Defendant City's Marijuana Dispensary Ordinance) is violative of the 1st and 14th Amendment rights of the Cooperative and its members – the Cooperative will not abandon that assertion for purposes of discovery.  Cooperative can only exist and function where its members have the right to be protected from disclosure of members' identities, which would stifle their right to associate and assemble for the purposes of cultivating safe, high quality medical marijuana that can be distributed in a manner that does not threaten the safety and welfare of its members, and for the purposes of communication, education, and advocacy regarding medical marijuana.

### 3.   Plaintiff's right to assert these privileges on behalf of its members.

**members.**  Plaintiff Cooperative asserts on behalf itself and its members the right to be protected from disclosure of members' identities, which would not only incriminate them pursuant to Defendant City's repeated claims that the Cooperative is criminal organization, but would stifle their right to associate and assemble for the purposes of cultivating safe, high quality medical marijuana that can be distributed in a manner that does not threaten the health, safety, welfare and

1   general well-being of its members, and for the purposes of  communication,

2   education, and advocacy regarding medical marijuana.

3         Not surprisingly, an association's right to assert these privileges on behalf of

4   its members is often associated with important civil rights, as it is here.  See, for

5   example the US Supreme Court rulings in *N.A.A.C.P. v. Alabama*, 357 U.S. 449,

6   458-459 (1958) [where an association's nexus with its members is sufficient to

7   permit that it act as their representative, the association has standing to assert

8   constitutional rights pertaining to the members who are not parties to the

9   litigation]; and *Bates v. City of Little Rock*, 361 U.S. 516 (1960) [City could not

10  require disclosure of NAACP membership list where identification of persons as

11  members of the organization exposed members to harassment, community

12  hostility, and economic reprisals].

13              **4.    Mootness and laches considerations.**  Though the

14  Cooperative was prevented from effectively briefing and arguing these

15  considerations by the intensely abbreviated briefing schedule repeatedly assigned

16  to it by the magistrate judge, there are important considerations related to the

17  City's belatedly instituted nuisance allegations. The City never took any steps to

18  abate the Cooperative's operation as a "nuisance" when it existed; now that it is

19  long closed, the issue is moot.  *In City of Monterey v. Carrnshimba*, 215

20  Cal.App.4th 1068, 1074 (2013) the city's nuisance action against an unpermitted

21  dispensary was ruled to be moot because after the permanent injunction expired,

22  the dispensary vacated the property where they operated.

23        Even if there were no mootness, laches should preclude any prosecution of

24  the cross-claims, let along initiation of discovery on that pleading, given the gross

25  prejudice to Plaintiff in this regard, whose dispensary doors have been closed for

26  18 months, and who can no longer demonstrate how it operated perfectly within

27  the bounds of the MMPA.  While it is true that there is no statute of limitations

28  defense on an action to enjoin or abate a public nuisance (Civ. Code, § 3490),

laches has been found to be a valid defense where both prejudice to the defendant
and an unexplained delay are shown. *City and County of San Francisco v. Pacello*,
85 Cal. App. 3d 637  (1978).    The City never gave the Cooperative any notice that
its dispensary was violating any law or ordinance – not even in its notice of closure
under the Revised Ordinance. The first time the City had ever alleged the
dispensary was a nuisance and illegal was in its defense of this lawsuit.  The City
never even investigated its own "illegality"  allegations until it was time to prepare
for the hearing on the preliminary injunction. Even after that "investigation," the
City never took any action to back up its allegations with any enforcement action.
And now it is too late to even try to enforce or prosecute these self-serving
allegations.

     **D.**     **<u>ABUSE OF THE EX PARTE PROCESS RESULTING IN
FUNDAMENTAL UNFAIRNESS</u>** On August 6, 2013 a hearing was held on
defendant City of Santa Barbara's motion to compel. Magistrate Judge Kenton
issued orders compelling production of tax records and banking records of
Plaintiff. Docket Item 98.  At the hearing  two months ago, Plaintiff's newly joined
co-counsel, Gary Casselman stated: "... I would only ask that if a request is made
to the court [by defense counsel] that it be made not ex parte or under seal but to
allow adequate time to respond." Magistrate Judge Kenton responded: "I don't see
a problem with that." Reporter's Transcript, 8/6/2013, p. 48:22-25.

     On August 20, 2013 Plaintiff's counsel Casselman received ten banker's
boxes of corporate records via UPS from estranged former corporate officer James
Lee. No orders had been made as to such records earlier as they were not in the
possession of Plaintiff or its counsel of record. These records, containing
confidential patient information, including members' names, social security
numbers, patient history, etc. were delivered in an unorganized jumble estimated to
be at least 30,000 pages. Ms. Rosenberg began to review and organize the

records,[3] but has only gotten through some 5,000 pages. On October 1, 2013

defense counsel, impatient with the pace of review of records, and notwithstanding

the court's promise to disallow ex parte motions, filed a 40+ page ex parte

application to compel immediate production of the unredacted, unreviewed

corporate records, as well as production of unredacted unreviewed bank records.

Docket Item 107.

Plaintiff's counsel had to scramble to assemble a response in less than a day

to an application that clearly had taken days, if not weeks to prepare, including an

accountant's declaration, devoid of any affirmation that he had any familiarity with

these type of records, asserting that he needed to have unredacted checks and

deposit slips with member's names to compare to corporate records which he has

never seen.

Plaintiff did not have time to file a counter declaration of an accountant

demonstrating why the members' names were unnecessary, but did explain the

obvious logical flaw in the defense accountant's claim that he needed the names on

the checks in order to properly determine the accounting. See Docket Item 109,

Plaintiff's Opposition and Objection the City's ex parte motion to compel

production, pp. 10:21-12:14.  In sum, the City has no list of members.  It has no

keystone from which to determine whether any particular name is a name of a

member or not; it is only redaction of those names that could possibly determine

whether any check was issued to or from a Cooperative member.   An it certainly

had no explanation of why it would want those member's bank account numbers

---

[3] While co-counsel Casselman is a highly experienced civil rights lawyer and has
extensive familiarity with and command of the privilege issues related to the records, he
has no familiarity or experience with medical marijuana cooperative or dispensary
records in particular.  Thus it was appropriate for Ms. Rosenberg to review and identify
confidential information. Ms. Rosenberg has no support staff and her review of the
records retrieved from Mr. Casselman was further delayed by the Jewish holiday season
and Ms. Rosenberg's disability, which has been revealed to the court in a prior sealed
filing. Doc.

off their checks.   Magistrate Judge Kenton did not address this issue, and swiftly
issued a tentative opinion sanctioning Plaintiff's counsel for breaking the seal on
the bank records, and indicated a tentative decision to impose a $10,000 sanction
and a further hearing date.

On October 8, 2013 a nearly two hour hearing occurred before the
Magistrate who swept aside all First and Fifth Amendment objections, refused
several requests to explain why he had not considered or had overruled California
Financial Privacy privileges, and stated that he considered an oral protective order
to be sufficient protection. Despite defense counsel's statement that October 25,
2013 would be acceptable handover date for the records, Magistrate Judge Kenton
ordered production of all recently received corporate records by October 15, 2103,
though some 25,000 pages remain to be reviewed, despite the fact that Ms.
Rosenberg stated she could not possibly review, inspect and organize the records in
the time allowed and did not have the resources to retain assistance, andk despite
the fact that October 15 is the same day on which Judge Kenton had previously
ordered her to have her response filed for why the $10,000 sanction should not
issue for what she stated under oath was an inadvertent violation of the order
requiring banking records to be delivered sealed to Defendant, without review or
redaction by Plaintiff. Both Plaintiff's counsel are solo practitioners, and the
Cooperative has no income for outside help since its dispensary was shut down.

**1.   Defendant has had years to subpoena the banking records,
and took no steps get them until its June 2013 motion to compel.**  This action
was brought by Plaintiff and removed to U.S. District Court by Defendant on
September 1, 2010. Defendant filed a counterclaim on September 23, 2010.   The
case has been to the Ninth Circuit and back on the City's challenge to the grant of
preliminary injunction issued in favor of the Cooperative November 24, 2010.
Discovery cutoff was originally set for October 3, 2011, then moved to November
4, 2011, then modified as follows: to January 3, 2012, December 22, 2012, April 9,

2013, August 5, 2013. When the corporate records that had been missing for at least a year were finally returned by the Cooperative's former CEO James Lee (with the aid of Mr. Lee's counsel), Plaintiff suggested that the parties stipulate to an extension of the trial date in order to allow time for review of the records.  The parties  stipulated to extend the trial date to December 10, 2013 but to have  the discovery cutoff remain at August 5, 2013 "except for any issues pending with respect to City's Motion to Compel Production of Documents, and the deposition of James Lee will be taken." Docket Item 102. Thus, Defendant has been dilatory during the time allowed for discovery  of these banking records for nearly three years.

There was ample time  to bring a noticed motion, but Defendant  chose to bring a motion ex parte, styled as being "For Rehearing of Motion to Compel Production of Documents and Sanctions for Failure to Comply with Court Ordered Discovery." This appears to be for reconsideration under L.R. 7-18, if not a new motion to compel discovery –especially with regard to the corporate records recently returned on August 20, which were never addressed by the initial order of August 6, 2013 for which Defendants requested rehearing ex parte. Rather than follow the Local Rule 37-1 discovery motion procedure, defense counsel  sought to leapfrog other litigants who have followed the rules.  There was no emergency or irreparable harm involved, merely the impatience of defense counsel, who after years of relative inactivity in discovery, sought ex parte relief on a routine matter, and was granted that relief despite their abuse of the ex parte process, despite  the assurance of the Magistrate Judge that ex parte relief could not be requested, and despite their violation of the  L.R. 7-18 strictures limiting ex parte matters to issues involving irreparable harm  The result was severely prejudicing Plaintiff and its counsel's ability to prepare as well as to continue review of voluminous records.

/// ///

### III.  <u>CONCLUSION</u>

Good cause having been shown, a stay of Magistrate Kenton's order for production of bank records and corporate records – to the extent that any member's identity is disclosed – should be immediately ordered prior to October 15, 2013.  The Order to Show Cause by Ms. Rosenberg why $10,000 in sanctions should be stayed until resolution of the issues raised by this application for review have been resolved.

Additionally, it is requested that the cross-claim of defendant City claiming a now closed dispensary is a nuisance be dismissed as moot, or, that the court issue an order shortening time for such a motion, modifying the scheduling order to allow for the motion, or ordering the City of Santa Barbara to show cause why such dismissal should not issue.

DATED: October 10, 2013

/s/ Gary S. Casselman
GARY S. CASSELMAN, Attorney for Plaintiff
SANTA BARBARA PATIENTS'
COLLECTIVE HEALTH COOPERATIVE

/s/ Dana J. Rosenberg
DANA J. ROSENBERG, Attorney for Plaintiff
SANTA BARBARA PATIENTS'
COLLECTIVE HEALTH COOPERATIVE